FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2026 MAY -6  AM 7: 09

MARGARET BOTKINS, CLERK
CHEYENNE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING


JISELLE McKEE,

   Plaintiff,


v.                         Civil Action No. _26-CV-146-S_


WELLS FARGO BANK, N.A.,

   Defendant.


COMPLAINT

(BENCH TRIAL ELECTED)

# COMPLAINT

Plaintiff Jiselle McKee brings this action against Defendant Wells Fargo Bank, N.A., and alleges as follows:

## TABLE OF CONTENTS

**Table of Contents**

INTRODUCTION

JURISDICTION AND VENUE

PARTIES

STATEMENT OF FACTS

A. November 26, 2025 — The Day Everything Occurred

B. November 28, 2025 — Plaintiff's Scheduled Appointment and Deputy's Separate Visit

C. Wells Fargo's Early Investigation Failures (Late Nov – Early Dec 2025)

D. December 2025 — Regulation E Failures

E. January 9, 2026 — Search Warrant Issued and Served

F. February–March 2026 — Contradictions, Obstruction, and Missing Evidence

F-1. February 26, 2026 — Intimidation and Coercive Conduct

F-2. Retaliation for Filing Complaints

G. April 2026 — Batch Closures and Continued Failures

H. April 30, 2026 — Legal Demand Served

I. Ongoing Harm

J. March–April 2026 — Misrepresentation of Privacy Request and Withholding of Breach Information

K. Pattern and Practice of Systemic Misconduct

CAUSES OF ACTION

Count I – Violation of the Electronic Fund Transfer Act

Count II – Violation of Regulation E

Count III – Negligence: Teller-Level Failures

Count IV – Negligence: ATM Custody & Chain-of-Custody Failures

Count V – Negligence: Recordkeeping & Ledger Integrity Failures

Count VI – Negligence: Investigation Failures

Count VII – Negligence: Search-Warrant Noncompliance

Count VIII – Negligence: Account-Access & Records-Access Failures

Count IX – Negligence: Privacy & Mortgage-Data Handling Failures

Count X – Negligent Misrepresentation

Count XI – Breach of Contract

Count XII – Breach of the Implied Covenant of Good Faith and Fair Dealing

Count XIII – Conversion

Count XIV – Breach of Fiduciary Duty / Duty of Honesty and Care

Count XV – Negligent Failure to Preserve Evidence (Spoliation)

Count XVI – Failure to Comply With a Lawful Warrant

Count XVII – Violations of the Wyoming Consumer Protection Act

Count XVIII – Unfair and Unsafe Business Practices

DAMAGES

PRAYER FOR RELIEF

BENCH TRIAL DEMAND

# INTRODUCTION

This action arises from Wells Fargo's systemic failures in fraud prevention, deposit custody, recordkeeping, privacy compliance, and lawful-warrant response. Plaintiff was deceived into withdrawing $18,000 under duress, and Wells Fargo subsequently lost her $17,800 ATM cash deposit, refused to conduct a federally required investigation, denied the existence of a judge-signed search warrant, withheld required ATM records, misrepresented the status of her claims, retaliated against Plaintiff for filing complaints, and provided false and contradictory information across multiple departments.

Wells Fargo's conduct was not an isolated mistake. It reflects a pattern and practice of premature claim closures, record destruction or non-preservation, misrepresentation of investigative steps, retaliation against consumer complaints, and obstruction of both consumers and law enforcement.

Plaintiff brings this action to remedy the financial loss, emotional distress, and ongoing harm caused by Wells Fargo's unfair, unsafe, deceptive, and unlawful business practices.

# JURISDICTION AND VENUE

1. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under the Electronic Fund Transfer Act (15 U.S.C. § 1693 et seq.) and Regulation E (12 C.F.R. § 1005).
2. The Court has supplemental jurisdiction over state-law claims under 28 U.S.C. § 1367.
3. Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to the claims occurred in Wyoming and Defendant conducts business in this District.

# PARTIES

1. Plaintiff Jiselle McKee is a resident of Laramie County, Wyoming.
2. Defendant Wells Fargo Bank, N.A. is a national banking association doing business in Wyoming.

# STATEMENT OF FACTS

## A. November 26, 2025 — The Day Everything Occurred

1. Plaintiff received a 93-minute spoofed call appearing as Wells Fargo Mortgage (1-800-340-0570).
2. The caller falsely claimed to be from Wells Fargo Fraud and coached Plaintiff on what to say to Wells Fargo.
3. Plaintiff was instructed to claim she was "paying a contractor" and was under deception, pressure, and duress throughout the call.
4. At 4:25 PM, while still on the spoofed call, Plaintiff withdrew $18,000 in cash from the Wells Fargo Pershing Branch.
5. Teller Sarah reinforced the scammer's script, normalized the explanation, and failed to follow required high-risk withdrawal protocols.
6. Immediately afterward, at approximately 5:00 PM, Plaintiff deposited $17,800 into the Wells Fargo Capitol Avenue branch ATM.
7. The ATM accepted $17,800 and rejected only two older $100 bills.
8. ATM video later confirmed Plaintiff is clearly visible making the deposit.
9. At 5:10 PM, Plaintiff called Wells Fargo's fraud line to report the fraud and the missing ATM deposit. Fraud department stated they could not locate the deposit and go to the branch where the deposit was made despite it being closed for a holiday for assistance.
10. Wells Fargo also told Plaintiff she needed a police report; Plaintiff obtained one that same evening and again called Wells Fargo with the case number.
11. Plaintiff filed an IC3.gov complaint at 11:17 PM.
12. Wells Fargo failed to open a fraud claim despite several phone calls and instead closed Plaintiff's bank accounts and opened new accounts.

## B. November 28, 2025 — Plaintiff's Scheduled Appointment and Deputy's Separate Visit

1. On November 28, 2025, Plaintiff attended a 9:00 AM scheduled appointment at the Wells Fargo Capitol Avenue branch, which she had booked online immediately after being instructed by the Wells Fargo Fraud Department to go to a branch as soon as it opened after Thanksgiving.
2. During this appointment, Plaintiff met with Personal Banker Brandon Jones, who attempted to assist with both the coerced $18,000 withdrawal and the missing $17,800 ATM deposit.

3. Brandon Jones called the Wells Fargo Small Business line and opened an internal escalation:

   an escalation for the coerced $18,000 withdrawal, and stated a "fast track finding deposit" escalation for the missing $17,800 ATM deposit.

4. Brandon Jones wrote the escalation number on the back of his business card and provided it to Plaintiff, who reasonably believed this number represented a formal fraud claim.

5. Brandon Jones stated that he could not view or access accounts other than Plaintiff's, and therefore could not see any internal ATM-operations records or any account into where the deposit was made into.

6. Brandon Jones further stated he was uncertain why Plaintiff had been instructed to come to the branch for assistance locating an ATM deposit, because branch personnel do not have access to the systems required to trace ATM-captured cash or review ATM-operations data.

7. Brandon informed Plaintiff that stolen identities are often used to open bank accounts and the account name is not like the person involved and that "Jiselle Premier Checking' was just an account nickname.

8. Later that same day, but at a different time, Deputy Gerhardt Valois also went to the Wells Fargo Capitol Avenue branch to follow up on the missing deposit and the coerced withdrawal.

9. Plaintiff was not present during the deputy's visit and did not participate in his conversation with Wells Fargo personnel.

10. Plaintiff did not learn the details of the deputy's November 28 visit until weeks later, when she returned to the branch in December to obtain a letter updating her bank account information for her automatic state deposit.

11. Plaintiff reasonably relied on the information learned during her December visit as confirmation that Wells Fargo had acknowledged both the missing ATM deposit and the fraudulent withdrawal and had initiated internal processes to address both issues.

## C. Wells Fargo's Early Investigation Failures (Late Nov – Early Dec 2025)

1. Wells Fargo closed the initial investigation without contacting Plaintiff or reviewing evidence.

2. Required ATM records were not preserved or produced, including EJ logs, cassette totals, access logs, chain-of-custody records, error codes, reconciliation reports, and Apple Wallet authentication data.

## D. December 2025 — Regulation E Failures

1. On December 4, 2025, Plaintiff filed her first CFPB complaint.
2. On December 4, 2025, Wells Fargo opened a Regulation E claim for the $18,000 duress withdrawal.
3. On December 5, 2025, Wells Fargo closed the claim within 24 hours without contacting Plaintiff, reviewing evidence, or providing documentation.
4. Wells Fargo later contradicted itself by claiming no Regulation E claim existed.
5. On December 24, 2025, CFPB Complaint #1 was closed.

## E. January 9, 2026 — Search Warrant Issued and Served

1. On January 9, 2026, Detective Young obtained and served a judge-signed search warrant on Wells Fargo requiring production of ATM logs, custody records, and related documentation.
2. Wells Fargo denied the warrant existed and failed to comply.

## F. February–March 2026 — Contradictions, Obstruction, and Missing Evidence

1. Wells Fargo representative Melissa falsely stated no warrant had been served.
2. When Plaintiff provided the internal Wells Fargo reference number (31797669), Wells Fargo denied its own number existed.
3. On March 12, 2026, Wells Fargo produced only ATM video — no required ATM records.
4. Detective Young confirmed the ATM accepted the cash and the deposit is missing inside Wells Fargo systems.

## F-1. February 26, 2026 — Intimidation and Coercive Conduct

1. On February 26, 2026, Wells Fargo representatives engaged in intimidating and coercive conduct toward Plaintiff during a phone call regarding the missing ATM deposit and the status of the investigation.
2. Wells Fargo employees raised their voices, spoke over Plaintiff, contradicted prior statements, and delivered false information regarding the existence of the warrant and the availability of records.
3. This conduct occurred in the presence of a disabled witness, who observed Plaintiff becoming visibly distressed and overwhelmed.
4. The intimidation was separate from, and followed, Wells Fargo's earlier denials of the judge-signed warrant and its own internal reference number.

5. This conduct caused additional emotional distress, obstructed Plaintiff's attempts to obtain accurate information, and further delayed resolution of the missing deposit.

## F-2. Retaliation for Filing Complaints

1. Throughout February and March 2026, Wells Fargo representatives repeatedly told Plaintiff that filing complaints with Wells Fargo or the CFPB would "slow down the response," "delay the investigation," or "make it harder" for Wells Fargo to assist her.
2. Wells Fargo further told Plaintiff she "could not file any more complaints" and that her attempts to obtain help were "causing delays," despite the fact that Wells Fargo had prematurely closed multiple claims without investigation.
3. These statements were false, coercive, and retaliatory, and were intended to discourage Plaintiff from exercising her rights to report misconduct, seek regulatory assistance, and obtain accurate information.
4. This retaliation occurred across multiple departments and representatives, demonstrating a coordinated pattern of suppressing consumer complaints rather than addressing the underlying misconduct.
5. Wells Fargo's retaliatory conduct caused additional emotional distress, obstructed Plaintiff's ability to obtain help, and further delayed resolution of the missing deposit.

## G. April 2026 — Batch Closures and Continued Failures

1. On April 1, 2026, 43 CFPB complaints were closed with identical boilerplate language.
2. On April 1, 2026, Plaintiff filed new fraud claims for the withdrawal and deposit; Wells Fargo backdated them to March 31.
3. On April 5, 2026, Wells Fargo closed the new withdrawal claim without evidence.
4. On April 6, 2026, Wells Fargo stated the ATM deposit "must have gone into someone else's account," without evidence.
5. On April 15, 2026, Wells Fargo denied the withdrawal claim because it was "an in-branch withdrawal," contradicting Regulation E.

## H. April 30, 2026 — Legal Demand Served

1. Plaintiff personally served Wells Fargo's registered agent with a formal legal demand for full production of records.
2. Wells Fargo's response deadline was May 15, 2026.

## I. Ongoing Harm

1. Plaintiff continues to suffer unreimbursed financial loss, emotional distress, sleep disruption, caregiving impacts, and loss of critical records.
2. Plaintiff has been unable to obtain accurate account information, ATM records, or documentation necessary to determine the disposition of her funds.
3. Plaintiff has incurred substantial time burden and administrative labor to pursue relief, including preparing and submitting consumer complaints and drafting and filing this Complaint.
4. Wells Fargo's contradictory statements, intimidation, retaliation, and refusal to provide records have caused ongoing anxiety, uncertainty, and disruption to Plaintiff's daily life and caregiving responsibilities.

## J. March–April 2026 — Misrepresentation of Privacy Request and Withholding of Breach Information

1. Plaintiff submitted a written privacy request asking whether her information had been exposed in the Wells Fargo mortgage-system data breach of 2022–2023 or in any other Wells Fargo data breach.
2. Plaintiff specifically requested all records relating to breach exposure, mortgage-system data, internal access logs, and any documentation showing whether her information had been accessed or compromised.
3. Wells Fargo responded by providing only 12 months of marketing-preference data, which did not relate to Plaintiff's request.
4. Wells Fargo failed to provide any information regarding Plaintiff's mortgage-application data, internal access logs, or breach-exposure status.
5. This selective disclosure misrepresented the scope of Plaintiff's request and deprived her of material information necessary to assess her privacy risk.

## K. Pattern and Practice of Systemic Misconduct

1. Wells Fargo's conduct toward Plaintiff is consistent with a broader pattern and practice of systemic failures, including premature claim closures, refusal to preserve required ATM records, contradictory internal statements, misrepresentation of privacy-rights responses, retaliation against consumer complaints, and denial of law-enforcement warrants.
2. These repeated failures occurred across multiple departments, including branch operations, fraud investigations, ATM operations, privacy compliance, and legal-order processing.

3. The recurrence of these failures over several months demonstrates institutional practices rather than isolated errors, materially increasing the harm to Plaintiff.
4. Wells Fargo's systemic misconduct reflects operational deficiencies that endanger consumers, undermine regulatory compliance, and obstruct law enforcement.

# CAUSES OF ACTION

## Count I – Violation of the Electronic Fund Transfer Act (15 U.S.C. § 1693 et seq.)

1. The $18,000 withdrawal on November 26, 2025 was made under deception, coercion, and duress and therefore constituted an unauthorized electronic fund transfer under 15 U.S.C. § 1693a(12).
2. Wells Fargo failed to conduct a reasonable investigation as required by 15 U.S.C. § 1693f.
3. Wells Fargo failed to provide timely written explanations of its determinations.
4. Wells Fargo failed to provide evidence supporting its denial.
5. Wells Fargo is liable for actual damages, statutory damages, and attorney's fees under 15 U.S.C. § 1693m.

## Count II – Violation of Regulation E (12 C.F.R. § 1005)

1. Wells Fargo failed to conduct a reasonable investigation into the unauthorized transaction.
2. Wells Fargo closed the Regulation E claim within 24 hours without contacting Plaintiff or reviewing evidence.
3. Wells Fargo failed to provide provisional credit.
4. Wells Fargo failed to provide required documentation.
5. Wells Fargo violated Regulation E and is liable for damages.

## Count III – Negligence: Teller-Level Failures

1. Wells Fargo owed Plaintiff a duty of ordinary care in processing high-risk withdrawals.
2. Teller Sarah breached that duty by reinforcing the scammer's script, failing to intervene, and failing to follow required protocols.
3. This breach proximately caused Plaintiff's financial loss and emotional harm.

## Count IV – Negligence: ATM Custody & Chain-of-Custody Failures

1. Wells Fargo owed a duty to safeguard ATM deposits and preserve deposit records.

2.  Wells Fargo breached that duty by losing the $17,800 deposit and failing to preserve required ATM records.
3.  This breach caused financial loss and obstructed investigation.

## Count V – Negligence: Recordkeeping & Ledger Integrity Failures

1.  Wells Fargo altered ledger descriptions without explanation or audit trail.
2.  Wells Fargo failed to maintain accurate records and failed to preserve evidence.
3.  These failures caused confusion, delay, and harm.

## Count VI – Negligence: Investigation Failures

1.  Wells Fargo owed a duty to conduct a reasonable fraud investigation.
2.  Wells Fargo prematurely closed claims and issued contradictory statements.
3.  Wells Fargo failed to review evidence, contact Plaintiff, or preserve records.
4.  Wells Fargo engaged in intimidating conduct on February 26, 2026, including raised voices, speaking over Plaintiff, and providing false information.
5.  Wells Fargo's conduct reflects procedural bad faith, including intentional obstruction, contradictory explanations, intimidation, and retaliation designed to deter Plaintiff from pursuing her rights.

## Count VII – Negligence: Search-Warrant Noncompliance

1.  Law enforcement served Wells Fargo with a judge-signed search warrant on January 9, 2026.
2.  Wells Fargo denied the warrant's existence and failed to comply.
3.  These actions obstructed law enforcement and caused harm.

## Count VIII – Negligence: Account-Access & Records-Access Failures

1.  Wells Fargo blocked Plaintiff's access to closed accounts and related records.
2.  This breach caused harm, including inability to verify transactions and prepare for investigation.

## Count IX – Negligence: Privacy & Mortgage-Data Handling Failures

1.  Wells Fargo issued contradictory statements regarding potential exposure of Plaintiff's mortgage-related data.
2.  Wells Fargo failed to follow privacy-rights requirements.
3.  These failures caused emotional distress and identity-related risk.

## Count X – Negligent Misrepresentation

1. Wells Fargo made false statements regarding claim status, warrant existence, and evidence availability.
2. Plaintiff reasonably relied on those statements to her detriment.

## Count XI – Breach of Contract

1. Wells Fargo breached contractual obligations by failing to safeguard deposits, investigate fraud, and maintain accurate records.

## Count XII – Breach of the Implied Covenant of Good Faith and Fair Dealing

1. Wells Fargo acted in bad faith by obstructing investigations and failing to follow required procedures.
2. Wells Fargo intimidated Plaintiff during the February 26, 2026 call.
3. Wells Fargo further acted in bad faith by retaliating against Plaintiff for filing complaints, including falsely stating that her complaints would "slow down the response" and instructing her not to file additional complaints. This retaliatory conduct was intended to suppress Plaintiff's rights, obstruct her ability to obtain assistance, and shield Wells Fargo from regulatory scrutiny.

## Count XIII – Conversion

1. The ATM accepted $17,800 and Wells Fargo failed to credit, return, or account for it.
2. Defendant's retention, loss, or misappropriation of the funds constitutes conversion.

## Count XIV – Breach of Fiduciary Duty / Duty of Honesty and Care

1. Wells Fargo owed Plaintiff a duty of honesty, accurate recordkeeping, safeguarding of deposits, and truthful communication.
2. Wells Fargo breached this duty by mishandling the withdrawal, losing the deposit, providing contradictory information, and failing to conduct a truthful investigation.

## Count XV – Negligent Failure to Preserve Evidence (Spoliation)

1. Wells Fargo had a duty to preserve ATM logs, cash-vault records, surveillance, and internal notes.
2. Wells Fargo was placed on notice through Plaintiff's immediate report and a judge-signed warrant.

3. Wells Fargo failed to preserve or produce required records, obstructing investigation and prejudicing Plaintiff.

## Count XVI – Failure to Comply With a Lawful Warrant

1. Wells Fargo denied the existence of a judge-signed warrant and failed to comply.
2. This constitutes an independent actionable wrong and obstructed law enforcement.

## Count XVII – Violations of the Wyoming Consumer Protection Act

1. Wells Fargo engaged in deceptive and unfair business practices, including contradictory explanations, misrepresenting claim status, denying the warrant, misrepresenting privacy-rights responses, and prematurely closing claims.
2. Wells Fargo also engaged in retaliation by telling Plaintiff that filing complaints would delay or prevent resolution of her case and by instructing her not to file additional complaints. This conduct was coercive, deceptive, and intended to suppress Plaintiff's exercise of her consumer-protection rights.

## Count XVIII – Unfair and Unsafe Business Practices

1. Wells Fargo maintains an unsafe policy of making ATM cash deposits "instantly available" before verification.
2. This policy creates foreseeable risk of consumer harm and provides no countervailing benefit.
3. Wells Fargo's premature claim closures, refusal to preserve records, retaliation, and denial of a judge-signed warrant further constitute unfair and unsafe practices.
4. These practices caused substantial injury not reasonably avoidable by consumers.

# DAMAGES

As a direct and proximate result of Wells Fargo's conduct, Plaintiff suffered:

1. Financial Loss — including the missing $17,800 deposit and losses associated with the coerced $18,000 withdrawal.
2. Emotional Distress — including anxiety, fear, and distress caused by intimidation, retaliation, and contradictory statements.
3. Sleep Disruption and health impacts.
4. Caregiving Impacts — including disruption to Plaintiff's responsibilities.
5. Loss of Access to Records — including ATM logs and account information.
6. Time, labor, and administrative burden.
7. Ongoing Harm — including uncertainty and financial instability.

8. Enhanced Damages — justified by Wells Fargo's systemic misconduct, procedural bad faith, retaliation, and refusal to comply with federal and state requirements.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and award:

1. Actual damages;
2. Statutory damages under the Electronic Fund Transfer Act;
3. Punitive damages where permitted;
4. Restitution of the $17,800 ATM deposit;
5. Restitution of losses associated with the coerced $18,000 withdrawal;
6. Damages for emotional distress;
7. Damages for time, administrative burden, and loss of access to records;
8. Pre- and post-judgment interest;
9. Attorney's fees and costs;
10. Any other relief the Court deems just and proper;
11. An order requiring Wells Fargo to implement corrective measures to prevent recurrence of the systemic failures described herein.

## BENCH TRIAL DEMAND

Plaintiff requests a bench trial (trial to the Court) on all issues so triable and does not demand a jury.

Respectfully submitted,

*Jiselle McKee*    5/6/2026

Jiselle McKee
Plaintiff, Pro Se
7052 Rilley Road
Cheyenne, WY 82009
jiselle.cash@csuglobal.edu