An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

 **❮ All complaints (.)**

# 260310-29783156

**CLOSED**

## ✔ Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/10/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

CFPB Complaint — No Reg E Investigation Conducted Within Required Timeframe & Misclassification of Fraud

Summary:
Wells Fargo did not conduct a Regulation E investigation within the required timeframe after I reported fraud on November 26, 2025. Instead of investigating, the bank prematurely classified the transaction as "customer authorized," which directly contradicts the law enforcement report that identifies the incident as fraud. As of today, more than three months have passed with no proper investigation.

---

1. I Reported Fraud on November 26, 2025

I reported the fraud to Wells Fargo on November 26, 2025, the same day the incident occurred.

Under Regulation E, the bank was required to:

• begin an investigation immediately,
• complete it within 10 business days, or
• issue a provisional credit if more time was needed.

Wells Fargo did none of these.

---

2. Wells Fargo Did Not Conduct Any Investigation Within 10 Days

The bank did not:

• request evidence,
• review ATM records,
• contact me for clarification,
• review device-level data,
• review the withdrawal context,
• or follow any Reg E procedures.

No investigation occurred within the required 10-day period.

---

3. Instead of Investigating, Wells Fargo Classified the Transaction as "Customer Authorized"

On December 5, 2025, Wells Fargo closed the case and labeled the transaction as "customer authorized."

This classification was made:

• without contacting me,
• without reviewing evidence,
• without interviewing the teller,
• without reviewing the withdrawal receipt,
• and without conducting any Reg E analysis.

This is a procedural violation.

---

4. Law Enforcement Classified the Incident as Fraud

I reported the incident to law enforcement on the same night, and the sheriff's report classifies the event as fraud.

Wells Fargo's "customer authorized" classification directly contradicts:

• the law enforcement report,
• the fraud case number,

 An official website of the United States Government

 Consumer Financial
Protection Bureau

(https://www.consumerfinance.gov/)

Start a new complaint

❮ All complaints (.)

# 260310-29784772

**CLOSED**

 Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/10/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

CFPB Complaint — Pre-Holiday Fraud Risk, Failure to Mitigate, and Delayed Access to Claims Support

Summary:
Wells Fargo failed to take appropriate steps to protect my account during a known high-risk fraud period (the night before a major holiday closure), then made it extremely difficult to report and resolve the fraud by routing me into prolonged hold times and delayed access to the fraud department. This combination of predictable risk and delayed response directly contributed to the loss and prevented timely investigation.

---

Complaint Narrative

1. The fraud occurred during a known high-risk period: the night before a holiday closure.

Complaint Detail

The incident occurred the night before Thanksgiving, a period when banks are closed and fraud activity is historically elevated. Wells Fargo is aware of this pattern and has internal risk models that account for increased ATM fraud and account takeover attempts during holiday closures.

Despite this, Wells Fargo did not implement any additional safeguards, alerts, or verification steps that could have prevented or flagged the unauthorized transaction.

2. Wells Fargo instructed me to go to a branch that was closed for the holiday.

When I reported the fraud immediately, I was told to go to a branch that was closed due to the holiday. This instruction was impossible to follow and delayed my ability to report the fraud in person or obtain assistance.

3. After the holiday, I experienced extremely long hold times when trying to report and follow up on the claim.

Once the holiday ended, every call I made to Wells Fargo resulted in unusually long hold times. These delays:

• Prevented timely reporting
• Prevented timely correction of misinformation
• Prevented me from providing evidence
• Prevented me from clarifying details that Wells Fargo later relied on in their denial

These hold times were not normal customer service delays. They were consistent, prolonged, and occurred on every call related to the fraud claim.

4. The combination of predictable risk + delayed access created preventable harm.

Wells Fargo:

• Knew the fraud occurred during a high-risk period
• Gave instructions that could not be followed due to holiday closures
• Delayed access to the fraud department
• Placed me in extended holds on every call
• Relied on incomplete or incorrect information due to those delays

This is a failure to provide timely access to dispute resolution and a failure to mitigate known fraud risks.

5. These delays contributed directly to the bank's misclassification and denial.

Because Wells Fargo did not allow timely reporting or communication, the bank later misclassified the transaction as "customer authorized,"

despite:

- Immediate reporting
- Law enforcement classifying it as fraud
- A valid search warrant
- Evidence I provided
- The timing of the incident
- The known holiday fraud pattern

The bank's own delays contributed to the inaccurate conclusion.

View full complaint ⊕



## Sent to company

**STATUS**

Sent to company on 3/10/2026

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

## Company still working

**STATUS**

Company response is in progress as of 3/20/2026

### The company has responded that it is still working on your issue

In some cases, companies need more time to respond. You should receive a final response within 60 days from the date we sent your complaint to the company.

**COMPANY'S INTERIM RESPONSE**

We'll need additional time to ensure we fully address all the concerns brought to our attention and provide a thorough response.

 # Company responded

**STATUS**

Company responded on 4/1/2026

**RESPONSE TYPE**

Closed with explanation

## Company's Response

Provided response to customer for the information they are privy to. Explained the volume of complaints, written acknowledgements/extension and how some cases will be responded to separately. Confirmed our previous responses addressed these concerns, but we will address it in this letter as well. Provided definition of case v. claim since customer seems to believe submitting the CFPB complaint case is opening her claims. It is not. Unless new claim information is provided for the withdrawal claims, they will not be reopened. Explained that some of her requests and asserted entitlements, she is not privileged to and internal processes or conduct will not be shared. Summarized the scam they were victim to and the narrative of what occurred with the withdrawal and subsequent lost stolen transfer on the accounts. Two claims were opened for the withdrawal the customer conducted and both claims are not providing reimbursement as it confirmed that the customer performed the transactions and no error occurred. Cash is an immediate form of payment. The fast track deposit claim the customer referenced was a in branch referral number for a complaint case. The customer's claims were conducted with no error and within the required timeframe. They are not reg e protected and the right to documentation requests are not accepted. Any requests for info about the ATM "claim" or documentation is info the customer is not privy to as they deposited funds to a 3rd party's account that they are not authorized on. Provided phishing info for the customer to be aware of for the future. Apologized for service concerns experienced. Went over our security measures and how ultimately the customer is responsible for the transactions they authorized on their account and referenced the deposit account agreement. Confirmed why the savings was closed for lost and stolen transfer and went over how the pending description vs. the posting description and pending/posting dates of the transaction may have been confusing but did not impact their transaction already performed nor did it impact the claim. Per our agreements, the closed account is not accessible through online banking after 90 days. The customer's applicable tax forms will be sent timely if meeting the interest thresholds when applicable. Confirmed the customer's pay appears to have continued posting to the checking account. They may submit documentation supporting an error if they have

it available. They customer's recorded employment status has not changed in the last 12 months and had no impact on the claims outcome. We cannot and will not confirm to the customer about whether we do or do not have a warrant, and reaffirmed, we work with law enforcement and her as the consumer is not privy to what this entails. Credit card case addressed the previous response in December was correct. It goes over the transactions on the account, declined and not posting. It confirms under reg z the customer does not have right to documentation, but their statements are enclosed for their reference and review. It confirms no search warrant is present for the customer for the credit card fraud team. The customer may continue to express dissatisfaction, but this will not change our response.

**ATTACHMENTS**

McKee Final Response Batch 1.pdf (108 KB)

McKee Credit Card Enclosure 2.pdf (9.3 KB)

McKee Credit Card Enclosure Part1.pdf (9.9 MB)

McKee Credit Card Enclosure Part2.pdf (7.2 MB)

 ## Feedback provided

**STATUS**

Feedback provided on 4/2/2026

## Your feedback

**THE COMPANY'S RESPONSE ADDRESSED ALL OF MY ISSUES**

No

**I UNDERSTAND THE COMPANY'S RESPONSE TO MY COMPLAINT**

No

**THE COMPANY DID WHAT THEY SAID THEY WOULD DO WITH MY COMPLAINT**

No

**ADDITIONAL COMMENTS**

Rebuttal – Pre-Holiday Fraud Risk, Failure to Mitigate, and Delayed Access to Claims Support Were Not Addressed in Batch Closure Wells Fargo's batch-closure response did not address any part of my complaint regarding the bank's failure to prepare for a known high-risk fraud period, its inadequate mitigation measures, or the delays that prevented timely reporting and contributed to the misclassification of my claim. These issues remain unresolved. --- 1. Wells Fargo did not address the known high-risk timing of the fraud My complaint documented that the unauthorized withdrawal occurred: • the night before Thanksgiving, • during a

historically high-risk period for ATM fraud and account-takeover attempts, • when banks—including Wells Fargo—use internal risk models to anticipate increased fraud. The batch-closure response does not acknowledge this predictable risk window or explain why no additional safeguards, alerts, or verification steps were implemented. --- 2. Wells Fargo did not address the instruction to visit a branch that was closed I reported the fraud immediately and was instructed to: • go to a branch that was closed for the holiday, • making it impossible to follow the bank's instructions, • delaying my ability to report the fraud or obtain assistance. The batch-closure response does not address this incorrect instruction or the resulting delay. --- 3. Wells Fargo did not address the prolonged hold times and delayed access to the fraud department My complaint documented that after the holiday: • every call resulted in unusually long hold times, • I was unable to provide evidence or correct misinformation, • I could not clarify details that Wells Fargo later relied on in their denial, • the delays were consistent and occurred on every fraud-related call. The batch-closure response does not address these delays or their impact on the investigation. --- 4. Wells Fargo did not address its failure to mitigate a predictable fraud-surge window My complaint explained that holiday-adjacent fraud spikes are predictable and that Wells Fargo should have had: • increased staffing, • faster routing to fraud specialists, • clear after-hours reporting instructions, • a process that does not rely on closed branches, • a system that does not place fraud victims on extended holds. The batch-closure response does not address this failure to prepare for a known risk period. --- 5. Wells Fargo did not address how these delays contributed to the misclassification of the transaction My complaint documented that the bank's delays directly contributed to the inaccurate "customer-authorized" classification, despite: • immediate reporting, • law enforcement classifying it as fraud, • a valid search warrant, • evidence I provided, • the timing of the incident, • the known holiday fraud pattern. The batch-closure response does not address how the bank's own delays and staffing failures contributed to the misclassification and denial. --- Conclusion Because Wells Fargo's batch-closure response did not address the predictable pre-holiday fraud risk, the failure to mitigate known risks, the delayed access to claims support, or the resulting misclassification of the transaction, this complaint remains unresolved and requires a substantive, issue-specific response.

## What happens now?

The complaint process is complete and your complaint is now closed.

We have taken the following additional actions on your complaint:

- We added your complaint to the CFPB's Consumer Complaint Database (http://www.consumerfinance.gov/data-research/consumer-complaints).

- Your feedback, and feedback from others, helps us understand how companies are addressing concerns raised by consumers in their complaints. We will also share your feedback with the company.

- We have also shared your complaint with the Federal Trade Commission, which will add your complaint to its database for state and federal law enforcement agencies.

We appreciate your participation in the complaint process and your feedback on the company's response. Both are important to us and consumers who may have similar issues and concerns.

 Closed

The CFPB has closed your complaint.

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question?

(855) 411-2372

TTY/TTD: (855) 729-2372

9 a.m. to 6 p.m. ET, Monday through Friday
(except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Overview)

 An official website of the United States Government

 An official website of the United States Government

 Consumer Financial
Protection Bureau                                            Start a new complaint
(https://www.consumerfinance.gov/)

 **❮ All complaints (.)**

# 260315-30017643

**CLOSED**

## ✔ Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/15/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

CFPB Complaint — Inadequate Training for Representatives Handling Fraud Victims (Telephone Conduct)

Summary of Issue
I am filing this complaint because the bank's representatives demonstrated inappropriate and unprofessional telephone conduct when I reported fraud. Their behavior indicates a lack of training on how to communicate with fraud victims, and it created pressure, confusion, and emotional distress during an already urgent situation. The bank's handling of these calls did not follow reasonable standards for assisting a consumer reporting fraud.

Details of the Incident
When I contacted the bank to report suspected fraud, the representatives I spoke with were dismissive, unprofessional, and made comments that were inappropriate for a fraud-reporting situation. Instead of providing guidance, support, or clear instructions, the representatives used language

that minimized my concerns and implied blame. One representative stated that I "just gave the scammer that much money" and that I should be relieved I "didn't hand it to them," which is not an acceptable or trauma-informed response to a fraud victim.

Additionally, the representatives appeared unfamiliar with proper fraud-response procedures. They did not provide consistent information, did not explain next steps, and did not follow a structured fraud-reporting process. Their tone and comments created pressure to accept the bank's position without evidence and made it difficult to obtain accurate information.

Why This Is a Concern
Fraud victims are often under stress, confused, and in need of clear, supportive communication. Banks are expected to have trained staff who can:

• respond professionally
• avoid victim-blaming language
• provide accurate information
• follow established fraud-reporting procedures
• document the call appropriately

The conduct I experienced suggests the bank has not adequately trained its representatives on how to communicate with fraud victims or how to handle fraud reports in a consistent, compliant manner.

This is especially concerning because telephone interactions are often the first point of contact for fraud victims. Poor communication can delay reporting, interfere with the investigation, and cause additional harm.

Bank's Response
The bank has not acknowledged or addressed the inappropriate conduct or the lack of training. Instead, I have received inconsistent explanations and no indication that the bank reviewed the call recordings or took corrective action. The bank has not provided any assurance that representatives are trained in proper fraud-response communication.

View full complaint ⊕

 Sent to
company

**STATUS**
Sent to
company on
3/15/2026

We've sent your complaint to the company, and we will let you know when they respond.

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

❮  All complaints (.)

# 260315-30017712

**CLOSED**

 **Submitted**

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/15/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

### YOUR COMPLAINT

CFPB Complaint — Bank Told Me I Needed ATM Video to Prove My Deposit, but Issued Three Final Determinations Without Addressing This Evidence

Summary of Issue
I am filing this complaint because the bank repeatedly told me that I needed ATM video to prove I made my deposit, but then issued three separate Final Determination letters without referencing this evidence at all. The bank insisted that ATM video was required, yet they closed the claim multiple times without confirming whether the video was obtained, reviewed, or included in their investigation. At this time, I do not know whether the ATM video was included in the materials sent to law enforcement under a search warrant.

Details of the Incident
When I reported the missing deposit, the bank's Fraud Department told me that I needed ATM video to prove I made the deposit. Representatives

stated that the video was necessary for the investigation and implied that the claim could not be resolved without it.

Despite this, the bank issued three Final Determination letters denying my claim. None of these letters:

• referenced ATM video
• confirmed whether the video was retrieved
• stated whether the video existed
• explained whether the video was reviewed
• addressed why the bank told me it was required

The bank's written determinations contradict what their representatives told me on the phone. If ATM video was truly required, the bank should not have issued Final Determinations without addressing it. If ATM video was not required, then the bank misled me during the investigation.

Additionally, I still do not know whether the ATM video was included in the evidence packet provided to the detective under a search warrant. The bank has not confirmed whether the video was preserved, retrieved, or sent.

Why This Is a Concern
This situation raises several procedural issues:

• The bank told me ATM video was required, but then denied the claim without referencing it.
• The bank issued multiple Final Determinations without confirming whether critical evidence was reviewed.
• The bank has not provided documentation showing whether the ATM video was preserved or included in the law enforcement packet.
• The bank's statements to me contradict their written determinations.
• The bank may have closed the investigation without obtaining or reviewing evidence they told me was necessary.

Consumers rely on banks to conduct fraud investigations using accurate information and consistent procedures. Telling a customer that specific evidence is required, then issuing multiple Final Determinations without addressing that evidence, is misleading and undermines the integrity of the investigation.

Bank's Response
The bank has not provided:

• confirmation that ATM video was retrieved
• confirmation that ATM video was reviewed
• confirmation that ATM video was included in the law enforcement packet
• any explanation for why representatives said the video was required
• any documentation supporting their Final Determinations

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

❮  All complaints (.)

# 260315-30017938

**CLOSED**

 Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/15/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

CFPB Complaint — Bank Misrepresented My Dispute and Failed to Act When I Requested the Deposit Be Frozen

Summary of Issue
I am filing this complaint because the bank misrepresented the nature of my dispute and failed to take appropriate action when I requested that my missing ATM deposit be frozen. On 11/28/2025 at approximately 9:00 AM, I met with Brandon Jones, Personal Banker, who assisted me both in person and by calling the Wells Fargo Fraud Department while I was sitting in front of him. I specifically asked him to freeze the deposit I made on 11/26/2025. He provided me with claim number 3025112800378, which I wrote down with the description "fast track find this deposit," because that is how he described the purpose of the claim.

Despite this, the bank later stated that my "only dispute" was regarding the withdrawal being allowed for a fraudulent purpose. This is not accurate and does not reflect what I reported or what I asked the bank to

do.

Details of the Incident
On 11/28/2025 at 9:00 AM, I went to the branch to report that my
$17,800 ATM deposit from 11/26/2025 had not posted. I told Brandon
Jones that the deposit needed to be located and frozen immediately to
prevent further loss. While I was sitting in front of him, he called the
Wells Fargo Fraud Department and spoke to them on my behalf. He then
provided me with claim number 3025112800378, which he stated would
be used to "fast track" locating the missing deposit.

At no point did I file a dispute solely about the withdrawal. My primary
concern was the missing deposit, and I explicitly asked for the deposit to
be frozen. The claim number was provided to me for that purpose.

However, the bank later claimed that my "only dispute" was regarding the
withdrawal being allowed for a fraudulent purpose. This contradicts what
I reported, what I requested, and what the personal banker documented at
the time.

Why This Is a Concern
This situation raises several procedural issues:

• The bank mischaracterized my dispute, which affects the accuracy of the
investigation.
• The bank failed to freeze the deposit despite my explicit request.
• The claim number provided to me was described as being for locating
the deposit, yet the bank later denied that this was the purpose.
• The bank's internal documentation does not match what occurred at the
branch.
• Misrepresenting the nature of a consumer's dispute undermines the
integrity of the investigation and can lead to incorrect determinations.

Consumers rely on banks to accurately document what they report. When
a bank changes or misstates the purpose of a dispute, it prevents a proper
investigation and harms the consumer.

Bank's Response
The bank has not explained:

• why my request to freeze the deposit was not acted upon
• why the claim number provided to me was later described differently
• why the bank stated that my "only dispute" was about the withdrawal
• why the bank did not document my request to locate and freeze the
deposit
• why the bank's internal notes contradict what occurred at the branch

The bank has also not provided any documentation showing that my
request to freeze the deposit was recorded or escalated.

I have attached Brandon Jones card that he gave me when I met with him

Complaint Detail

 An official website of the United States Government

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

❮  All complaints (.)

# 260315-30018118

**CLOSED**

 ## Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/15/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**YOUR COMPLAINT**

CFPB Complaint — Transaction Description Changed After the Fact
(System Integrity and Recordkeeping Failure)

Summary of Issue
I am filing this complaint because the bank's internal system showed two
different transaction descriptions for the same withdrawal connected to
my missing $17,800 ATM deposit. My screenshots show that the
withdrawal initially appeared as a "cashier's check", and later the same
transaction appeared as a "cash withdrawal." This change occurred after
the fact and without any explanation. A transaction changing categories in
the bank's system raises serious concerns about accuracy, internal
controls, and the reliability of the bank's investigation.

Details of the Incident
While reviewing my account activity, I observed that the withdrawal
associated with my missing deposit was originally displayed as a
cashier's check withdrawal. Later, the same transaction appeared as a

cash withdrawal. I have screenshots documenting both versions.

This is not a normal or expected change. A withdrawal should not shift between two different transaction types unless:

- a teller made an error
- a correction was performed
- an override occurred
- the transaction was reclassified internally
- the system updated or altered the record

At no point did the bank notify me of any correction, override, or reclassification. The bank has not provided teller logs, correction logs, override logs, or an audit trail explaining why the transaction changed categories.

Why This Is a Concern
A transaction changing from "cashier's check" to "cash" is a significant procedural issue because:

- It indicates a system integrity failure
- It suggests the teller may have selected the wrong transaction type
- It raises questions about whether required controls were bypassed
- It undermines the accuracy of the bank's records
- It calls into question the reliability of the bank's investigation
- It suggests the bank's documentation is incomplete or inaccurate

Regulators expect banks to maintain consistent, accurate transaction records. A change of this nature is not a minor discrepancy — it is a red flag indicating potential procedural or system failures.

Bank's Response
The bank has not explained:

- why the transaction appeared as a cashier's check
- why it later appeared as a cash withdrawal
- whether a correction or override occurred
- whether teller or back-office staff changed the classification
- why no documentation was provided to me
- whether this discrepancy was reviewed during the investigation

The bank has also not provided the audit trail, teller logs, or correction logs that would clarify what happened.

I have attached screenshots from WF online banking app with one showing the entry as cashiers check and another showing it as cash withdrawal. Also attached withdrawal receipt from the withdrawal inside the WF Pershing branch in Cheyenne, WY.

**ATTACHMENTS**

IMG_4649.png
(484.2 KB)

IMG_4648.png
(561.6 KB)

IMG_3887.jpeg
(2.7 MB)

Complaint Detail

View full complaint

## Sent to company

**STATUS**
Sent to company on 3/15/2026

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

## Company still working

**STATUS**
Company response is in progress as of 3/26/2026

## The company has responded that it is still working on your issue

In some cases, companies need more time to respond. You should receive a final response within 60 days from the date we sent your complaint to the company.

**COMPANY'S INTERIM RESPONSE**

We'll need additional time to ensure we fully address all of the concerns brought to our attention and provide a thorough response.

Complaint Detail

 # Company responded

| STATUS | RESPONSE TYPE |
|---|---|
| Company responded on 4/1/2026 | Closed with explanation |

## Company's Response

Provided response to customer for the information they are privy to. Explained the volume of complaints, written acknowledgements/extension and how some cases will be responded to separately. Confirmed our previous responses addressed these concerns, but we will address it in this letter as well. Provided definition of case v. claim since customer seems to believe submitting the CFPB complaint case is opening her claims. It is not. Unless new claim information is provided for the withdrawal claims, they will not be reopened. Explained that some of her requests and asserted entitlements, she is not privileged to and internal processes or conduct will not be shared. Summarized the scam they were victim to and the narrative of what occurred with the withdrawal and subsequent lost stolen transfer on the accounts. Two claims were opened for the withdrawal the customer conducted and both claims are not providing reimbursement as it confirmed that the customer performed the transactions and no error occurred. Cash is an immediate form of payment. The fast track deposit claim the customer referenced was a in branch referral number for a complaint case. The customer's claims were conducted with no error and within the required timeframe. They are not reg e protected and the right to documentation requests are not accepted. Any requests for info about the ATM "claim" or documentation is info the customer is not privy to as they deposited funds to a 3rd party's account that they are not authorized on. Provided phishing info for the customer to be aware of for the future. Apologized for service concerns experienced. Went over our security measures and how ultimately the customer is responsible for the transactions they authorized on their account and referenced the deposit account agreement. Confirmed why the savings was closed for lost and stolen transfer and went over how the pending description vs. the posting description and pending/posting dates of the transaction may have been confusing but did not impact their transaction already performed nor did it impact the claim. Per our agreements, the closed account is not accessible through online banking after 90 days. The customer's applicable tax forms will be sent timely if meeting the interest thresholds when applicable. Confirmed the customer's pay appears to have continued posting to the checking account. They may submit documentation supporting an error if they have it available. They customer's recorded employment status has not changed in the last 12 months and had no impact on the claims outcome. We cannot and will not confirm to the customer about whether we do or do not have a warrant, and reaffirmed, we work with law enforcement and her as the consumer is not privy to what this entails. Credit card case addressed the previous response in December was correct. It goes over

the transactions on the account, declined and not posting. It confirms under reg z the customer does not have right to documentation, but their statements are enclosed for their reference and review. It confirms no search warrant is present for the customer for the credit card fraud team. The customer may continue to express dissatisfaction, but this will not change our response.

**ATTACHMENTS**

McKee Credit Card Enclosure 2.pdf (9.3 KB)

McKee Final Response Batch 1.pdf (108 KB)

McKee Credit Card Enclosure Part2.pdf (7.2 MB)

McKee Credit Card Enclosure Part1.pdf (9.9 MB)

 Feedback provided

**STATUS**

Feedback provided on 4/1/2026

## Your feedback

**THE COMPANY'S RESPONSE ADDRESSED ALL OF MY ISSUES**

No

**I UNDERSTAND THE COMPANY'S RESPONSE TO MY COMPLAINT**

Yes

**THE COMPANY DID WHAT THEY SAID THEY WOULD DO WITH MY COMPLAINT**

No

**ADDITIONAL COMMENTS**

This complaint is about ledger change from cashier check to in branch cash withdrawal AND they did not addressed it in their response! This complaint is in regards to closed account access for tax purposes and I cannot import data for tax filing purposes without access to closed accounts. The paper copy cretes burden to manually add expenses as an independent contractor. This rebuttal is in response to Wells Fargo's most recent statement. Their response contains factual inaccuracies, procedural errors, and contradictions that do not address the core issue: I was the victim of a scam, and the bank has still not provided the required evidence showing what happened to the $17,800 cash ATM deposit. 1. Wells Fargo continues to classify this as "customer authorized," which contradicts law enforcement. I deposited the funds because I was being actively coached by a scammer. Law enforcement has classified this incident as fraud, not an authorized transaction. The detective also confirmed that the packet Wells Fargo sent to law enforcement was incomplete and missing documents.

Wells Fargo's classification directly contradicts the findings of law enforcement. 2. Wells Fargo refuses to provide ATM evidence or accounting, even though I was the depositor. Although the deposit was made into a third-party account, I was the depositor, and I am entitled to documentation showing what happened to the cash I physically placed into the ATM. Wells Fargo has refused to provide: • the ATM logs, • the timestamp of the deposit, • the accounting trail, • the ATM balancing records, • or any documentation showing where the cash went. They cannot deny a claim while withholding the evidence used to deny it. 3. Wells Fargo's statement that I am "not privy" to ATM documentation is incorrect. The depositor is always entitled to evidence of the deposit. Wells Fargo's refusal to provide documentation is a procedural failure and prevents any meaningful review of their decision. 4. Wells Fargo's narrative of the event is inaccurate and incomplete. Their response attempts to summarize the scam but omits critical facts, including: • I was coached by a scammer impersonating law enforcement, • I was instructed to deposit cash into a third-party account under duress, • the scammer remained on the phone during the entire transaction, • and the detective confirmed this was a fraud event, not an authorized transaction. 5. Wells Fargo's claim that "no error occurred" is unsupported because they have not provided evidence. They continue to assert that the transaction was "customer authorized" and that "no error occurred," yet they have not produced any documentation showing what happened to the cash after it entered the ATM. Without evidence, their conclusion is unsupported. 6. Wells Fargo's response does not address the missing ATM deposit at all. Their letter focuses on unrelated issues, internal policies, and definitions of "case vs. claim," but does not address: • the missing $17,800, • the missing ATM evidence, • the missing accounting, • the incomplete packet sent to law enforcement, • or the contradiction between their classification and the detective's fraud determination. 7. Wells Fargo's refusal to provide documentation prevents me from verifying their decision. They state that I am "not privileged" to see the evidence used to deny my claim. This makes it impossible to confirm whether their investigation was accurate or complete. 8. I am requesting CFPB intervention. I am asking the CFPB to require Wells Fargo to: • provide the ATM evidence and accounting showing what happened to the $17,800 cash deposit, • explain why they are classifying a fraud event as "customer authorized," • address the contradiction with law enforcement's findings, • provide the missing documentation that should have been included in the law enforcement packet, • and conduct a meaningful investigation rather than issuing repeated template denials. Wells Fargo's response does not address the facts, does not provide evidence, and does not resolve the underlying issue. Wells Fargo has issued another "final determination" on my dispute while still refusing to provide the evidence required to support their decision. They are also closing my complaints in batches without addressing the issues raised. The bank continues to classify the transaction as "customer authorized," which directly contradicts law enforcement's classification of the incident as fraud. 1. Wells Fargo issued another "final determination" with no evidence. On 4/1/2026, Wells Fargo sent me a new "final determination" letter from Escalations Representative Amanda R. This letter contains no new evidence, no ATM records, no accounting, and no explanation of what happened to my deposit. It simply repeats the same statements from prior letters. The bank continues to deny my claim without providing any documentation to justify the denial. 2. Wells Fargo is closing complaints in batches without addressing the issues. On the same day, Wells Fargo closed

Complaint Detail

more than 50 of my CFPB complaints using identical boilerplate language. None of the complaints were addressed individually. None of the issues raised were acknowledged. The bank is mass-closing complaints without conducting a meaningful investigation. 3. Wells Fargo still refuses to provide ATM evidence or accounting. The bank continues to classify the loss as "customer authorized," yet they have never disclosed: • what time the ATM deposit was lost, • where in the process the funds were lost, • any ATM logs, • any internal accounting records, • any documentation showing the deposit was accepted and then misdirected. They cannot classify the loss as "authorized" while withholding the evidence that would show what actually happened to the deposit. 4. The bank's "customer authorized" classification contradicts law enforcement. The sheriff's office has classified the incident as fraud, not an authorized transaction. The detective informed me that the packet Wells Fargo provided to law enforcement was incomplete and missing documents. Wells Fargo's internal classification of "customer authorized" directly contradicts the law enforcement fraud determination and is not supported by evidence. 5. Wells Fargo's statements about my income are inaccurate. The bank claims there were "no issues" with my deposits, but this is false. I am a weekly-paid independent contractor for the State of Wyoming. Wells Fargo rejected my second week of contractor pay after they closed my account. I had to physically go into the branch to obtain a letter so the State of Wyoming could update my banking information. Their statement that my income was unaffected is factually incorrect. 6. Wells Fargo created an undue burden by removing access to my closed account. Wells Fargo closed my account on 11/26/2025 and removed online access after 90 days. They now provide only an "account summary," which does not allow me to import tax data. As an independent contractor, I rely on accurate electronic records. I am now forced to manually reconstruct all transactions, which is time-consuming and unnecessary. This is an undue burden created entirely by the bank's actions. 7. The bank's responses do not address the issues raised in my complaints. The 4/1/2026 letter does not address: • the missing ATM evidence, • the missing accounting, • the inaccurate statements about my income, • the rejected contractor pay, • the burden created by removing access to my closed account, • the contradiction between "customer authorized" and law enforcement's fraud determination. Instead, Wells Fargo continues to issue template responses and close complaints without meaningful review. 8. I am requesting CFPB intervention. I am asking the CFPB to require Wells Fargo to: • provide the ATM evidence and accounting showing what happened to my deposit, • explain why they are classifying the loss as "customer authorized" when law enforcement has classified it as fraud, • correct the inaccurate statements about my income and rejected deposits, • explain why they are closing complaints without addressing the issues, • restore access to my closed account or provide an alternative that allows proper tax import, • and conduct a meaningful investigation rather than issuing repeated template "final determinations." Wells Fargo has not provided evidence, has not addressed the issues raised, and continues to close complaints without resolving the underlying problem.

## What happens now?

The complaint process is complete and your complaint is now closed.

We have taken the following additional actions on your complaint:

- We added your complaint to the CFPB's Consumer Complaint Database (http://www.consumerfinance.gov/data-research/consumer-complaints).

- Your feedback, and feedback from others, helps us understand how companies are addressing concerns raised by consumers in their complaints. We will also share your feedback with the company.

- We have also shared your complaint with the Federal Trade Commission, which will add your complaint to its database for state and federal law enforcement agencies.

We appreciate your participation in the complaint process and your feedback on the company's response. Both are important to us and consumers who may have similar issues and concerns.

 Closed

The CFPB has closed your complaint.

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question?

(855) 411-2372

TTY/TTD: (855) 729-2372

9 a.m. to 6 p.m. ET, Monday through Friday (except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Overview)

 An official website of the United States Government

 An official website of the United States Government

 Consumer Financial
Protection Bureau

(https://www.consumerfinance.gov/)

Start a new complaint

‹ All complaints (.)

# 260315-30018392

CLOSED

 ## Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/15/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

### YOUR COMPLAINT

CFPB Master Summary — Systemic Procedural Failures in Handling Missing $17,800 ATM Deposit

I am submitting this summary to document a pattern of procedural, documentation, staffing, communication, and investigation failures by Wells Fargo in connection with my missing $17,800 ATM cash deposit. These failures occurred across teller operations, branch handling, fraud investigation, system integrity, complaint management, and coordination with law enforcement. Collectively, these issues prevented a complete, accurate, and fair investigation.

---

1. Teller and System Record Discrepancies

The withdrawal associated with my missing deposit appeared under two different transaction types:

• Initially as a "cashier's check"
• Later as a "cash withdrawal"

I have screenshots documenting both versions.
The bank did not provide any audit trail, teller logs, correction logs, or override

Complaint Detail

logs explaining this discrepancy. This raises concerns about record accuracy, system integrity, and internal controls.

---

2. Failure to Freeze or Locate the Missing Deposit

On 11/28/2025, I reported the missing deposit and requested that the deposit be frozen immediately. The banker contacted the Fraud Department while I was present and provided claim number 3025112800378, described as being used to "fast track finding the deposit."

Despite this:

• The deposit was not frozen
• The deposit was not located
• No escalation occurred
• No documentation was provided showing any attempt to locate the deposit

This represents a failure to follow required procedures for missing deposits.

---

3. Mischaracterization of My Dispute

Although I reported a missing deposit, the bank later stated that my "only dispute" was regarding the withdrawal being allowed. This contradicts:

• The banker's call to the Fraud Department
• The claim number provided
• The banker's description of the claim
• The written note documenting "fast track finding deposit"
• My repeated written statements

This mischaracterization affected the accuracy of the investigation.

---

4. Failure to Incorporate Law Enforcement's Fraud Classification

Law enforcement classified the incident as fraud.
The bank repeatedly labeled it "consumer authorized."

The bank did not:

• Incorporate the law-enforcement classification
• Reconcile the discrepancy
• Adjust its investigation to reflect the criminal designation

This resulted in determinations based on an incorrect classification.

---

5. Investigation Conducted Without Required Evidence

The bank issued multiple determinations without:

• Reviewing ATM video
• Providing ATM video

- Providing teller logs
- Providing correction or override logs
- Providing an audit trail
- Reconciling system discrepancies
- Addressing contradictory information

Determinations were issued despite missing or incomplete evidence.

---

6. Failure to Escalate Despite Multiple Red Flags

My case involved several escalation triggers, including:

- A missing high-value deposit
- A large cash withdrawal
- A teller/system discrepancy
- A customer request to freeze funds
- A fraud concern
- Contradictory documentation
- Contradictory system entries

Despite these triggers, the bank did not escalate the matter to the appropriate internal teams.

---

7. Complaint Handling Irregularities

The bank repeatedly:

- Closed complaints before I could respond
- Closed complaints while I was actively responding
- Failed to address evidence I submitted
- Failed to answer direct questions
- Failed to provide required documentation

This interfered with my ability to participate in the dispute process.

---

8. Representative Identification Inconsistencies

A representative used different names across calls.
This created:

- Documentation inconsistencies
- Recordkeeping concerns
- Uncertainty about who handled portions of the investigation

Accurate identification is required for proper documentation.

---

9. Violation of Written-Only Communication Request

After I requested written-only communication, the bank:

5/3/26, 5:23 PM                                    Complaint Detail

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

❮  All complaints (.)

# 260315-30018560

**CLOSED**

  ## Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/15/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

"This incident occurred on November 26 and was reported to Wells Fargo immediately. Under Regulation E, the bank is required to conduct a timely and reasonable investigation, generally within 10 business days, or provide provisional credit if additional time is needed. Despite this requirement, Wells Fargo has had this matter for 109 days as of March 15 and has not resolved the missing deposit. My first CFPB complaint was filed on December 4. Complaints filed on January 17, February 8, February 25, and February 26 were all closed during an active Laramie County Sheriff's Office investigation and without providing any evidence, including ATM video, logs, or documentation. All remaining complaints are still open. Wells Fargo has not met the timeliness or evidentiary standards required under Regulation E."

**ATTACHMENTS**

Adobe Scan Jan
6, 2026.pdf (1.7
MB)

Complaint Detail

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

❮ All complaints (.)

# 260315-30018679

**CLOSED**

 ## Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/15/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

### YOUR COMPLAINT

CFPB Complaint – Representative Conduct & Emotional Harm From Misstatements

"I am submitting this complaint regarding the conduct of a Wells Fargo representative named Brie. During a phone call, she spoke over me repeatedly, raised her voice, and made several inaccurate statements about my financial situation, including claiming that I 'receive benefits' and implying that I was unemployed. These statements were factually incorrect and contradicted the documentation I had already provided showing that I am an independent contractor for the State of Wyoming. The only benefits involved are my child's survivor benefits, not personal income.

This interaction was distressing and unprofessional, and it occurred after I had already requested written-only communication due to prior issues. Despite this request, I continued receiving letters and communications with her name on them, which has been upsetting given the prior

Complaint Detail

interaction. The conduct during that call, combined with the ongoing misstatements about my employment and income, has contributed to significant stress during an already difficult situation involving a missing deposit and multiple unresolved complaints."

**ATTACHMENTS**

Adobe Scan Jan 6, 2026.pdf (1.7 MB)

View full complaint ⊕

 ## Sent to company

**STATUS**

Sent to company on 3/15/2026

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

 ## Company still working

**STATUS**

Company response is in progress as of 3/26/2026

## The company has responded that it is still working on your issue

In some cases, companies need more time to respond. You should receive a final response within 60 days from the date we sent your complaint to the company.

**COMPANY'S INTERIM RESPONSE**

We'll need additional time to ensure we fully address all the concerns brought to our attention and provide a thorough response.

5/3/26, 5:26 PM                                              Complaint Detail

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

< All complaints (.)

# 260315-30018882

**CLOSED**

 **Submitted**

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/15/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

On September 24, 2025, I deposited a $15,000 cashier's check at the Wells Fargo Pershing branch in Cheyenne, Wyoming, immediately after the branch notarized the title for the sale of my asset. This was a documented, legitimate transaction tied to the sale of my mobile home. During this deposit, the teller made inappropriate and intrusive comments, asking, "What are you going to do with the money? Are you just going to let it sit there?" This conduct was unprofessional and inconsistent with proper teller training.

Despite having notarized the title and processed the cashier's check deposit, the same Pershing branch later allowed an $18,000 cash withdrawal on November 26, 2025 without offering safer alternatives, without asking clarifying questions, and without documenting the purpose of the withdrawal. Wells Fargo's own procedures require tellers to assess risk, offer safer options, and document the purpose of large cash withdrawals. None of these steps occurred.

Compounding this, the transaction record for this same branch later changed from "cashier's check" to "cash withdrawal," with no explanation. This is a system-level contradiction that indicates either an internal override, a correction without documentation, or a failure in transaction integrity. The branch's inability to provide a consistent record for the same transaction raises serious concerns about accuracy, transparency, and compliance with record-keeping requirements.

Given that the Pershing branch handled the notarization, processed the cashier's check deposit, and later produced contradictory transaction descriptions, the branch had clear context and responsibility to ensure proper safeguards. Allowing a large cash withdrawal under these circumstances — combined with unprofessional teller conduct and unexplained transaction changes — represents a failure in teller training, branch oversight, and system integrity.

"Screenshots from my Wells Fargo mobile app are attached showing the original Pershing branch deposit, the initial transaction entry labeling the November 26 withdrawal as a cashier's check, and the later change to 'cash withdrawal' on November 28."

## ATTACHMENTS

IMG_4648.png
(561.6 KB)

IMG_4649.png
(484.2 KB)

IMG_4651.png
(140 KB)

View full complaint ⊕

 # Sent to company

### STATUS
Sent to company on 3/15/2026

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

❮ All complaints (.)

# 260316-30035858

**CLOSED**

 ## Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/16/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

### YOUR COMPLAINT

CFPB Complaint Draft — Executive Office Identification Practices

Summary:
Wells Fargo Executive Office representatives refuse to provide full last names and instead use only initials, while having full access to customers' complete identifying information. This creates an imbalance, prevents accountability, and undermines the fairness and transparency of the complaint-resolution process.

---

Details of the Issue

1. Executive Office representatives identify themselves only by first name and last initial.• Example: "Sarah M." or "John T."
• No verifiable last name is provided.

2. Customers, however, are required to disclose full legal names, account numbers, and personal information.• This creates a one-sided identification standard.

3. The use of initials appears to be a systemic practice within the Executive Office.• Multiple representatives follow the same pattern.
• This is not a one-off occurrence.

4. This practice prevents customers from confirming who handled their case.• No way to verify identity
• No way to track prior interactions
• No way to confirm whether the same representative is issuing repeated denials

5. The lack of full identification raises concerns about accountability.• Representatives can issue denials without transparency
• Customers cannot reference or escalate specific individuals
• It creates the appearance that Wells Fargo is shielding employees from scrutiny

6. This is not consistent with a "true and fair" complaint-resolution process.• A regulated institution should not operate with anonymous or partially anonymous representatives when handling formal disputes.

---

Impact on the Consumer

• I cannot verify who is making decisions on my case.
• I cannot confirm whether the same representative is repeatedly issuing denials.
• I cannot escalate concerns about specific conduct because the representative's identity is obscured.
• This undermines confidence in the fairness and integrity of the Executive Office process.

View full complaint

 **Sent to company**

**STATUS**
Sent to company on 3/16/2026

We've sent your complaint to the company, and we will let you know when they respond.

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

 **‹  All complaints (.)**

# 260316-30038533

**CLOSED**

## ✔ Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/16/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

CFPB Complaint — Wells Fargo Issued Multiple Premature Closures Under an Active Search Warrant

Summary:
Wells Fargo issued multiple denials and closures on my fraud claim after a search warrant was served, before the evidence due date, and without providing any evidence to law enforcement. These closures were issued by different Executive Office representatives on 2/3, 2/26, and 2/27, despite the bank being under an active legal obligation to produce evidence by March 12.

---

Detailed Timeline of Premature Closures

1. February 3 — Closed by Melissa (Denial #1)

• Representative LaShawn had already extended the investigation to
March 12, matching the detective's evidence deadline.
• Despite this active extension, Melissa closed the case early on 2/3.
• This closure occurred after the warrant was served and before any
evidence was produced.
• The detective confirmed he had not received evidence at this time.

---

2. February 26 — Closed by Brie (Denial #2)

• Representative Brie issued another closure on 2/26.
• This was still before the March 12 evidence deadline.
• No evidence had been provided to the detective.
• This closure contradicted both the warrant and the bank's own extended
timeline.

---

3. February 26 — Second Closure by Brie (Denial #3)

• On the same day, Brie issued a second closure.
• Again, this was before evidence was due and without evidence being
produced.
• This indicates repeated premature determinations, not a completed
investigation.

---

4. February 27 — Closed by Brie Using Recycled Final Determination
Letters (Denial #4)

• On 2/27, Brie issued another closure.
• This closure reused prior "final determination" language from LaShawn,
Melissa, and Brie.
• No new investigation was performed.
• No evidence was reviewed.
• No evidence was provided to the detective.
• This indicates the bank was recycling denials instead of conducting a
legitimate investigation.

---

Pattern of Procedural Failures

Across all four closures:

• All were issued after the search warrant was served
• All were issued before the March 12 evidence deadline
• All were issued without providing evidence to law enforcement
• All were issued without completing the required investigation

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

❮ All complaints (.)

# 260316-30038903

**CLOSED**

 ## Submitted

| STATUS | PRODUCT | ISSUE |
| --- | --- | --- |
| Submitted to the CFPB on 3/16/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

### YOUR COMPLAINT

CFPB Complaint — Fraud Department Gave False Information on 11/26 and Failed to Assist in Locating My ATM Deposit

Summary:
On 11/26, I made multiple calls to three different official Wells Fargo phone numbers trying to get immediate help locating and freezing a $17,800 cash deposit I had just made into a Wells Fargo ATM at the Capitol Avenue branch in Cheyenne, WY. My Spectrum Mobile bill confirms these calls. Instead of assisting me, the fraud department gave false information, including telling me they could not locate the deposit without the full name or account number of the receiving account, and instructing me to go to a branch that was closed the next day for Thanksgiving. These statements were misleading, contradicted standard banking procedures, and delayed the fraud response.

---

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

❮  All complaints (.)

# 260316-30063742

**CLOSED**

 ## Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/16/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

CFPB Complaint Draft — Emotional Duress, Excessive Time Burden, Contradictions, and Quality-of-Life Impact

Summary of the Issue:
For several months, Wells Fargo has subjected me to an excessive and unreasonable amount of time burden, contradictory information, raised voices from representatives, and repeated procedural failures. This has caused significant emotional duress, sleep disruption, and a measurable decline in my quality of life and family functioning.

Details:
I have been forced to spend an extraordinary amount of time attempting to resolve issues that should have been handled promptly and professionally. Instead, Wells Fargo representatives have provided conflicting explanations, changed their statements from one call to the next, and escalated situations by raising their voices at me when I attempted to clarify the inconsistencies.

Complaint Detail

These contradictions and unprofessional interactions have prolonged the situation far beyond what is reasonable. The extended timeline and lack of clear communication have caused ongoing stress, sleep loss, and emotional strain. This has directly affected my ability to function, work, and manage responsibilities within my household.

Impact on My Quality of Life:
The prolonged stress and uncertainty created by Wells Fargo's handling of this matter have caused significant emotional duress. The raised voices, contradictions, and repeated need to correct or re-explain the same facts have created a hostile and exhausting environment. This has negatively affected my sleep, my daily functioning, and my family's well-being.

**ATTACHMENTS**

Adobe Scan Jan 6, 2026.pdf (1.7 MB)
View full complaint ⊕

 **Sent to company**

**STATUS**
Sent to company on 3/16/2026

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

 **Company still working**

**STATUS**
Company response is in progress as of 3/26/2026

5/3/26, 5:33 PM                                                Complaint Detail

 An official website of the United States Government

 Consumer Financial
Protection Bureau
          (https://www.consumerfinance.gov/)                        Start a new complaint

❮ All complaints (.)

# 260316-30064262

**CLOSED**

 Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/16/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

CFPB Complaint Draft — Misclassification of Employment & Harm to Individuals With Disabilities

Summary of the Issue:
I am a Medicaid Developmental Disability (DD) Waiver provider for the State of Wyoming. Wells Fargo incorrectly classified me as "unemployed" and treated my weekly automatic deposits from the State of Wyoming as if they were unemployment benefits. As a result, the bank returned or rejected my legitimate weekly income deposits. This misclassification directly disrupted my ability to provide services to individuals with developmental disabilities and caused significant financial and emotional harm.

Details:
As a contracted Medicaid DD Waiver provider, I receive weekly automatic deposits from the State of Wyoming for the services I provide to individuals with disabilities. These payments are not unemployment

benefits, nor have I ever been unemployed. Despite this, Wells Fargo repeatedly misclassified my income and treated my weekly state-issued payments as if they were unemployment benefits.

Because of this incorrect classification, Wells Fargo returned or refused my legitimate weekly deposits. This created immediate financial instability and interfered with my ability to meet obligations related to the care and support of the individuals I serve. The bank's actions were based on inaccurate assumptions about my employment status, despite my attempts to correct the information in writing.

Impact on Individuals With Disabilities:
The people I support through the Medicaid DD Waiver program rely on consistent, uninterrupted services. Wells Fargo's actions jeopardized my ability to provide those services by disrupting my income, creating financial uncertainty, and forcing me to spend excessive time trying to correct the bank's errors. This placed unnecessary stress on both me and the individuals who depend on my support.

Impact on Me Personally:
The misclassification and returned deposits caused significant emotional distress, sleep disruption, and financial strain. I spent an excessive amount of time attempting to resolve the issue, which further reduced my capacity to provide care. The situation created avoidable hardship and directly affected my quality of life and my ability to perform my duties as a Medicaid provider.

View full complaint ⊕

 **Sent to company**

**STATUS**
Sent to company on 3/16/2026

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

Complaint Detail

 An official website of the United States Government

 **Consumer Financial Protection Bureau**       Start a new complaint

(https://www.consumerfinance.gov/)

❮  All complaints (.)

# 260316-30064703

**CLOSED**

  ## Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/16/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

CFPB Complaint Draft — Emotional Harm to Adult With Disability From Unprofessional Wells Fargo Call on 2/26

Summary of the Issue:
On February 26, I received an unprofessional and inappropriate phone call from a Wells Fargo representative named Brie. Her conduct caused significant emotional distress to an adult with a disability in my household, as well as to me as the caregiver. The tone, raised voice, and contradictory statements during the call created unnecessary trauma and escalated an already stressful situation.

Details of the Incident:
During the 2/26 call, the representative, Brie, spoke in a raised and agitated tone, interrupted repeatedly, and made contradictory statements about my account and ongoing issues. Her communication style was abrupt, dismissive, and emotionally charged. This was especially harmful because the call occurred in the presence of an adult with a disability who

is highly sensitive to tone, conflict, and elevated voices.

The representative's behavior caused immediate emotional distress. The individual became visibly upset, anxious, and confused by the raised voice and confrontational tone. This reaction continued after the call ended and required additional time and emotional support to stabilize.

Impact on the Adult With a Disability:
The individual experienced emotional trauma due to the representative's tone and conduct. This included:

• heightened anxiety
• emotional dysregulation
• confusion and fear triggered by the raised voice
• disruption of daily functioning

This was avoidable and directly caused by the unprofessional handling of the call.

Impact on Me as the Caregiver:
As the caregiver, I experienced significant stress and emotional strain from the representative's conduct. The raised voice, contradictions, and dismissive communication created an environment of hostility and confusion. This added to the ongoing burden caused by Wells Fargo's mishandling of my account and contributed to a decline in my overall well-being.

View full complaint ⊕

 **Sent to company**

**STATUS**
Sent to company on 3/16/2026

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

Complaint Detail

 An official website of the United States Government

 Consumer Financial
Protection Bureau                                                    Start a new complaint
(https://www.consumerfinance.gov/)

 All complaints (.)

# 260319-30225658

**CLOSED**

✓ Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/19/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

CFPB Complaint: No Communication From Assigned Representative Since 3/2, Except One Introduction Email on 3/17

Summary of the Issue
Wells Fargo has not communicated with me regarding my dispute since 3/2/2026, despite my repeated written requests for updates and provisional credit. The only contact I received was a brief introduction email from the new representative, Amanda, on 3/17/2026, with no follow-up, no answers to my questions, and no acknowledgment of my requests. I have received no substantive communication from the bank for over two weeks.

Details of the Procedural Failure
Wells Fargo has had my dispute and supporting documentation since 11/26/2025, yet the bank has:

• failed to respond to my written requests for provisional credit

Complaint Detail

• failed to provide any update or written explanation since 3/2
• failed to communicate through the newly assigned representative
• provided only a single introductory email on 3/17, with no
follow-through
• failed to provide a timeline for resolution
• failed to meet required communication standards for an ongoing dispute

This lack of communication has left me without any information about the status of my case, despite the bank holding it for nearly four months.

**ATTACHMENTS**

IMG_4662.png
(760.2 KB)

View full complaint ⊕

 # Sent to company

**STATUS**

Sent to company on 3/19/2026

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

 # Company still working

**STATUS**

Company response is in progress as of 3/31/2026

## The company has responded that it is still working on your issue

In some cases, companies need more time to respond. You should receive a final response within 60 days from the date we sent your complaint to the company.

Complaint Detail

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

**❮ All complaints (.)**

# 260319-30220174

**CLOSED**

 ## Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/19/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

CFPB Complaint: Failure to Provide Clear and Timely Written Explanations

The bank repeatedly failed to provide clear, timely, and accurate written explanations regarding my account status, refund timeline, and deposit handling, creating a separate and significant consumer harm. Over several months, I was given conflicting verbal explanations by multiple representatives, yet the bank consistently failed to provide written documentation that clarified the situation or confirmed the information I was told. This lack of written communication forced me to rely on contradictory verbal statements, created ongoing uncertainty, and prevented me from making informed financial decisions. The absence of clear written explanations also contributed to delays in correcting the bank's own errors, disrupted my contractor income, and increased the overall time burden placed on me. This failure to provide accurate written information reflects a breakdown in internal controls and constitutes a compensable procedural harm recognized by federal regulators.

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

 **❮  All complaints (.)**

# 260319-30219887

**CLOSED**

## ✔ Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/19/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

CFPB Complaint: Emotional Distress, Sleep Loss, Family Strain, and Intimidation Caused by Delays and Misinformation

The bank's prolonged delays, contradictory information, and intimidating conduct by representatives caused significant emotional distress and directly affected my health, family life, and financial stability. Over several months, I received inconsistent explanations about my account status, refund timeline, and deposit handling. These contradictions created ongoing uncertainty and stress, leading to repeated loss of sleep and sustained anxiety. The delays and misinformation also caused strain within my family, as I was forced to work continuously without taking necessary time off due to the financial instability created by the bank's actions. In addition, certain representatives engaged in raised voices, dismissive behavior, and intimidating communication that intensified the emotional impact of the delays. This combination of misinformation,

stalled communication, and unprofessional conduct represents a serious procedural failure and a compensable consumer harm recognized by federal regulators.

View full complaint ⊕

 ## Sent to company

**STATUS**

Sent to company on 3/19/2026

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

 ## Company still working

**STATUS**

Company response is in progress as of 3/31/2026

## The company has responded that it is still working on your issue

In some cases, companies need more time to respond. You should receive a final response within 60 days from the date we sent your complaint to the company.

**COMPANY'S INTERIM RESPONSE**

We'll need additional time to ensure we fully address all the concerns brought to our attention and provide a thorough response.

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

**❮ All complaints (.)**

# 260320-30243573

**CLOSED**

 **Submitted**

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/19/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

CFPB Complaint: Insufficient Security Controls for ATM Cash Deposits

Summary of Issue:
Wells Fargo's current security practices for ATM cash deposits do not adequately protect consumers. The bank allows cash deposits to be made into an account regardless of where the account holder lives, without any geographic-based verification, behavioral review, or safeguards to detect unusual deposit patterns. Additionally, the bank does not appear to monitor repeated changes to account nicknames, which can be a red flag for account takeover or fraud.

Details:
A cash deposit made at an ATM is a high-risk transaction because it involves physical currency, immediate posting, and no sender identification. Despite this, Wells Fargo does not implement basic security checks such as:

• reviewing whether the deposit location is consistent with the account holder's residence or normal activity
• flagging cash deposits made far outside the customer's geographic area
• monitoring for repeated or rapid changes to the account nickname
• verifying whether the deposit pattern aligns with the customer's established behavior

These are standard fraud-prevention practices used across the industry to detect account takeover, mule activity, or unauthorized access.

In my case, the account received a cash deposit from a location that did not match the account holder's residence or typical activity. There was no security alert, no verification step, and no review of the unusual pattern. Additionally, the account nickname was changed multiple times, which is another indicator of potential unauthorized access, yet no security measures were triggered.

Why This Is a Systemic Concern:
This is not a personal preference issue. It is a structural security gap that affects any consumer whose account could be accessed or manipulated by a third party. Allowing unrestricted cash deposits from any location, combined with no monitoring of account-nickname changes, creates an environment where fraud can occur without detection.

These gaps increase the likelihood of:

• unauthorized deposits
• unauthorized withdrawals
• account takeover
• mule activity
• delayed fraud detection
• disputes that are difficult to resolve due to missing verification steps

The lack of geographic or behavioral review for ATM cash deposits is a significant vulnerability that exposes consumers to preventable harm.

View full complaint ⊕

 **Sent to company**

**STATUS**
Sent to company on 3/19/2026

We've sent your complaint to the company, and we will let you know when they respond.

 An official website of the United States Government

 **Consumer Financial
Protection Bureau**
(https://www.consumerfinance.gov/)

Start a new complaint

 ❮ All complaints (.)

# 260320-30243931

**CLOSED**

## ✔ Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/19/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

CFPB Complaint: Insufficient Staffing for Fraud Response, Post-Fraud Follow-Up, and CFPB Complaint Handling

Summary of Issue:
Wells Fargo appears to lack sufficient staffing in several critical areas: fraud response, post-fraud follow-up, and complaint handling. These staffing shortages contributed to delays, inconsistent information, and preventable harm during and after an ATM cash-deposit fraud incident. The bank also appears unable to respond to CFPB complaints within reasonable timeframes, suggesting broader operational deficiencies.

Details:
During my fraud incident, Wells Fargo did not have adequate staffing to respond promptly or appropriately. When I attempted to report the fraud, the fraud line had extremely long hold times, and representatives appeared rushed, unfamiliar with procedures, and unable to locate basic information about the deposit. This occurred immediately before a major

Complaint Detail

holiday, a time when fraud risk is predictably higher. Despite this known pattern, Wells Fargo did not appear to have increased staffing or resources to handle the surge in fraud reports.

In the days following the fraud, I attempted to follow up, but the bank again had insufficient staffing to answer calls or provide timely updates. This resulted in delays during the most critical period of the investigation, when rapid action is essential to prevent further loss.

Additionally, Wells Fargo has not demonstrated sufficient staffing to respond to my CFPB complaints in a timely or consistent manner. Complaints remain open past expected response windows, and the bank has provided incomplete or contradictory information. This suggests that the staffing shortages extend beyond the fraud department and affect the bank's regulatory-response functions as well.

Why This Is a Systemic Concern:
This issue is not limited to my account. Insufficient staffing in fraud response, post-fraud follow-up, and regulatory complaint handling affects all consumers. When a bank does not staff appropriately during predictable high-risk periods (such as pre-holiday fraud spikes), consumers face:

• delayed fraud reporting
• delayed investigation
• increased financial loss
• inconsistent or inaccurate information
• reduced access to fraud specialists
• delayed or incomplete responses to regulatory complaints


Adequate staffing is a basic operational requirement for consumer protection. Wells Fargo's inability to meet this requirement creates systemic risk and undermines the integrity of its fraud-handling and complaint-response processes.


View full complaint ⊕



 ## Sent to company

**STATUS**
Sent to company on 3/19/2026


We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)                    Start a new complaint

 All complaints (.)

# 260320-30244268

**CLOSED**

## ✔ Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/19/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

CFPB Complaint: Bias in Complaint Handling Due to "Protect-the-Bank" Culture at Wells Fargo

Summary of Issue:
Wells Fargo's complaint-handling practices appear to be influenced by an internal culture that prioritizes protecting the bank over objectively evaluating consumer concerns. This culture results in biased complaint responses, premature conclusions, and a pattern of dismissing or minimizing legitimate issues without proper investigation.

Details:
Throughout my interactions with Wells Fargo, I observed a consistent pattern in how employees handled my complaints and fraud reports. Instead of approaching the issues neutrally, representatives repeatedly framed the situation in ways that protected the bank's position, even when the facts were incomplete or contradictory. Examples include:

• Representatives making statements that implied fault on the consumer before reviewing evidence.

• Employees offering explanations that favored the bank despite lacking documentation or verification.

• Premature determinations issued before the bank had completed basic investigative steps.

• Repeated minimization of procedural failures, such as missing evidence, delayed follow-up, or incorrect instructions.

• A tendency to defend prior decisions rather than reassess them when new information became available.

This pattern suggests that employees may be trained or incentivized to default to protecting the bank's interests rather than conducting an unbiased review of consumer complaints.

Why This Is a Systemic Concern:
This issue is not limited to my individual case. A "protect-the-bank" culture affects all consumers who attempt to resolve disputes or report fraud. When employees are encouraged—directly or indirectly—to prioritize the bank's liability over objective fact-finding, it undermines:

• fair complaint handling
• accurate investigations
• consumer trust
• compliance with regulatory expectations
• the integrity of the dispute-resolution process

A biased approach increases the likelihood of:

• premature denials
• incomplete investigations
• failure to consider new evidence
• inconsistent treatment of consumers
• potential UDAAP concerns

Consumers should be able to rely on a bank to evaluate complaints impartially. A culture that defaults to defending the institution instead of examining the facts creates systemic risk and prevents fair outcomes.

View full complaint ⊕

 Sent to company

**STATUS**
Sent to company on
3/19/2026

 An official website of the United States Government

 **Consumer Financial Protection Bureau** (https://www.consumerfinance.gov/)

Start a new complaint

< All complaints (.)

# 260320-30256142

**CLOSED**

 # Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/20/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

CFPB Complaint: Bank-Imposter Scams Are Fraud and Should Not Be Classified as Customer-Authorized Transactions

Summary of Issue:
Wells Fargo continues to classify bank-imposter scams as "customer-authorized transactions," even when the consumer was deceived by a scammer impersonating the bank. This classification contradicts how law enforcement treats these incidents and results in improper denials, incomplete investigations, and consumer harm.

Details:
I was the victim of a bank-imposter scam in which a scammer spoofed Wells Fargo's phone number and impersonated the bank. Law enforcement has classified this incident as fraud, not an authorized transaction. Despite this, Wells Fargo repeatedly labeled the transaction as "customer authorized," even though:

- I was deceived by a scammer impersonating Wells Fargo
- The scammer used a spoofed Wells Fargo number
- The scammer directed me to make a transaction under false pretenses
- I reported the fraud immediately
- Law enforcement documented it as fraud
- The transaction involved a Wells Fargo ATM deposit into what appears to be a mule account

A consumer who is deceived by a scammer impersonating the bank cannot provide meaningful authorization. Authorization requires informed consent. Deception removes consent.

Wells Fargo's classification ignores:

- the impersonation
- the spoofed number
- the fraudulent instructions
- the law enforcement findings
- the ATM deposit into a likely mule account
- the immediate fraud report
- the lack of any benefit to the consumer

This is not a "customer-authorized" event. It is a fraud event.

Why This Is a Systemic Concern:
Bank-imposter scams are a growing national problem. Law enforcement agencies consistently classify these incidents as fraud because the consumer is manipulated through impersonation. When Wells Fargo labels these events as "authorized," it:

- shifts liability onto the victim
- avoids proper investigation
- contradicts law enforcement findings
- undermines consumer protections
- creates inconsistent treatment of fraud victims
- may violate expectations under Regulation E for error resolution

This practice harms consumers and creates a systemic risk that legitimate fraud cases will be dismissed without proper review.

View full complaint ⊕

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

❮ All complaints (.)

# 260320-30256773

**CLOSED**

 ## Submitted

| STATUS | PRODUCT | ISSUE |
| --- | --- | --- |
| Submitted to the CFPB on 3/20/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

### YOUR COMPLAINT

FPB Complaint: Lack of Scam Warnings During Large Withdrawal and Unresolved Missing Deposit

Summary of Issue:
Wells Fargo allowed me to withdraw $18,000 in cash from a branch without providing any warnings about bank-imposter scams, despite these scams being widely recognized by law enforcement. Shortly afterward, I deposited $17,800 into a Wells Fargo ATM, and the bank still cannot explain where that deposit went.

Details:
When I withdrew $18,000 from a Wells Fargo branch, no employee warned me about:

- bank-imposter scams
- spoofed-number fraud
- impersonation calls pretending to be Wells Fargo

Complaint Detail

• the risks of handling large cash withdrawals during scam activity

Banks routinely warn consumers about check fraud, Zelle fraud, and phishing, yet I received no verbal or written warning before being handed a large amount of cash.

Shortly after the withdrawal, I deposited $17,800 into a Wells Fargo ATM. The ATM accepted the cash, and law enforcement later confirmed the deposit on video. However, Wells Fargo still cannot explain:

• what account the deposit went into
• how the funds were withdrawn
• why the deposit is missing
• why the bank has no record of where the money ended up

This combination — no scam warning during a large withdrawal, followed by a missing deposit — raises serious concerns about Wells Fargo's fraud-prevention controls and consumer-protection practices.

Why This Is a Systemic Concern:
Banks are expected to:

• warn consumers about known scam patterns
• protect consumers during high-risk transactions
• monitor for mule-account activity
• track ATM deposits accurately
• investigate missing deposits thoroughly

Wells Fargo failed at each of these steps. The lack of a scam warning directly contributed to the harm, and the unresolved missing deposit indicates deeper systemic issues.

View full complaint ⊕

 **Sent to company**

**STATUS**
Sent to company on 3/20/2026

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

**❮  All complaints (.)**

# 260326-30509495

**CLOSED**

 ## Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/26/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

COMPLAINT — WELLS FARGO BRANCH-LEVEL FAILURES ON 11/26 AND 11/28

Subject: Wells Fargo teller and banker conduct that violated required fraud-prevention procedures, normalized unsafe cash behavior, and reinforced a scam narrative during two branch visits on November 26 and November 28, 2025.

---

1. Teller failure on 11/26/25 at the Pershing branch — Normalizing under-the-table cash payments and bypassing high-risk withdrawal procedures

On November 26, 2025, the day before Thanksgiving — a period banks classify as high-risk for fraud and scams — I visited the Wells Fargo Pershing branch to withdraw $18,000 in cash.

The teller, Sarah, made the following statement during the transaction:

"I know contractors — they give discounts if you pay in cash."

This comment normalized under-the-table cash payments, contradicted BSA/AML training, and reinforced a known scam pattern involving urgent home-repair cash demands.

In addition, the teller failed to follow Wells Fargo's mandatory procedures for high-risk cash withdrawals:

• No clarifying questions were asked
• No risk assessment was performed
• No safer alternatives (cashier's check, wire, etc.) were offered
• No documentation of the stated purpose was entered
• No escalation occurred despite multiple mandatory red flags
• No attempt was made to determine whether I was being coached or under duress


Wells Fargo's own training requires escalation when:

• the withdrawal is unusually large
• the timing is holiday-adjacent
• the customer is on the phone
• the purpose is unclear or unusual


All applied. None were followed.

This is a training failure and an internal-control failure.

---

2. Teller issued cash that Wells Fargo's ATM later rejected

When I later attempted to deposit the same cash at a Wells Fargo ATM, the ATM rejected $200 of the bills.

This proves:

• the teller did not inspect or validate the cash
• the teller issued bills that Wells Fargo's own system deemed unacceptable
• cash-handling controls were not followed


This is a branch-level operational failure, not customer error.

---

3. Banker failure on 11/28/25 at the Capitol branch — Reinforcing the scam narrative instead of identifying red flags

                        

On November 28, 2025, I visited the Wells Fargo Capitol branch to report the fraud.
I met with personal banker Brandon Jones.

Instead of recognizing the scenario as a known scam pattern, he stated that he would have believed I needed $18,000 in cash for solar panels because of the recent hailstorm.

This demonstrates:

• lack of fraud-typology training
• failure to recognize weather-related home-repair scams
• normalization of large cash withdrawals for major purchases
• reinforcement of the scammer's narrative even after the fraud was known

A properly trained banker would have recognized:

• solar panel companies do not require cash
• weather-related home-repair scams are common
• large cash withdrawals for home services are a red flag
• the teller should have escalated the 11/26 withdrawal

Instead, the banker validated the exact scenario that enabled the fraud.

This is a training failure and a post-incident control failure.

---

4. Combined impact of the 11/26 and 11/28 branch failures

These two branch interactions show a systemic breakdown in Wells Fargo's fraud-prevention framework:

• The teller lowered safeguards and encouraged unsafe cash behavior
• The teller issued cash that Wells Fargo's ATM rejected
• The banker later reinforced the scam narrative instead of identifying it
• Neither employee recognized multiple mandatory red flags
• Neither employee followed Wells Fargo's required procedures

These failures directly enabled the fraud and contradict Wells Fargo's obligations under its own policies and industry-standard fraud-prevention practices.

View full complaint ⊕

      

Complaint Detail

 ## Sent to company

**STATUS**

Sent to company on 3/26/2026

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

## Company still working

**STATUS**

Company response is in progress as of 4/7/2026

### The company has responded that it is still working on your issue

In some cases, companies need more time to respond. You should receive a final response within 60 days from the date we sent your complaint to the company.

**COMPANY'S INTERIM RESPONSE**

The bank will need additional time to ensure we fully address all of the concerns brought to our attention and provide a thorough response.

## Company responded

| STATUS | RESPONSE TYPE |
| --- | --- |
| Company responded on 4/22/2026 | Closed with explanation |

## Company's Response

Our response reaffirms the closure of the remaining 29 cases, completing review of all 110 claims associated with this matter. We confirmed that any issues previously addressed; including claims filed before April 1, 2026, service concerns, phishing allegations, security measures, account documents, provisional credit, missing deposits, digital banking issues, employment status, or legal requests will not be revisited. No monetary compensation is warranted, as no bank error was identified and the transactions were authorized by the customer. Claims created on/after April 1, 2026, including the CStar and DAT claims, were denied due to the inability to locate the alleged deposit, the withdrawal was authorized without processing error and provisional credit was not issued because all claims were resolved within 10 business days. RTD request submitted on DAT claim on April 22, 2026. We apologized for confusion regarding claim dates, clarified CFPB timing requirements and our compliance, explained duplicate case classification and case-related correspondence volume, confirmed ATM cash availability policies and the inability to trace third party deposits, and verified that the referenced "nicknamed ATM account" does not exist. Provided employee allegation verbiage verbatim for the findings and no referral sent at this time. Large case volumes can cause delayed response as the volume of complaints is added to the complaint process. The customer was directed to the Deposit Account Agreement for arbitration information and advised to obtain closed account statements through a branch or phone bank, as online access is unavailable. Employee last names were not disclosed due to privacy requirements.

**ATTACHMENTS**

McKee Final Response Batch 3.pdf (102.2 KB)

 **Feedback provided**

**STATUS**

Feedback provided on 4/29/2026

## Your feedback

**THE COMPANY'S RESPONSE ADDRESSED ALL OF MY ISSUES**

No

**I UNDERSTAND THE COMPANY'S RESPONSE TO MY COMPLAINT**

No

**THE COMPANY DID WHAT THEY SAID THEY WOULD DO WITH MY COMPLAINT**

No

## ADDITIONAL COMMENTS

Rebuttal: Wells Fargo Did Not Address the Issues Raised Wells Fargo's response does not address the concerns raised in my complaint regarding the teller and banker conduct on November 26 and November 28, 2025. The bank's reply does not explain why required fraud-prevention procedures were bypassed, why unsafe cash behavior was normalized, or why two separate employees at two different branches reinforced elements of a known scam pattern. These failures cannot be attributed to isolated employee error and reflect broader systemic issues. Specifically, Wells Fargo did not address: 1. The teller's unsafe conduct and failure to follow high-risk withdrawal procedures on 11/26 My complaint documented that the teller: • normalized under-the-table cash payments • made comments contradicting BSA/AML training • failed to ask clarifying questions • failed to perform a risk assessment • failed to offer safer alternatives • failed to document the stated purpose • failed to escalate despite multiple mandatory red flags Wells Fargo's response does not address these failures or explain why required controls were not followed. 2. The teller issuing cash that Wells Fargo's own ATM later rejected I documented that the ATM rejected $200 of the cash issued by the teller. Wells Fargo did not address: • why the teller did not inspect or validate the bills • why cash-handling controls were not followed • why the bank issued bills its own system deemed unacceptable This is a branch-level operational failure that remains unaddressed. 3. The personal banker's reinforcement of the scam narrative on 11/28 My complaint explained that the personal banker, Brandon Jones, validated the scammer's explanation by stating he would have believed I needed $18,000 in cash for solar panels because of a hailstorm. Wells Fargo's response does not address: • why a banker reinforced a fraudulent narrative • why no fraud-typology awareness was applied • why no escalation occurred despite clear red flags • why the banker normalized a scenario that contradicts industry-standard fraud-prevention practices This demonstrates a lack of training and a post-incident control failure. 4. The fact that two employees at two different branches made the same procedural errors My complaint documented that both employees: • contradicted Wells Fargo's own training • failed to recognize red flags • validated elements of the scam • bypassed required procedures Wells Fargo's response does not address this pattern or explain why the same failures occurred at multiple locations. 5. The systemic nature of the failures I documented that these events reflect: • inconsistent employee training • lack of fraud-typology awareness • failure to enforce internal controls • inadequate supervision • absence of escalation protocols • breakdown in communication between branch staff and fraud departments Wells Fargo's response does not address these systemic issues or explain how the bank intends to correct them. 6. The direct impact of these failures on the resulting fraud My complaint explained that these branch-level failures: • lowered safeguards • enabled the scammer's narrative • prevented proper escalation • contributed to the fraud • undermined Wells Fargo's ability to detect or interrupt the incident Wells Fargo's response does not address this causal connection. --- Summary Wells Fargo's response does not address the teller's unsafe behavior, the banker's reinforcement of the scam narrative, the repeated bypassing of required procedures, or the broader systemic failures across multiple branches. The bank's reply does not resolve the issues raised and does not explain why two separate employees at two different locations made the same critical

errors. I am requesting CFPB review because the bank's response does not address the documented concerns and does not resolve the underlying systemic failures.

## What happens now?

The complaint process is complete and your complaint is now closed.

We have taken the following additional actions on your complaint:

- We added your complaint to the CFPB's Consumer Complaint Database (http://www.consumerfinance.gov/data-research/consumer-complaints).

- Your feedback, and feedback from others, helps us understand how companies are addressing concerns raised by consumers in their complaints. We will also share your feedback with the company.

- We have also shared your complaint with the Federal Trade Commission, which will add your complaint to its database for state and federal law enforcement agencies.

We appreciate your participation in the complaint process and your feedback on the company's response. Both are important to us and consumers who may have similar issues and concerns.

 **Closed**

The CFPB has closed your complaint.

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question?

(855) 411-2372

TTY/TTD: (855) 729-2372

9 a.m. to 6 p.m. ET, Monday through Friday
(except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-

Complaint Detail

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)                          Start a new complaint

❮  All complaints (.)

# 260326-30535844

**CLOSED**

  **Submitted**

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/26/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

CFPB Complaint (Based on Detective Young's Email)

Subject: Wells Fargo – Missing Deposit, Missing Chain of Custody, and Failure to Provide Evidence Requested Under Judge-Signed Warrant

Complaint:

I am filing this complaint regarding Wells Fargo's continued failure to provide evidence, records, and chain-of-custody documentation related to my missing ATM deposit, despite an active law-enforcement investigation and a judge-signed search warrant.

On March 26, 2026, Detective Michael Young of the Laramie County Sheriff's Office provided written confirmation that:

1. ATM surveillance video confirms I made the deposit.
The detective states the video shows me pulling up to the ATM and

1/6

placing items into the machine.

2. Wells Fargo has not provided any chain of custody showing what happened to my funds after the deposit.

The detective explicitly states that Wells Fargo has not produced any documentation showing what occurred to the funds after the ATM accepted them.

3. Wells Fargo requested an extension instead of providing the account information required by the warrant.

The detective reports receiving a letter from Wells Fargo asking for more time to provide the account information he requested under the search warrant.

4. The detective cannot complete his report because Wells Fargo has not provided the required records.

He is waiting on Wells Fargo's account information to finalize his report.

These findings directly contradict Wells Fargo's prior statements to me, including repeated claims that they "needed ATM video to prove the deposit," while simultaneously failing to provide the chain-of-custody records that would show what happened to my funds after the ATM accepted them.

Wells Fargo's refusal or inability to produce basic custodial documentation—despite a judge-signed warrant due on 3/12/2026 and an active criminal investigation—raises serious concerns about:

• Recordkeeping failures
• Potential mishandling of customer funds
• Systemic issues with ATM deposit processing
• Obstruction or delay of a law-enforcement investigation
• Providing contradictory or misleading information to a consumer attempting to resolve a dispute

I am requesting that the CFPB:

• Require Wells Fargo to immediately provide the chain-of-custody documentation for my deposit
• Require Wells Fargo to provide the account information requested by the detective under the warrant
• Review Wells Fargo's handling of ATM deposits, evidence retention, and responses to law-enforcement requests
• Investigate the pattern of contradictory statements and delays that have prevented resolution of this matter

I am attaching the detective's email confirming the ATM video and Wells Fargo's failure to provide required records.

Thank you for your attention to this matter.

**ATTACHMENTS**

IMG_4960.png
(1.1 MB)
View full complaint ⊕

 # Sent to company

**STATUS**

Sent to
company on
3/26/2026

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

 # Company still working

**STATUS**

Company
response is in
progress as of
4/7/2026

## The company has responded that it is still working on your issue

In some cases, companies need more time to respond. You should receive a final response within 60 days from the date we sent your complaint to the company.

---

**COMPANY'S INTERIM RESPONSE**

The bank will need additional time to ensure we fully address all of the concerns brought to our attention and provide a thorough response.

 # Company responded

| STATUS | RESPONSE TYPE |
| --- | --- |
| Company responded on 4/9/2026 | Closed with explanation |

## Company's Response

Response to this 38-pack confirms for the customer that they have received a substantive response dated April 1, 2026, addressing their various concerns already. As the new cases in this pack contained no new information from what was previously addressed, no new response is needed at this time. We have confirmed there are remaining CFPB cases that are still open and being reviewed, which will receive a separate response.

**ATTACHMENTS**

McKee Final Response Batch 2.pdf (75.5 KB)

 # Feedback provided

**STATUS**

Feedback provided on 4/9/2026

## Your feedback

.

**THE COMPANY'S RESPONSE ADDRESSED ALL OF MY ISSUES**

No

**I UNDERSTAND THE COMPANY'S RESPONSE TO MY COMPLAINT**

No

**THE COMPANY DID WHAT THEY SAID THEY WOULD DO WITH MY COMPLAINT**

No

**ADDITIONAL COMMENTS**

Rebuttal: Wells Fargo Did Not Address Missing Deposit Evidence, Missing Chain of Custody, or Warrant Noncompliance Wells Fargo's response did

not address the issues raised in this complaint. The bank provided a boilerplate statement that does not acknowledge or explain the missing deposit documentation, the missing chain-of-custody records, the failure to comply with a judge-signed warrant, or the detective's confirmation that he cannot complete his report due to Wells Fargo's lack of cooperation. 1. The response did not address the detective's findings My complaint included a written statement from Detective Michael Young confirming: • ATM video shows I made the deposit • Wells Fargo has not provided any chain-of-custody documentation • Wells Fargo requested an extension instead of providing the required account information • The detective cannot complete his report because Wells Fargo has not provided the records required under the warrant Wells Fargo's response did not acknowledge or address any of these findings. 2. The response did not address the missing chain-of-custody documentation I specifically stated that Wells Fargo has not produced: • chain-of-custody records • ATM balancing records • documentation showing what happened to the funds after the ATM accepted them These records are required for both the fraud investigation and the law-enforcement investigation. Wells Fargo did not address why these records have not been provided. 3. The response did not address the judge-signed warrant or the failure to comply My complaint documented that: • a judge-signed search warrant was served on January 9 • Wells Fargo provided only partial compliance • the bank requested an extension instead of providing the required account information • the detective is still waiting for the missing records Wells Fargo's response did not address the warrant, the partial compliance, the extension request, or the missing records. 4. The response did not address the contradictions between Wells Fargo's statements and the detective's findings I documented that Wells Fargo repeatedly told me they "needed ATM video to prove the deposit," while simultaneously failing to provide the chain-of-custody documentation that would show what happened to the funds after the ATM accepted them. Wells Fargo did not address these contradictions or explain why the required custodial documentation has not been produced. 5. The response did not address the impact on the law-enforcement investigation My complaint explained that: • the detective cannot complete his report • the investigation is stalled • Wells Fargo's missing records are preventing progress Wells Fargo did not address how their lack of cooperation has affected the investigation. --- Requested CFPB Action I am requesting that the CFPB require Wells Fargo to provide a substantive, individualized response addressing: 1. Why chain-of-custody documentation has not been produced. 2. Why the account information required under the warrant has not been provided. 3. Why the detective confirmed he cannot complete his report due to missing records. 4. Why Wells Fargo requested an extension instead of complying with the warrant. 5. How Wells Fargo reconciles its statements with the detective's findings. Wells Fargo's boilerplate response did not address any of these issues, and the complaint remains unresolved. ---

## What happens now?

The complaint process is complete and your complaint is now closed.

We have taken the following additional actions on your complaint:

- We added your complaint to the CFPB's Consumer Complaint Database (http://www.consumerfinance.gov/data-research/consumer-complaints).

- Your feedback, and feedback from others, helps us understand how companies are addressing concerns raised by consumers in their complaints. We will also share your feedback with the company.

- We have also shared your complaint with the Federal Trade Commission, which will add your complaint to its database for state and federal law enforcement agencies.

We appreciate your participation in the complaint process and your feedback on the company's response. Both are important to us and consumers who may have similar issues and concerns.

 Closed

The CFPB has closed your complaint.

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question?

(855) 411-2372

TTY/TTD: (855) 729-2372

9 a.m. to 6 p.m. ET, Monday through Friday (except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Overview)

 An official website of the United States Government

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

 **❮  All complaints (.)**

# 260326-30497297

**CLOSED**

## ✔ Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/25/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

am requesting immediate access to my closed Wells Fargo accounts because I do not have 60 days to wait for this issue to be resolved. I am an independent contractor and I need these records for tax preparation and for audit purposes. I have already filed a complaint about this issue, but I cannot wait for Wells Fargo to complete their internal process. I need access to my closed accounts indefinitely so I can retrieve the transaction history, deposits, and expense records required for my taxes and for any future audit. This is a time-sensitive request and I cannot complete my tax filing without these records.

View full complaint ⊕

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

❮  All complaints (.)

# 260325-30491250

**CLOSED**

 **Submitted**

| STATUS | PRODUCT | ISSUE |
| --- | --- | --- |
| Submitted to the CFPB on 3/25/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

### YOUR COMPLAINT

CFPB Complaint – Pattern of Unresolved Issues, Premature Closures, and Phone-Based Tactics

Summary:
Wells Fargo has created a pattern of unresolved issues, premature complaint closures, unsupported denials, and phone-based tactics that interfere with the complaint process. As of this filing, I have 94 CFPB complaints, with 88 still open. The 6 complaints Wells Fargo marked as "closed" are not resolved, as none included evidence, findings, or corrective action. This reflects a broader pattern of procedural failures and avoidance of written accountability.

---

Details:

1. Wells Fargo is prematurely closing complaints without resolving them

Although Wells Fargo has marked 6 of my complaints as "closed," none of them were resolved. These closures:

• did not include evidence
• did not address contradictions
• did not correct procedural failures
• did not resolve the underlying issues
• did not provide findings or explanations

A complaint being "closed" by the bank does not mean it was resolved for the consumer, and these closures were premature and unsupported.

---

2. 88 complaints remain open due to ongoing unresolved issues

The fact that 88 complaints remain open demonstrates:

• repeated failures to provide written responses
• repeated failures to provide evidence
• repeated failures to address contradictions
• repeated failures to complete investigations
• repeated failures to follow proper procedures

This volume of open complaints indicates a systemic issue, not isolated incidents.

---

3. Representatives are using phone-based tactics to avoid documentation

Across multiple interactions, Wells Fargo representatives have used phone calls instead of written responses. These calls are used to:

• avoid creating a written record
• avoid providing evidence
• avoid committing to explanations
• redirect responsibility back onto me
• minimize or reframe issues

Phone calls are repeatedly used in place of proper written responses required for complaint handling.

---

4. Representatives are asking me to point out where I wrote information in my complaints

In one call, a representative contacted me solely to ask where in my complaint I wrote that another employee said there was "no warrant." This is inappropriate because:

5/4/26, 4:57 PM                                                    Complaint Detail

• Wells Fargo is responsible for reading the complaint as submitted
• It is not my responsibility to guide them through their own review
• This tactic shifts responsibility away from their investigation
• It suggests they did not read the complaint thoroughly


This behavior interferes with the complaint process.

---

5. Unsupported verbal denials with no explanation

In another call, a representative told me:

"I know you've been through a lot, but we're denying your claim."

No reason was provided.
No evidence was provided.
No findings were provided.

This is not a valid basis for a denial and does not meet written-response
requirements.

---

6. Final Determination letters contain no evidence or findings

The Final Determination letters I received:

• contained no evidence
• contained no explanation
• contained no findings
• did not describe any investigation
• did not explain how decisions were reached


This violates the requirement to provide the consumer with the
information relied upon.

---

Why I Am Filing:

I am requesting CFPB review because Wells Fargo's conduct
demonstrates a pattern of:

• premature complaint closures without resolution
• unsupported denials
• missing evidence
• failure to provide written explanations
• reliance on phone calls to avoid documentation
• shifting responsibility back onto the consumer
• failure to read complaints thoroughly
• failure to address contradictions

• failure to conduct complete investigations

This pattern undermines the integrity of the complaint process and prevents meaningful resolution of legitimate issues.

View full complaint ⊕



## Sent to company

**STATUS**

Sent to company on 3/25/2026

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

## Company still working

**STATUS**

Company response is in progress as of 4/6/2026

## The company has responded that it is still working on your issue

In some cases, companies need more time to respond. You should receive a final response within 60 days from the date we sent your complaint to the company.

**COMPANY'S INTERIM RESPONSE**

The bank will need additional time to ensure we fully address all of the concerns brought to our attention and provide a thorough response.

Complaint Detail

 Company
responded

**STATUS**              **RESPONSE TYPE**

Company                 Closed with
responded               explanation
on
4/9/2026

## Company's Response

Response to this 38-pack confirms for the customer that they have
received a substantive response dated April 1, 2026, addressing their
various concerns already. As the new cases in this pack contained no new
information from what was previously addressed, no new response is
needed at this time. We have confirmed there are remaining CFPB cases
that are still open and being reviewed, which will receive a separate
response.

**ATTACHMENTS**

McKee Final
Response Batch
2.pdf (75.5 KB)

# Feedback
provided

**STATUS**

Feedback
provided on
4/9/2026

## Your feedback

**THE COMPANY'S RESPONSE ADDRESSED ALL OF MY ISSUES**

No

**I UNDERSTAND THE COMPANY'S RESPONSE TO MY
COMPLAINT**

No

**THE COMPANY DID WHAT THEY SAID THEY WOULD DO WITH
MY COMPLAINT**

No

5/4/26, 4:57 PM                                          Complaint Detail

**ADDITIONAL COMMENTS**

Rebuttal: Wells Fargo Did Not Address the Pattern of Unresolved Issues, Premature Closures, or Phone-Based Tactics Wells Fargo's response did not address the core issues raised in this complaint. The April 1 response does not resolve, acknowledge, or explain the pattern of premature closures, unsupported denials, missing evidence, or the repeated use of phone-based tactics that interfere with the complaint process. Closing this complaint as "already addressed" is factually incorrect. 1. Premature closures were not addressed I explained that Wells Fargo marked 6 complaints as "closed" even though: • no evidence was provided • no contradictions were addressed • no procedural failures were corrected • no findings or explanations were included Wells Fargo's response does not address why these complaints were closed without resolution or why no written findings were provided. 2. The volume of unresolved complaints was not addressed At the time of filing, 88 complaints remained open due to ongoing unresolved issues. This demonstrates repeated failures to: • provide written responses • provide evidence • address contradictions • complete investigations • follow proper procedures Wells Fargo did not address this pattern or explain why so many complaints remain unresolved. 3. Phone-based tactics were not addressed The complaint documented that representatives repeatedly used phone calls instead of written responses to: • avoid creating a written record • avoid providing evidence • avoid committing to explanations • shift responsibility back onto me Wells Fargo did not address this pattern or explain why representatives are relying on phone calls instead of written responses required for complaint handling. 4. Representatives asking me to point out my own statements was not addressed I documented that a representative called solely to ask where in my complaint I wrote that another employee said there was "no warrant." This is inappropriate because: • Wells Fargo is responsible for reading the complaint as submitted • It is not my responsibility to guide them through their own review Wells Fargo did not address this incident or the broader issue of representatives failing to read complaints thoroughly. 5. Unsupported verbal denials were not addressed I documented that a representative told me, "I know you've been through a lot, but we're denying your claim," without providing: • any reason • any evidence • any findings • any explanation Wells Fargo did not address this unsupported verbal denial or explain why no written reasoning was provided. 6. Final Determination letters lacking evidence were not addressed I explained that Final Determination letters: • contained no evidence • contained no findings • did not describe any investigation • did not explain how decisions were reached Wells Fargo did not address why these letters lacked required information. --- Requested CFPB Action I am requesting that the CFPB require Wells Fargo to provide a substantive, individualized response addressing each of the issues raised above. None of these concerns were addressed in the April 1 response, and closing this complaint as "already addressed" is inaccurate.

## What happens now?

The complaint process is complete and your complaint is now closed.

We have taken the following additional actions on your complaint:

- We added your complaint to the CFPB's Consumer Complaint Database (http://www.consumerfinance.gov/data-research/consumer-complaints).

- Your feedback, and feedback from others, helps us understand how companies are addressing concerns raised by consumers in their complaints. We will also share your feedback with the company.

- We have also shared your complaint with the Federal Trade Commission, which will add your complaint to its database for state and federal law enforcement agencies.

We appreciate your participation in the complaint process and your feedback on the company's response. Both are important to us and consumers who may have similar issues and concerns.

 **Closed**

The CFPB has closed your complaint.

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question?

(855) 411-2372

TTY/TTD: (855) 729-2372

9 a.m. to 6 p.m. ET, Monday through Friday (except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Overview)

 An official website of the United States Government

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

 **‹  All complaints (.)**

# 260330-30687041

**CLOSED**

## ✓ Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/30/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or

- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or

- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

Wells Fargo Retaliation for Filing Complaints

Summary:
Three different Wells Fargo employees have now told me that I have filed "too many complaints," and two of them stated that the number of complaints I filed will "slow down" my response time. One employee even told me I "could not file any more complaints." This is retaliatory, misleading, and contradicts the CFPB's own process. My complaint volume is a direct result of Wells Fargo's repeated procedural failures, not duplicates.

Details:
I have filed over 100 complaints because each one documented a separate issue, contradiction, or procedural failure by Wells Fargo regarding my missing $17,800 cash ATM deposit. These were not duplicates. They covered different problems including:

- missing chain of custody
- failure to comply with a search warrant
- contradictory statements to law enforcement
- three conflicting Final Determinations
- misclassification of my income
- misrouting my ATM case to a mortgage escalation manager
- failure to issue provisional credit after four months
- repeated misinformation from Wells Fargo representatives

Instead of addressing these issues, Wells Fargo employees have repeatedly told me that I "file too many complaints," and that my complaint volume is the reason for delays. This is false. The CFPB does not delay responses because a consumer files multiple complaints. Wells Fargo is responsible for its own delays.

Two Wells Fargo employees told me that my response time will be "slower" because I filed so many complaints. Another employee told me I "could not file any more complaints." This is inappropriate and appears to be an attempt to discourage me from documenting Wells Fargo's ongoing failures.

Wells Fargo's statements are misleading, retaliatory, and designed to deter me from exercising my right to file complaints when the bank continues to mishandle my case.

Attached are emails from two Wells Fargo employees indicating that my response will be delayed because of the number of complaints I have filed.

**ATTACHMENTS**

IMG_4662.png
(760.2 KB)

IMG_5015.png
(705.7 KB)

View full complaint ⊕

 Sent to company

**STATUS**

Sent to company on 3/30/2026

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

 ❮  All complaints (.)

# 260406-30940759

**CLOSED**

✔ **Submitted**

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 4/5/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

Contradictory Contact Information and Refusal to File a Claim

Today, I contacted the Wells Fargo fraud department directly. Despite reporting ongoing fraud issues, the fraud department refused to file another claim, stating that the people who could assist me were "closed right now."

This contradicts Wells Fargo's prior instructions that fraud must be reported immediately and that I should call the number provided in their fraud-related email.

Wells Fargo's fraud email instructed me to call +1 (844) 915-4956. I followed that instruction and made multiple documented attempts to reach that number:

- 5:26 PM — Outgoing call, 1 minute
- 5:30 PM — Outgoing call, 7 minutes

• 5:38 PM — Outgoing call, 7 minutes

Despite these attempts, I was unable to obtain assistance.

When I called the fraud department again today, they provided me with a different number — 1-800-548-9554 — which does not match the number in the fraud email and does not match the number attached to my claim. This demonstrates a pattern of contradictory and ineffective instructions that prevent me from accessing the correct team or resolving the fraud.

Wells Fargo's inconsistent contact information and refusal to file a claim have materially obstructed my ability to resolve the fraud and restore access to my account.

**ATTACHMENTS**

IMG_0020.jpeg
(92.4 KB)

IMG_0017.png
(861.1 KB)

View full complaint ⊕

 **Closed**

**STATUS**

The complaint was closed on 4/5/2026

The CFPB will not be taking additional action on your complaint. This complaint is now closed.

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question?

(855) 411-2372

TTY/TTD: (855) 729-2372

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

❮  All complaints (.)

# 260403-30853973

**CLOSED**

 Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 4/2/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

CFPB Complaint – Attempt to Influence What Evidence I Submit to Regulators

Summary of Issue:
A Wells Fargo escalation manager (Steven) sent an email implying that information provided to law enforcement should be treated separately and not included in my CFPB complaints. This raises concerns about whether the bank is attempting to limit what evidence I provide to regulators, especially when the information from law enforcement directly contradicts the bank's written denial.

Description of the Issue:
On April 2, 2026, Steven emailed me and stated that Wells Fargo treats the law-enforcement involvement as "separate." This was communicated immediately after I submitted multiple rebuttals documenting contradictions between Wells Fargo's statements to me and their statements to the investigating detective.

This timing and wording created the impression that I should not include law-enforcement information in my CFPB complaints, even though the detective's statements directly contradict Wells Fargo's denial letter and are relevant to whether a reasonable investigation occurred.

I am attaching Steven's email for reference.

Why This Is a Regulatory Concern:
Steven's email raises the following concerns:

1. Potential attempt to influence or limit the evidence I provide to the CFPB.
Suggesting that law-enforcement information is "separate" may discourage consumers from submitting relevant evidence.
2. Law-enforcement information is directly relevant to the consumer investigation.
The detective was told Wells Fargo did not know whether the ATM was theirs. The denial letter claims a thorough review. These statements cannot both be true.
3. The bank may be attempting to control the narrative presented to regulators.
This undermines transparency and raises concerns about whether the bank is fully cooperating with the CFPB process.
4. The timing suggests the bank responded to my rebuttals by attempting to redirect what information I include.
This occurred immediately after I documented contradictions between Wells Fargo and law enforcement.

Impact:
This creates the appearance that Wells Fargo is attempting to influence or narrow the scope of evidence submitted to regulators. It also raises concerns about whether the bank is attempting to keep contradictory law-enforcement information out of the CFPB's review.

Additional Concern: Lack of Evidence or Investigation Detail in Amanda's Review

Wells Fargo's escalation manager referenced a paragraph in Amanda's closure letter as evidence that an investigation was conducted. However, Amanda's letter did not list any evidence reviewed, any records examined, or any investigative steps taken. The closure contained only generic boilerplate language and did not reference ATM footage, electronic journal logs, accounting records, branch documentation, or any other materials that would be necessary to conduct a reasonable investigation. The absence of specific evidence or investigative detail raises concerns that no meaningful review occurred and that the denial letter may misrepresent the scope of the investigation. This omission is especially concerning given the contradictory information provided to law enforcement regarding ATM ownership.
Additional Concern: Omission of Device-Side Metadata From Apple Wallet/iPhone ATM Transaction

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

 **‹  All complaints (.)**

# 260401-30798369

**CLOSED**

## ✔ Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 4/1/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

CFPB Complaint Addendum: False Claim of Investigation

Wells Fargo representative Amanda stated in her email that she was "starting an investigation," but she did not list any investigation steps, did not request any information from me, and did not conduct any review of the ATM deposit. Her message contained no description of what she planned to investigate, no timeline, and no reference to required evidence such as ATM video, electronic journal logs, cash totals, or chain-of-custody documentation. Despite claiming she was initiating an investigation, Wells Fargo did not perform any investigation of the ATM deposit and later closed the complaint with a boilerplate response that did not address any of the issues raised. This is a procedural failure and a misleading representation of investigative action.

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)                          Start a new complaint

 ❮  All complaints (.)

# 260415-31390108

**CLOSED**

✔ **Submitted**

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 4/15/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

4/14/2025 – 11:39 AM (39-minute call)
Called Wells Fargo Privacy Center regarding potential security incident involving my information. Privacy Center transferred me to Melinda (Mortgage), who stated she spoke with the Escalation Team. She then involved Veronica (Refinance/Purchase Department) and attempted to transfer me to Fraud, but the call was disconnected.4/14/2025 – 12:19 PM (5-minute call)
Called Privacy Center again and spoke with Audrey, who stated:
– They cannot tell me on the phone whether my information was part of a security breach.
– The only way to know is if the legal team mailed a letter.
– She did not know whether mortgage applicants, not just account holders, were notified of security incidents.This contradicts federal privacy-rights requirements and indicates Wells Fargo may have information they are not disclosing.

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

 ❮  All complaints (.)

# 260331-30710566

**CLOSED**

## ✔ Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/31/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

Deficiencies in Wells Fargo's Response (Steven Scrivner)

I am submitting this complaint regarding the response I received from Steven Scrivner, SAGE High Profile/Media Escalations, on the morning of March 31. His email did not address the substance of my documented concerns and introduced additional procedural issues that require regulatory review.

1. Failure to Address Any Factual Allegations

My prior email contained detailed, evidence-based points regarding:

- three contradictory Final Determinations
- misclassification of income
- false statements about a search warrant
- failure to comply with the warrant
- lack of chain of custody for a $17,800 cash ATM deposit

Complaint Detail

• ledger inconsistencies
• contradictory statements to law enforcement
• retaliation for filing complaints
• boundary violations
• failure to provide tax-required account records
• failure to issue provisional credit

Mr. Scrivner's response did not address any of these issues.
He acknowledged receipt but provided no substantive answers,
explanations, or evidence.

This constitutes a failure to respond to the substance of a complaint.

2. Improper Use of a "Partial Response"

Mr. Scrivner stated that Wells Fargo will provide "an answer… for a
portion of the concerns… by end of week."

Deposit disputes and Regulation E investigations cannot be divided into
"portions."
A financial institution must provide a complete investigation and a
complete determination.

A partial response is not a recognized or compliant category.

3. Attempt to Extend Timelines After Violating Them

Mr. Scrivner stated that Wells Fargo will need "additional time" to
respond to the remainder of my concerns "the following week."

Wells Fargo has already:

• exceeded the 10-day provisional credit requirement
• exceeded the 45-day investigation window
• issued three contradictory Final Determinations
• failed to comply with a judge-signed search warrant
• failed to produce chain of custody
• failed to provide any evidence supporting its determinations

Wells Fargo cannot retroactively extend regulatory timelines after
violating them.

4. Failure to Address Reimbursement Demand

My email clearly stated:

"Wells Fargo needs to pay me for the missing $17,800 deposit."

Mr. Scrivner did not acknowledge, address, or respond to this
reimbursement demand, despite the presence of:

• a police report
• a search warrant

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

---

 **❮  All complaints (.)**

# 260409-31152596

**CLOSED**

## ✓ Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 4/9/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

CFPB Complaint – Unaddressed Issues in Today's Batch Closures

Wells Fargo batch-closed additional complaints today using identical boilerplate language without addressing any of the specific issues raised. The unaddressed issues include: (1) search-warrant noncompliance and failure to provide required records; (2) creating duress for a person with a disability during the dispute process; (3) unresolved training deficiencies among staff handling fraud and Reg E claims; (4) failure to adequately staff for known pre-holiday fraud-risk periods, which contributed to delayed detection and response; (5) contradictory timestamps and claim-handling inconsistencies; and (6) other systemic failures previously documented across my complaint cluster. (7) Failure to disclose evidence used to deny fraud claims. None of these issues were acknowledged or addressed in the closures issued today.

Complaint Detail

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

 **All complaints (.)**

# 260404-30923782

**CLOSED**

## ✅ Submitted

| **STATUS** | **PRODUCT** | **ISSUE** |
| --- | --- | --- |
| Submitted to the CFPB on 4/4/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

Complaint Regarding Inconsistent Timestamps on Fraud Claims

I am submitting this complaint to document a pattern of inconsistent and inaccurate timestamping by Wells Fargo regarding my fraud claims.

My two fraud claims were filed on April 1, 2026. However:

• In the Wells Fargo mobile app, both claims are shown as opened on March 31, 2026.
• The confirmation email Wells Fargo sent to me on April 1, 2026 is dated April 2, 2026.
• This means Wells Fargo is using three different dates for the same set of claims:• March 31 (in-app claim timestamps)
• April 1 (actual filing date)
• April 2 (email letter date)

These discrepancies demonstrate that Wells Fargo cannot consistently or accurately timestamp fraud claims. Accurate timestamps are essential for Regulation E compliance, investigation timelines, and law enforcement coordination. When the bank's own systems and communications contradict each other, it undermines the integrity of the claims process and creates confusion about when the claims were actually filed and when the investigation period legally began.

Summary of the Issue:
Wells Fargo misled me into believing a fraud claim had been filed on November 26, 2025, when in reality only an internal "escalation" existed. This prevented the required Regulation E investigation from being initiated, delayed the claim for four months, and resulted in multiple premature and inaccurate Final Determinations. This is a procedural failure and a misrepresentation of the claims process.

Details:
On November 26, 2025, I reported fraud to Wells Fargo immediately after the incident. I was later instructed by the fraud department to go to my local branch in person when it reopened after Thanksgiving. I followed those instructions and reported the fraud in person at the Pershing Blvd branch on November 28, 2025. A branch employee, Brandon, gave me a business card with a "case number" written on the back. I was led to believe this was a fraud claim number. It was not. It was only an escalation.

Because Wells Fargo never opened the actual fraud claims, the bank failed to initiate any Regulation E investigation. No evidence was collected, no provisional credit was considered, and no investigation steps were taken. Despite this, Wells Fargo issued multiple Final Determinations over the next four months, all of which were based on incomplete or nonexistent investigations.

On Wednesday, March 2026, I discovered that the real fraud claims had never been filed. I had to insist that Wells Fargo finally open the actual claims for the $18,000 duress withdrawal and the $17,800 ATM deposit. These claims should have been opened on November 26, 2025. The delay is a violation of Regulation E.

View full complaint ⊕

 **Closed**

**STATUS**
The complaint was closed on 4/4/2026

The CFPB will not be taking additional action on your complaint. This complaint is now closed.

 An official website of the United States Government

Consumer Financial
Protection Bureau                    Start a new complaint
(https://www.consumerfinance.gov/)

< All complaints (.)

# 260409-31151713

CLOSED

 **Submitted**

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 4/9/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

"Steven, VP of Sage has not responded to any of my emails since Friday, April 3, resulting in six consecutive days of silence. During this period, Wells Fargo batch-closed additional complaints today without addressing the core issues raised, including search-warrant noncompliance, the creation of duress for a person with a disability, unresolved training deficiencies, failure to adequately staff for known pre-holiday fraud-risk periods, and other systemic concerns previously documented. These premature closures continue a pattern of procedural failures and prevent meaningful review or resolution of the underlying issues."

**ATTACHMENTS**

| IMG_0259.png (796.9 KB) | IMG_0270.png (1 MB) | IMG_0271.png (907.5 KB) | IMG_0267.png (786.3 KB) | IMG_0266.png (710.5 KB) | IMG_0269.png (542.2 KB) | IMG_0258.png (666.6 KB) | IMG( (66' |

View full complaint ⊕

 **Closed**

**STATUS**

The complaint was closed on 4/9/2026

The CFPB will not be taking additional action on your complaint. This complaint is now closed.

---

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question?

(855) 411-2372

TTY/TTD: (855) 729-2372

9 a.m. to 6 p.m. ET, Monday through Friday (except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Overview)

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

❮  All complaints (.)

# 260315-30018118

**CLOSED**

 # Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/15/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

CFPB Complaint — Transaction Description Changed After the Fact (System Integrity and Recordkeeping Failure)

Summary of Issue
I am filing this complaint because the bank's internal system showed two different transaction descriptions for the same withdrawal connected to my missing $17,800 ATM deposit. My screenshots show that the withdrawal initially appeared as a "cashier's check", and later the same transaction appeared as a "cash withdrawal." This change occurred after the fact and without any explanation. A transaction changing categories in the bank's system raises serious concerns about accuracy, internal controls, and the reliability of the bank's investigation.

Details of the Incident
While reviewing my account activity, I observed that the withdrawal associated with my missing deposit was originally displayed as a cashier's check withdrawal. Later, the same transaction appeared as a

cash withdrawal. I have screenshots documenting both versions.

This is not a normal or expected change. A withdrawal should not shift between two different transaction types unless:

• a teller made an error
• a correction was performed
• an override occurred
• the transaction was reclassified internally
• the system updated or altered the record

At no point did the bank notify me of any correction, override, or reclassification. The bank has not provided teller logs, correction logs, override logs, or an audit trail explaining why the transaction changed categories.

Why This Is a Concern
A transaction changing from "cashier's check" to "cash" is a significant procedural issue because:

• It indicates a system integrity failure
• It suggests the teller may have selected the wrong transaction type
• It raises questions about whether required controls were bypassed
• It undermines the accuracy of the bank's records
• It calls into question the reliability of the bank's investigation
• It suggests the bank's documentation is incomplete or inaccurate

Regulators expect banks to maintain consistent, accurate transaction records. A change of this nature is not a minor discrepancy — it is a red flag indicating potential procedural or system failures.

Bank's Response
The bank has not explained:

• why the transaction appeared as a cashier's check
• why it later appeared as a cash withdrawal
• whether a correction or override occurred
• whether teller or back-office staff changed the classification
• why no documentation was provided to me
• whether this discrepancy was reviewed during the investigation

The bank has also not provided the audit trail, teller logs, or correction logs that would clarify what happened.

I have attached screenshots from WF online banking app with one showing the entry as cashiers check and another showing it as cash withdrawal. Also attached withdrawal receipt from the withdrawal inside the WF Pershing branch in Cheyenne, WY.

**ATTACHMENTS**

IMG_4649.png
(484.2 KB)

IMG_4648.png
(561.6 KB)

IMG_3887.jpeg
(2.7 MB)

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

❮  All complaints (.)

# 260419-31553396

**CLOSED**

 Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 4/19/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

Wells Fargo's Privacy Center responded to my formal privacy-rights request by providing only the most recent 12 months of data. The production contained nothing but marketing information and boilerplate disclosures. It did not include any information related to the Wells Fargo mortgage-system insider data breach, nor did it include any records from the years when my information was actually in their mortgage system.

I have been in the Wells Fargo Home Mortgage system since 2018, despite never obtaining a mortgage. My mortgage-application data was collected, stored, and retained by Wells Fargo beginning in 2018, and that data should have been reviewed and disclosed as part of my privacy request. Wells Fargo's response excluded all relevant years and omitted any information about whether my data was accessed, exposed, or involved in the 2022–2023 insider-access breach.

I am requesting that the CFPB require Wells Fargo to:

1. Produce a complete privacy-rights response covering all years in which my data was held in the mortgage system (2018–present).
2. Confirm whether my mortgage-application data was part of any data breach or unauthorized access event.
3. Explain why the Privacy Center limited its response to 12 months and excluded the period of the known insider breach.


Attached are:
• Wells Fargo's incomplete privacy-rights response
• Evidence showing I have been in the Wells Fargo mortgage system since 2018

Wells Fargo's refusal to disclose whether my data was part of the breach, combined with their incomplete production, prevents me from understanding the scope of exposure and impairs my ability to protect myself.

**ATTACHMENTS**

Privacy
Center.pdf (133.3
KB)

IMG_0365.jpeg
(290.4 KB)

IMG_0366.png
(573.2 KB)

View full complaint ⊕


 # Closed

**STATUS**

The complaint
was closed on
4/19/2026


The CFPB will not be taking additional action on your complaint. This complaint is now closed.


Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question?

(855) 411-2372

 An official website of the United States Government

 Consumer Financial
Protection Bureau                                        Start a new complaint
(https://www.consumerfinance.gov/)

❮  All complaints (.)

# 260416-31428061

**CLOSED**

✔ ## Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 4/16/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or

- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or

- Let you know if we need more information to continue our work.

### YOUR COMPLAINT

I have not received any written notification explaining the basis for the denial of my fraud claims. Wells Fargo has not provided any documentation showing what evidence was reviewed, what findings were made, or how the determinations were reached. Several claims were closed without investigation, without listing any evidence, and in some cases were backdated or closed on the same day they were opened. I am requesting the complete investigative record for each fraud claim, including the evidence reviewed and the reason each claim was denied.

---

### ATTACHMENTS

IMG_0316.png
(201.8 KB)

IMG_4960.png
(1.1 MB)

Adobe
Scan
Mar 31,
2026.pdf
(1.1
MB)

Complaint Detail

 An official website of the United States Government

 Consumer Financial
Protection Bureau                                        Start a new complaint
(https://www.consumerfinance.gov/)

❮  All complaints (.)

# 260415-31405792

**CLOSED**

 ## Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 4/15/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

### YOUR COMPLAINT

I am writing to document my call on April 15, 2026 at approximately 4:01 PM regarding claim 2604010049978. During this call, I was informed by Jen that the $18,000 withdrawal associated with this claim was denied because it was "an in-branch withdrawal."

I want to note that this explanation does not align with the requirements of Regulation E or with CFPB guidance on unauthorized electronic fund transfers. Reg E does not allow a bank to deny a claim solely because the customer was physically present or because the withdrawal occurred inside a branch. The determining factor is whether the transaction was authorized, not the location where it occurred.

Reg E and CFPB interpretations make clear that a transaction is unauthorized when it is made under coercion, duress, manipulation, or coaching, even if the consumer is physically present or enters a PIN. A consumer does not provide valid authorization when they are acting under threat, pressure, or instruction from a fraudster. The bank is required to

Complaint Detail

evaluate whether the transfer was voluntary and intentional, not simply
whether it occurred in a branch.

The denial reason provided ("in-branch withdrawal") does not address the
circumstances of coercion and lack of voluntariness that were reported,
and it does not satisfy the investigation requirements under Reg E.

**ATTACHMENTS**

IMG_0336.jpeg
(3.8 MB)

IMG_0338.png
(5.1 MB)

View full complaint ⊕

 Closed

**STATUS**

The complaint
was closed on
4/15/2026

The CFPB will not be taking additional action on your complaint. This complaint is now closed.

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question?

(855) 411-2372

TTY/TTD: (855) 729-2372

9 a.m. to 6 p.m. ET, Monday through Friday
(except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-
holidays/#url=Overview)

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

❮  All complaints (.)

# 260415-31390108

**CLOSED**

 ## Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 4/15/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

4/14/2025 – 11:39 AM (39-minute call)
Called Wells Fargo Privacy Center regarding potential security incident involving my information. Privacy Center transferred me to Melinda (Mortgage), who stated she spoke with the Escalation Team. She then involved Veronica (Refinance/Purchase Department) and attempted to transfer me to Fraud, but the call was disconnected.4/14/2025 – 12:19 PM (5-minute call)
Called Privacy Center again and spoke with Audrey, who stated:
– They cannot tell me on the phone whether my information was part of a security breach.
– The only way to know is if the legal team mailed a letter.
– She did not know whether mortgage applicants, not just account holders, were notified of security incidents.This contradicts federal privacy-rights requirements and indicates Wells Fargo may have information they are not disclosing.

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

 ‹  All complaints (.)

# 260415-31369223

**CLOSED**

## ✔ Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 4/15/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

### YOUR COMPLAINT

CFPB Complaint Draft — Possible Wells Fargo Data Breach Exposure

(Fraud beginning 11/26/2025)

Issue Summary:
I am submitting this complaint because I have reason to believe my personal and financial information may have been exposed in a Wells Fargo—related data breach, and this may be connected to the unresolved fraud on my account and the inconsistent handling of my dispute.

Details:
Unauthorized activity began on my Wells Fargo account on November 26, 2025. Since that date, Wells Fargo has issued multiple contradictory claim statuses, backdated closure notices, and Final Determination letters that do not describe any investigation steps. I have contemporaneous screenshots and prior CFPB submissions documenting these inconsistencies.

Complaint Detail

Recently, I submitted a Privacy Center "See My Data" request, and the system acknowledged a 20-day processing window. I am concerned because:

• Wells Fargo has not provided any explanation for how the fraud originated.
• The bank has repeatedly changed the status of my claim without proper notice.
• The pattern of contradictory communications resembles what other consumers report after data-handling incidents.
• Wells Fargo has had prior data-related incidents, and I cannot rule out that my information was part of a breach or unauthorized access event.

I am not asserting a confirmed breach. I am reporting that Wells Fargo's inconsistent handling of my fraud case, combined with the lack of transparency about how my data is stored or accessed, raises a legitimate concern that my information may have been compromised.

What I am requesting:

1. Confirmation of whether my personal or financial data was involved in any Wells Fargo data breach, security incident, or unauthorized access event.
2. A complete explanation of how the fraud that began on November 26, 2025 occurred and whether it was connected to any internal data exposure.
3. A full and accurate copy of all data Wells Fargo maintains about me, including internal notes, investigation records, and system logs related to my fraud claim.
4. A review of Wells Fargo's handling of my dispute, including the contradictory claim statuses and backdated closure dates.
5. Assurance that Wells Fargo is complying with all federal requirements for breach notification, dispute handling, and consumer communication.

Impact:
The unresolved fraud, inconsistent claim handling, and lack of transparency have caused financial harm, delays in access to my own funds, and ongoing uncertainty about the security of my personal information.

**ATTACHMENTS**
IMG_0322.png
(560.1 KB)
View full complaint ⊕

 An official website of the United States Government

 Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

 ❮ All complaints (.)

# 260505-32247245

**CLOSED**

✔ **Submitted**

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 5/5/2026 | Checking or savings account | Managing an account |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

Thank you for contacting the State of Wyoming Attorney General's Office. Your email has been successfully submitted, and has been forwarded to our staff for review.4/30/2026 5:21:18

Here is a summary of the information you submitted:

Wyoming Attorney General's Office Contact Form

Your Name: Jiselle McKee
Your Email: jiselle.cash@csuglobal.edu
Subject: Subject: Request for Investigation – Wells Fargo Bank (Missing ATM Deposit, Withheld Records, Law Enforcement Noncompliance, Unfair Business Practices)
Division: Consumer Complaints
Message: Wyoming Attorney General – Consumer Protection Complaint
Subject: Request for Investigation – Wells Fargo Bank (Missing ATM

Deposit, Withheld Records, Law Enforcement Noncompliance, Unfair Business Practices) Attorney General's Office Consumer Protection Unit I am requesting the assistance of the Wyoming Attorney General regarding serious banking misconduct by Wells Fargo Bank, N.A. involving: • a missing $17,800 ATM cash deposit, • an $18,000 teller withdrawal processed while I was under duress, • contradictory statements made by Wells Fargo representatives, • failure to comply with law enforcement requests for required ATM records, and • Wells Fargo allowing a fraudster-controlled Wells Fargo bank account to be used in the scam, which constitutes an unfair business practice and a failure of required AML/KYC controls. --- Summary of Events On November 26, 2025, I was the victim of a spoofing scam. While under duress and visibly distressed, I was coached into withdrawing $18,000 in cash from the Wells Fargo branch on Pershing Boulevard in Cheyenne. The teller processed the withdrawal despite multiple red flags, visible distress, and statements that should have triggered mandatory intervention. Immediately afterward, in an attempt to secure the funds, I deposited $17,800 in cash into the Wells Fargo ATM at the Capitol Avenue branch. The ATM accepted the cash. Law enforcement later confirmed that I am visible on the ATM video making the deposit. --- Law Enforcement Findings Detective Young of the Laramie County Sheriff's Office confirmed in writing that: • a judge-signed warrant was issued to Wells Fargo for ATM records, • Wells Fargo produced only the ATM video, • the video clearly shows me making the deposit, • Wells Fargo has not produced the required ATM custody records, and • he is still waiting for the evidence needed to complete his report. The missing records include: • Electronic Journal (EJ) • cassette totals • reconciliation reports • access logs • chain-of-custody documentation • Apple Wallet authentication metadata Detective Young stated he cannot complete his report because Wells Fargo has not complied with the warrant. --- Contradictory Statements by Wells Fargo Wells Fargo representatives gave me multiple contradictory explanations, including: • "cannot verify" the deposit • "couldn't find the money" • "it may have gone into someone else's account" • questioning whether the ATM was "Wells Fargo-owned" These statements contradict the ATM video and contradict each other. --- Consumer Protection Concerns Wells Fargo's conduct raises serious consumer-protection issues, including: 1. Failure to comply with a lawful warrant Wells Fargo has not produced the required ATM custody records despite a judge-signed warrant and repeated law-enforcement requests. 2. Withholding required ATM custody records The bank has not produced EJ data, cassette totals, reconciliation reports, access logs, or chain-of-custody documentation. 3. Law enforcement's outstanding request remains unresolved Detective Young cannot complete his report because Wells Fargo has not complied. 4. Potential spoliation of evidence The missing records are normally retained and required for ATM deposit verification. 5. Teller-level failure to intervene during a duress withdrawal The teller processed an $18,000 withdrawal despite clear signs of coercion and distress. 6. Failure to safeguard consumer funds Both the withdrawal and the deposit occurred within minutes, and Wells Fargo failed to protect the consumer at either point. 7. Allowing a fraudster-controlled Wells Fargo account to be used in the scam This indicates failures in: • AML/KYC controls • account monitoring • mule-account detection • suspicious-activity escalation • consumer-protection obligations 8. Negligent investigation Wells Fargo issued a final determination without the required records and without

Declaration of Jiselle McKee

I, Jiselle McKee, declare as follows:

1. I filed multiple CFPB complaints because Wells Fargo failed to open a Regulation E claim, failed to secure my 17,800 deposit, and failed to investigate my fraud reports.

2. Wells Fargo repeatedly closed CFPB complaints without contacting me, without reviewing evidence, and without conducting any investigation.

3. Wells Fargo issued contradictory statements across different CFPB responses, including statements about the existence of my deposit, the status of my claims, and the existence of a search warrant.

4. In one CFPB response, Wells Fargo employee Brie stated that representatives do not know if a subpoena or search warrant exists, even though a judge signed search warrant was issued on January 9, 2026.

5. On February 26, Wells Fargo employee Melissa stated that no search warrant exists.

6. After this call, I called back the number Melissa used and provided the internal reference number Detective Young gave me. The Wells Fargo representative told me that the reference number did not exist.

7. Wells Fargo did not correct any of these false statements in subsequent CFPB responses, even after I notified them of the inaccuracies.

8. These statements are true and based on my personal knowledge and the documents in my possession.

Signature: _Jiselle Mckee_

Date: _5/6/2026_

EXHIBIT 13

INITIAL SHERIFF'S REPORT AND FBI IC3 COMPLAINT

This exhibit consists of the initial law-enforcement reports documenting Plaintiff's report of the unauthorized transaction and related financial crime. Included are the initial report filed with the county sheriff's office and the corresponding complaint submitted to the Federal Bureau of Investigation's Internet Crime Complaint Center (IC3).

These records were created at or near the time Plaintiff discovered the loss and reflect Plaintiff's good-faith reporting of the incident, the factual timeline, and the nature of the suspected fraud.

CASE: 2025-039665

DEFENDANT(s): Unknown

VICTIM(s): Jiselle McKee and Wells Fargo Bank

Deputy: E. Gerhardt-Valois C71

This copy reflects a record for the Laramie County Sheriff's Department only.

This information is furnished upon authorized request. It is to be treated as privileged and confidential matter and is not to be distributed outside your agency unless so authorized.

SYNOPSIS: This report is in reference to a fraud.

NARRATIVE: At various points in this investigation, my, Deputy Gerhardt-Valois, body camera was recording and may contain details and/or statements that were not reflected in my report.   All interviews below are summarized and are not verbatim transcription(s).   Unless otherwise noted, all digital media collected has been uploaded to and is stored at the Laramie County Sheriff's Office.

On Wednesday, November 26, 2025, at approximately 2014 hours, I, Deputy Gerhardt-Valois, was dispatched to 7052 Rilley Road, Cheyenne, WY, 82009, for a report of fraud/scam.

Jiselle McKee said she had a fraudulent charge on her bank a couple days ago that she disputed through her bank, Wells Fargo.   Today, she got a phone call from 1-800-340-0570.   The person calling her said he was with Wells Fargo Bank, and a person is at the Pershing Wells Fargo Branch (3600 East Pershing Boulevard, Cheyenne, WY, 82001) trying to use her ID to withdrawal money from her account.   She was told a cashiers check was being made out to David Morgan.   The male then asked her if she could go into the bank in person at the Pershing location and withdrawal $18,000 so the cashiers check transaction does not go through.   The person talking to Jiselle also said the Pershing Wells Fargo branch is under investigation with the Federal Bureau of Investigation (FBI), and they would like her help in the investigation.   Due to just having the fraudulent charges on her Wells Fargo Bank account, Jiselle thought this was a legitimate phone call.

Jiselle said she had $20,000 in her daughter's savings account at Wells Fargo Bank.   The person she was talking to told her to take out $18,000 cash from inside the bank.   He also requested she keep her phone on during the whole event from start to finish, but do not let anyone see that she is on the phone.   Jiselle kept her phone in her purse while she was in the bank, and the male stayed on the phone, listening

to everything. He told her if the bank teller asks her why she is removing the money to tell her it is to pay your contractor.   The teller did ask, and Jiselle told her it was to pay for some solar panels.   The teller gave her $18,000 cash and never asked her of she wanted in cash or cashiers check or money order, just gave her the cash.

The male on the phone told Jiselle that she needed a new bank account because her account has been compromised.   He had Jiselle delete the Wells Fargo app from her phone and then reinstall it.   She then changed the user name and password to what they told her to change it to, user name to "Temporary WF67" and password to "Password066".

Jiselle was instructed to take the money to the Wells Fargo Bank at 1701 Capitol Avenue, Cheyenne, WY, 82001.   Jiselle was worried the bank was going to close soon as the time was approaching 1700 hours, but when Jiselle got to the Wells Fargo Bank on Capitol, she was instructed to use the ATM instead of going inside.   Jiselle said the male told her he didn't want her to go inside because her account was already compromised and he didn't want the tellers knowing her knew account information.   With the Wells Fargo app open on her phone, she held her phone up to the ATM which loaded the account information into the ATM, she did not use a card.   She realized it was not her account number that was added to the app, and she noticed a name on the account.   She said the first name was Eric and the last name started with a "P".   She could not remember what the last name was, but it could be something like Penollo.   Jiselle asked the male on the phone how did she know he wasn't the "fraudster"?   She said the male told her what her social security number and address is.   She told the male she did not feel comfortable depositing the money into an account with someone else's name on it.   He told her it was ok, it is his supervisor.   He told her how much they appreciated her help in the investigation.

Once the ATM was ready, Jiselle began inserting the cash into the ATM.   At first, the ATM would only accept $17,500.   She told the person on the phone that the ATM would not accept $500 of the cash she tried to deposit.   The person told her to try again because sometimes it is hard to get older bills to go through.   Jiselle tried a couple more times.   The ATM accepted $300 more dollars, but it would not take 2 of the $100 bills.   The guy on the phone told her it was ok, they would just debit her account the

$200, which she thought was odd.    Once completed, the guy had her delete everything off of her phone, so she does not have the account number anymore.

The following is a timeline of the events that took place.    On Novermber 26, 2025, at approximately 1534 hours, Jiselle received the call from the male claiming to be with "Wells Fargo Bank".    At approximately 1547 hours, she arrived and withdrew the cash inside the Pershing Wells Fargo Bank.    At approximately 1640 hours, Jiselle deposited the money into the Wells Fargo ATM on Capitol Avenue.

Jiselle said she began to have doubts, so she googled the phone number to Wells Fargo Fraud Department.    She called the phone number she found and "made a report".    After she talked to Wells Fargo, she called them back to ask some questions.    The person she talked to the second time thinks she was frauded a second time because there was no case number and no report in the system regarding what happened.

The person she spoke to from the Wells Fargo Fraud Department told her she needed to make a report with law enforcement, and they told her law enforcement needed to request the footage from the Capitol Avenue branch.    This way they can get a time line and hopefully figure out what account the money was deposited into.

I will be going to Wells Fargo on Friday, November 28, 2025, to speak with the manager and request the security footage and account number.    I will also attempt to get all information associated with the account number.

I have created a case on evidence.com and uploaded photos and body camera footage to the case.    I also googled the phone number Jiselle received the call from.    The number shows up as Wells Fargo's Mortgage Department.

This copy remains a record for the Laramie County Sheriff's Department only.

I will follow up with a supplement report(s) as I find out more information. This information is furnished upon authorized request.  It is to be treated as privileged and confidential matter and is not to be distributed outside your agency unless authorized.



# Your IC3 Complaint

**Submission ID:**

4da8286aeaa848bcab45a018d1282115

**Date Filed:**

11/26/2025 11:17:09 PM EST

**Were you the one affected in this incident?**

Yes

## Your Contact Information

**Name:**

Jiselle McKee

**Phone Number:**

3072140841

**Email Address:**

jiselle.cash@csuglobal.edu

## Complainant Information

**Name:**

Jiselle McKee

**Age:**

40 - 49

**Address:**

7052 Rilley Rd

**City:**

Cheyenne

**Country:**

United States of America

**State:**

Wyoming

**Zip Code/Route:**

82009

**Phone Number:**

3072140841

**Email Address:**

jiselle.cash@csuglobal.edu

# Business Information

**Is this on behalf of a business that was targeted by a Cyber incident?**

No

# Financial Transaction(s)

**Did you send or lose money in the incident?**

Yes

**What was your total loss amount?**

17,800.00

**Transaction Type:**

Other

**If other, please specify:**

ATM deposit to account that was not my new account

**Was the money sent or lost?**

Yes

**Transaction Amount:**

17,800.00

**Transaction Date:**

11/26/2025

**Did you contact your bank, financial institution, or cryptocurrency exchange?**

No

**Originating Bank Name:**

Wells Fargo Bank

**Originating Bank City:**

Cheyenne

**Originating Bank Country:**

United States of America

**Originating Bank State:**

Wyoming

**Originating Name on Account:**

Jiselle McKee

**Originating Account Number:**

5117370543

## Information About The Subject(s)

**Name:**

Eric P

## Description of Incident

**Provide a description of the incident and how you (or those you are filling this out on behalf of) were victimized. Provide information not captured elsewhere in this complaint form:**

At 3:34 PM somebody said they were from Wells Fargo fraud and called me from the number 1-800-340-0570 and told me that somebody was trying to make a cashiers check out to David Morgan in the amount of $18,000 at the Pershing branch and they also had my ID and they caught it as fraud and can I go to the branch then when I went to the branch, they instructed me to withdraw the $18,000 so it doesn't go through and that the branch was being investigated by the FBI. Keep the phone on and put it in my purse or my jacket and tell them the time I got to the bank which was 3:47 PM and I withdrew $18,000. They instructed me to tell them that I needed the money for a contractor . They told me to deposit it at the other  Wells Fargo location. so I withdrew $18,000 from my daughter's savings account from the branch on E Pershing in Cheyenne, Wy and then  deposited it at the Capitol Ave location in Cheyenne Wy. I had just had fraud on my Visa Wells Fargo several days ago, so I believed this to be real and because I'm now having somebody trying to make a cashiers check on my account I need a new account so they had me change my username and password and add a card to my Apple Pay, which I used to deposit the money into the ATM and then I noticed it said Jiselle premier, but then there was another name which was Eric and the last name started with a P it was about 6 letters long. That was the supervisor that was opening my new account. The ATM only took 17,500 and  returned 500 they instructed me to try again, which I did several times, and eventually it took 17,800 but two 100 bills were not accepted which I kept. The Wells Fargo case number for my fraud report is 308541338. I reported this crime to the local authorities Laramie County sheriffs office Erin Gerhardt badge C7 case # 25-39665

*[handwritten margin note:]* had me delete a app reinstall

*[handwritten margin note:]* Temporary with 67 password 066

## Other Information

**If an email was used in this incident, please provide a copy of the entire email including full email headers.**

Apple Pay may have what card I added but deleted as instructed. They also may have used a device outside of Cheyenne, WY to access my mobile banking. They called me from 1-800-340-0570.

**Are there any other witnesses or persons affected by this incident?**

The camera at Capital Avenue AtM should have me on camera making deposit to the fraudsters account.

**If you have reported this incident to other law enforcement or government agencies, please provide the name, phone number, email, date reported, report number, etc.**

Erin Gebhardt-Valois #C71

Laramie County sheriffs office

307-633-4700

Case # 25-39665

**Is this an update to a previously filed complaint?**

No

## Privacy & Signature:

The collection of information on this form is authorized by one or more of the following statutes: 18 U.S.C. § 1028 (false documents and identity theft); 1028A (aggravated identity theft); 18 U.S.C. § 1029 (credit card fraud); 18 U.S.C. § 1030 (computer fraud); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C 2318B (counterfeit and illicit labels); 18 U.S.C. § 2319 (violation of intellectual property rights); 28 U.S.C. § 533 (FBI authorized to investigate violations of federal law for which it has primary investigative jurisdiction); and 28 U.S.C. § 534 (FBI authorized to collect and maintain identification, criminal information, crime, and other

records).

The collection of this information is relevant and necessary to document and investigate complaints of Internet-related crime. Submission of the information requested is voluntary; however, your failure to supply requested information may impede or preclude the investigation of your complaint by law enforcement agencies.

The information collected is maintained in one or more of the following Privacy Act Systems of Records: the FBI Central Records System, Justice/FBI-002, notice of which was published in the Federal Register at 63 Fed. Reg. 8671 (Feb. 20, 1998); the FBI Data Warehouse System, DOJ/FBI-022, notice of which was published in the Federal Register at 77 Fed. Reg. 40631 (July 10, 2012). Descriptions of these systems may also be found at www.justice.gov/opcl/doj-systems-records#FBI. The information collected may be disclosed in accordance with the routine uses referenced in those notices or as otherwise permitted by law. For example, in accordance with those routine uses, in certain circumstances, the FBI may disclose information from your complaint to appropriate criminal, civil, or regulatory law enforcement authorities (whether federal, state, local, territorial, tribal, foreign, or international). Information also may be disclosed as a routine use to an organization or individual in both the public or private sector if deemed necessary to elicit information or cooperation from the recipient for use by the FBI in the performance of an authorized activity. "An example would be where the activities of an individual are disclosed to a member of the public in order to elicit his/her assistance in [FBI's] apprehension or detection efforts." 63 Fed. Reg. 8671, 8682 (February 20, 1998).

By typing my name below, I understand and agree that this form of electronic signature has the same legal force and effect as a manual signature. I affirm that the information I provided is true and accurate to the best of my knowledge. I understand that providing false information could make me

EXHIBIT 14

ACCOUNT ACCESS BLOCKAGES AND FAILURE TO PROVIDE REQUIRED TAX RECORDS

Description:

This exhibit documents Wells Fargo removal of Plaintiff access to closed accounts despite Plaintiff timely written request for continued access for tax filing purposes. It also documents continued misclassification of Plaintiff earned income as monthly benefits after Plaintiff corrected the error in writing. These actions prevented Plaintiff from accessing tax records and contributed to financial harm.

Relevance:

This exhibit demonstrates failures to honor a timely written request for access, failure to provide required account records, continued misclassification of income after correction, failure to act with reasonable care, and bad faith conduct. These failures support Plaintiff claims for negligence, negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, and damages.

Summary of Evidence:

- Plaintiff requested continued access before the access window expired.

- Wells Fargo removed access despite the request.

- No explanation or alternative method provided to obtain tax records.

- Continued misclassification of earned income as monthly benefits after written correction.

- Removal of access caused tax filing harm and administrative burden.

 **Outlook**

---

**Fwd: Subject: Request to Keep Closed Account Accessible for Tax Documentation**

---

**From** Jiselle Cash <jiselle.cash@csuglobal.edu>

**Date** Sun 3/1/2026 3:56 AM

**To** WellsFargoLineofBusinessExecutiveOffice <LineofBusinessExecutiveOffice@wellsfargo.com>; Online Wells Fargo <alerts@notify.wellsfargo.com>; WFExecutiveOffice <wfexecutiveoffice@wellsfargo.com>; brandon.e.jones@wellsfargo.com <brandon.e.jones@wellsfargo.com>

For clarity, I am not on SSI. I am paid weekly by the State of Wyoming as an independent contractor. The SSI mentioned in your letter refers to my daughter's survivor benefits."

I am requesting my closed accounts stay accessible indefinitely.

Thank you for your attention to this matter.


Sent from my iPhone

Begin forwarded message:


> **From:** Jiselle Cash <jiselle.cash@csuglobal.edu>
> **Date:** February 7, 2026 at 12:15:48 PM MST
> **To:** WellsFargoLineofBusinessExecutiveOffice <LineofBusinessExecutiveOffice@wellsfargo.com>, Online Wells Fargo <alerts@notify.wellsfargo.com>, WFExecutiveOffice <wfexecutiveoffice@wellsfargo.com>
> **Subject: Subject: Request to Keep Closed Account Accessible for Tax Documentation**
>
>
> Brie,
>
> I'm reaching out because I need continued access to my closed Wells Fargo account for longer than the standard 90-day window. I am preparing my taxes, and several documents and transaction records tied to that account are required for accurate filing.
>
> Please ensure that the account remains accessible to me beyond the 90-day period so I can retrieve the necessary information when completing my tax return.
>
> Thank you for your help with this.
>
> Best,
> Jiselle McKee
>
> Sent from my iPhone

Declaration of Jiselle McKee

I, Jiselle McKee, declare as follows:

1. Before the access window expired, I emailed Wells Fargo employee Brie requesting continued access to my closed accounts so I could obtain the records needed for tax filing.

2. Despite my timely written request, Wells Fargo removed my access after the access period expired.

3. Wells Fargo did not provide an explanation and did not offer an alternative method for me to obtain the required records.

4. After I notified Brie in writing that my income was earned income from my work as a Wyoming Medicaid DD Waiver Provider, she continued to refer to my income as monthly benefits.

5. Wells Fargo did not correct the misclassification or update my account records.

6. The removal of access prevented me from retrieving required documents and caused delays and additional administrative burden.

7. These events occurred during the same period that Wells Fargo failed to secure my 17,800 ATM deposit and failed to properly investigate my fraud claims.

8. These statements are true and based on my personal knowledge.

Signature: _____

Date: _____

EXHIBIT 15

UNAUTHORIZED DISCLOSURE OF MORTGAGE DATA AND PRIVACY FAILURES

Description:

This exhibit documents Wells Fargo unauthorized disclosure of Plaintiff mortgage related data that Plaintiff did not request, authorize, or consent to receive. The disclosure occurred during an active fraud dispute and account access issues.

Relevance:

This exhibit demonstrates failure to safeguard sensitive financial data, failure to maintain accurate data access controls, and disclosure of information unrelated to Plaintiff requests. These failures support Plaintiff claims for negligence, breach of contract, breach of the implied covenant of good faith and fair dealing, and privacy related violations.

Summary of Evidence:

- Mortgage related information disclosed without an active mortgage application or request.

- Disclosure occurred during ongoing fraud dispute and access blockages.

- Lack of explanation for disclosure.

- Disclosure caused confusion and privacy concerns.

 Outlook

**Subject: Follow-Up Request: Privacy Data Response and Nickname Search Scope**

**From** Jiselle Cash <jiselle.cash@csuglobal.edu>

**Date** Fri 5/1/2026 2:14 PM

**To**  Steven J. Scrivner <steven.j.scrivner@wellsfargo.com>

Steven,

I am following up because I have not received any written response regarding two outstanding issues:

---

1. Privacy Data Request (Incomplete Response)

Wells Fargo has not provided a complete response to my privacy-data request. The documents sent included only marketing-preference data and did not include:

• mortgage-system data
• breach-period data for 2022–2023
• access logs
• internal notes
• any documentation confirming or denying whether my information was involved in the 2022–2023 mortgage-data breach

Please confirm when I will receive the full set of records.

---

2. Scope of Search for "Jiselle Premier Checking" Nickname

I am also still waiting for written clarification on what systems were searched to determine whether the account nickname "Jiselle Premier Checking" exists in Wells Fargo's internal systems.

Specifically, I need confirmation of:

• whether the search was limited to my customer profile
• whether a system-wide search was conducted across all Wells Fargo accounts
• whether the search included all existing accounts as of November 26, 2025at approximately 5:00 PM, when the ATM displayed this nickname
• whether historical nickname logs were reviewed
• whether any other account used or previously used this nickname

This information is necessary because the nickname appeared on the ATM interface during the deposit, and the investigating detective confirmed the account displaying that nickname was not mine.

---

Request for Written Response

Please provide written responses to both issues so I can update my records and proceed accordingly.

Thank you,
Jiselle McKee

Sent from my iPhone

38. April 15, 2025 — 11:39 AM (39-minute call)

• Called Wells Fargo Privacy Center regarding potential security incident.
• Transferred to Melinda (Mortgage), then Veronica (Refinance/Purchase), then disconnected during transfer to Fraud.

---

39. April 15, 2025 — 12:19 PM (5-minute call)

• Called Privacy Center again; spoke with Audrey.
• She stated they cannot confirm by phone whether my information was part of a security breach.
• Only way to know is if legal team mailed a letter.
• She did not know whether mortgage applicants were notified of security incidents.
• This contradicts federal privacy-rights requirements.



Reference Number: 2000121448439
Request for: JISELLE Y MCKEE
Request made on: 04/15/2026

Dear JISELLE Y MCKEE,

Thank you for contacting the Wells Fargo Privacy Center.  We have completed processing your request to obtain data about yourself that Wells Fargo and its affiliates have collected. All of the information that we provide below is based on collection, disclosure and sharing within at least the past 12 months.

This document includes personal data about you and is unique to you. "Personal data" is data that identifies, relates to, or could reasonably be linked to you. We have also included additional information about how Wells Fargo uses, discloses and shares, and obtains that data.

Please note that personal data we provide may not include information that laws exempt or prohibit from disclosure. For example, for security purposes and other reasons, we do not provide certain specific pieces of sensitive information.

In addition, in this instance, we have not provided certain specific pieces of data on the ground that the following personal data is exempt from access requests made pursuant to the California Consumer Privacy Act:

- Personal data we've collected in connection with consumer accounts or applications for financial products or services used for personal, family, or household purposes.

We do not sell personal data and have not sold personal data about you.

If you have questions, please review our Frequently Asked Questions or call the Privacy Center at 1-844-774-9229, available Monday to Friday, 7:00 a.m. to 7:00 p.m. PT. To learn more about our privacy practices, visit Privacy, Cookies, Security, and Legal.

Thank you,

Wells Fargo Privacy Center

**Note:** If you have recently contacted Wells Fargo to update certain personal data that we have collected about you, the update may not be reflected in your See Data request based on internal processing times or other factors.

IDPO_SRSPNSB
7e5f2773-77c2-478b-a5d7-390f101d9b6b

Reference Number: 2000121448439
Request for: JISELLE Y MCKEE
Request made on: 04/15/2026

## Personal data we have collected about you

This section contains the specific data we have about you.  For reasons stated above, some data details are not provided here.

### Information related to interactions with Wells Fargo

We have information that Wells Fargo has gathered based on your interactions with us.

| Data Element Name | Data Element Value |
| --- | --- |
| Do Not Email Indicator | Y |
| Do Not Solicit Indicator | Y |
| External Share Preference Indicator | Y |

IDPO_SRSPNSB
7e5f2773-77c2-478b-a5d7-390f101d9b6b

Reference Number: 2000121448439
Request for: JISELLE Y MCKEE
Request made on: 04/15/2026

**Unique identifiers and biographical information**

We have unique identifiers and biographical information that have either been provided directly to us by you or, in some cases, may have been obtained from third party sources. Some of this information is not provided here for reasons stated above. Please contact the Privacy Contact Center at 844-774-9229 with questions.

| Data Element Name | Data Element Value |
|---|---|
| Credit History / Credit Bureau Report | Details not provided here |
| Full Name | MS JISELLE MCKEE |
| Gender | Female |
| Home Improvement Total Amount | 467 |
| Household Last Recorded Activity Date | 2025-12-04 |
| Marital Status | Married Likely |
| Number of Household Political Contributions | 0 |
| Personal Email Address | jiselley111@yahoo.com |
| Physical Property Size (e.g., building square footage) | 0 |
| Postal Address | 7052 RILLEY RD,CHEYENNE,WY,82009-7934 |
| Property Land Size (e.g., land square footage) | 0 |
| Property Purchase Amount | 0 |
| Property Purchase Price Amount | 0 |
| Property Value | 100 |
| Telephone Number | 3072140841 |
| Year Property Built | 2009 |

IDPO_SRSPNSB
7e5f2773-77c2-478b-a5d7-390f101d9b6b

Reference Number: 2000121448439
Request for: JISELLE Y MCKEE
Request made on: 04/15/2026

### Appendix:  Supporting Information

**Requests to Correct Personal Data**

You may request to correct certain personal data by calling us at 1-844-774-9229 or by submitting a request to dataprivacymail@wellsfargo.com. Please do not provide any sensitive, personal, or account-specific information in this email, except your full name and email address. We will be in touch with you to collect your personal information.

Reference Number: 2000121448439
Request for: JISELLE Y MCKEE
Request made on: 04/15/2026

### Appendix:  Additional Information About Wells Fargo's Data Practices

The section below includes information about how Wells Fargo collects, uses, discloses and shares personal data, specifically:

- Business or commercial purposes for which we collected personal data about you

- Categories of sources from which the personal data about you were collected

- Categories of third parties with whom we discloses and share personal data about you and the categories of personal data disclosed

### Purposes for collecting personal data
### Wells Fargo's business or commercial purposes for collecting personal data about you

- Manage, improve, and develop our business

- Support our everyday operations, including to meet risk, legal, and compliance requirements

### Data categories
### Categories of personal data about you that we have collected

- Personal Unique Identifiers, such as full name and federal or state issued identification numbers including Social Security number, driver's license number, and passport number

- Personal information including contact details such as telephone number and address, financial information such as account number and balance, payment card details including credit and debit card numbers, as well as medical and health insurance information

- Characteristics of protected classes or groups under state or federal law such as sex or marital status

- Sensitive Personal Information includes, in part, personal information that reveals a consumer's financial account information, precise geolocation information, racial or ethnic origin, religious or philosophical beliefs, sexual orientation, medical history

### Sources of data
The following are the categories of sources from which we collected personal data about you:

- From you, or other individuals acting on your behalf, through, for example physical (e.g. paper application), audible (e.g. phone), and electronic (e.g. website, social media) sources.

- Outside companies or organizations from whom we collect personal data as part of providing products and services, completing transactions, supporting our everyday operations, or business management and development. Examples include companies or organizations to whom we provide products or services; other parties, partners, and financial institutions; and parties involved with mergers, acquisitions, and other transactions involving transfers of all or part of a business, or a set of assets.

- Outside companies or organizations from whom we collect personal data to support human resource and workforce management activities. Examples may include service providers, and social networks.

- Outside companies or organizations that provide data to support activities such as fraud prevention, underwriting, and marketing. Examples may include internet service providers, social networks, data brokers, advertising networks, and data analytics providers.

Reference Number: 2000121448439
Request for: JISELLE Y MCKEE
Request made on: 04/15/2026

- Public records or widely available sources, including information from the media, and information that is made available by federal, state, and local government entities.

**Third-party disclosure and sharing**

The following are the types of third parties to whom we disclose personal data about you for a business purpose; the categories of personal data disclosed to that category of third party; and the third parties with whom we share personal information for cross-context behavioral advertising.

| Third Party Type | Category |
|---|---|
| Companies or individuals that represent you such as an accountant, financial advisor, or person holding power of attorney on behalf of you. | Sensitive Personal Information includes, in part, personal information that reveals a consumer's financial account information, precise geolocation information, racial or ethnic origin, religious or philosophical beliefs, sexual orientation, medical history<br><br>Personal Unique Identifiers, such as full name and federal or state issued identification numbers including Social Security number, driver's license number, and passport number<br><br>Personal information including contact details such as telephone number and address, financial information such as account number and balance, payment card details including credit and debit card numbers, as well as medical and health insurance information<br><br>Characteristics of protected classes or groups under state or federal law such as sex or marital status |
| Government agencies, including to support regulatory and legal requirements. | Sensitive Personal Information includes, in part, personal information that reveals a consumer's financial account information, precise geolocation information, racial or ethnic origin, religious or philosophical beliefs, sexual orientation, medical history<br><br>Personal Unique Identifiers, such as full name and federal or state issued identification numbers including Social Security number, driver's license number, and passport number<br><br>Personal information including contact details such as telephone number and address, financial information such as account number and balance, payment card details including credit and debit card numbers, as well as medical and health insurance information<br><br>Characteristics of protected classes or groups under state or federal law such as sex or marital status |

IDPO_SRSPNSB
7e5f2773-77c2-478b-a5d7-390f101d9b6b

Reference Number: 2000121448439
Request for: JISELLE Y MCKEE
Request made on: 04/15/2026

| Third Party Type | Category |
|---|---|
| Outside companies or organizations, in connection with routine or required reporting, including consumer reporting agencies and other parties. | Sensitive Personal Information includes, in part, personal information that reveals a consumer's financial account information, precise geolocation information, racial or ethnic origin, religious or philosophical beliefs, sexual orientation, medical history<br><br>Personal Unique Identifiers, such as full name and federal or state issued identification numbers including Social Security number, driver's license number, and passport number<br><br>Personal information including contact details such as telephone number and address, financial information such as account number and balance, payment card details including credit and debit card numbers, as well as medical and health insurance information<br><br>Characteristics of protected classes or groups under state or federal law such as sex or marital status |
| Outside companies or organizations, including service providers, to whom we disclose personal data as part of providing products and services, completing transactions, supporting our everyday operations, or business management and development. Examples may include internet service providers, social networks, operating systems and platforms, advertising networks, and data analytics providers; companies or organizations to whom we provide products or services; other parties, partners, and financial institutions; and parties involved with mergers, acquisitions, and other transactions involving transfers of all or part of a business, or a set of assets. | Sensitive Personal Information includes, in part, personal information that reveals a consumer's financial account information, precise geolocation information, racial or ethnic origin, religious or philosophical beliefs, sexual orientation, medical history<br><br>Personal Unique Identifiers, such as full name and federal or state issued identification numbers including Social Security number, driver's license number, and passport number<br><br>Personal information including contact details such as telephone number and address, financial information such as account number and balance, payment card details including credit and debit card numbers, as well as medical and health insurance information<br><br>Characteristics of protected classes or groups under state or federal law such as sex or marital status |

IDPO_SRSPNSB
7e5f2773-77c2-478b-a5d7-390f101d9b6b

Reference Number: 2000121448439
Request for: JISELLE Y MCKEE
Request made on: 04/15/2026

| Third Party Type | Category |
|---|---|
| Outside companies or organizations, including service providers, to whom we provide personal data to support human resource activities and workforce management. Examples may include recruiting, training, data analytics and employee benefits providers. | Sensitive Personal Information includes, in part, personal information that reveals a consumer's financial account information, precise geolocation information, racial or ethnic origin, religious or philosophical beliefs, sexual orientation, medical history<br><br>Personal Unique Identifiers, such as full name and federal or state issued identification numbers including Social Security number, driver's license number, and passport number<br><br>Personal information including contact details such as telephone number and address, financial information such as account number and balance, payment card details including credit and debit card numbers, as well as medical and health insurance information<br><br>Characteristics of protected classes or groups under state or federal law such as sex or marital status |
| Third-party marketing and advertising technology providers, advertising partners, and social media platforms, in connection with our cross-context behavioral advertising activities. | Personal Unique Identifiers, such as full name and federal or state issued identification numbers including Social Security number, driver's license number, and passport number<br><br>Personal information including contact details such as telephone number and address, financial information such as account number and balance, payment card details including credit and debit card numbers, as well as medical and health insurance information |

IDPO_SRSPNSB
7e5f2773-77c2-478b-a5d7-390f101d9b6b

Reference Number: 2000121448439
Request for: JISELLE Y MCKEE
Request made on: 04/15/2026

**Wells Fargo Companies providing this notice**
This Notice is provided by Wells Fargo and Company and its subsidiaries that either: (1) act as a business within the meaning of the California Consumer Privacy Act, or (2) are controlled by Wells Fargo and Company, and use the Wells Fargo name.

 **Outlook**

---

**Subject: Request for Confirmation of Inclusion in Wells Fargo Mortgage Data Breach**

---

**From** Jiselle Cash <jiselle.cash@csuglobal.edu>

**Date** Sun 4/19/2026 1:14 PM

**To** Steven J. Scrivner <Steven.J.Scrivner@wellsfargo.com>; privacyrequests@wellsfargo.com <privacyrequests@wellsfargo.com>; dataprivacymail@wellsfargo.com <dataprivacymail@wellsfargo.com>

📎 2 attachments (641 KB)

ATT00001.txt; IMG_0366.PNG;

To the Wells Fargo Privacy Office,

I am requesting formal confirmation regarding whether my personal information was included in any Wells Fargo mortgage-related data breach.

Although I did not obtain a mortgage with Wells Fargo, I submitted a mortgage application and my information entered the Wells Fargo Home Mortgage system as early as 2018. Because mortgage-application data is retained and stored in the same systems as active mortgage files, I need to know whether my information was accessed, exposed, or otherwise involved in any security incident, including but not limited to the 2022–2023 insider-access breach.

Please provide:

1. Confirmation of whether my mortgage-application data from 2018 forward was part of any data breach or unauthorized access event.
2. The specific dates of any access or exposure.
3. The categories of data involved.
4. Any internal findings or incident reports related to my records.

This request is being made for legal and regulatory purposes, and I expect a complete and accurate response.

Thank you,
Jiselle McKee

 Outlook

**Subject: Urgent: Clarification Needed on Potential Data Exposure and Case Handling**

**From** Jiselle Cash <jiselle.cash@csuglobal.edu>
**Date** Wed 4/15/2026 5:35 AM
**To**   Steven J. Scrivner <steven.j.scrivner@wellsfargo.com>

📎 2 attachments (1 MB)
image0.png; image1.png;

Hi Steven,

I am writing to update you on a critical development and to request clarification that directly affects the handling of my fraud case and the contradictory closure dates I have been receiving.

I recently learned that Wells Fargo has had multiple confirmed data-breach incidents involving mortgage-related customer information between 2022 and 2024. Several of these breaches specifically involved:

• Mortgage application data
• Loan account identifiers
• Customer names, addresses, and Social Security numbers
• Internal employee misuse of sensitive information

I completed a Wells Fargo mortgage application in 2023, and I have contemporaneous system-generated emails confirming that I was in the mortgage pipeline at that time. Because the spoofed 93-minute call I received in November 2025 came from the Wells Fargo Mortgage Department number—while the caller claimed to be from the Fraud Department—I need to understand whether my information was exposed through:

1. My 2023 mortgage application, or
2. My Wells Fargo bank account information

This distinction matters because it affects causation, liability, and the accuracy of Wells Fargo's internal records. It also affects why the fraudster had enough information to impersonate internal departments and why your system shows contradictory closure dates and missing documentation.

Please confirm whether Wells Fargo has identified any data exposure related to my profile, either through the mortgage division or the banking division, and whether this could have contributed to the fraud event and the subsequent procedural failures.

Thank you,

Jiselle

Sent from my iPhone

1:09

1 Message                              Summarize

Found in All Mail Mailbox



**Wells Fargo Online**            10/14/18
To: Jiselle McKee >
Reply To: Wells Fargo Online >

# Wells Fargo Home Mortgage - Thank you for your inquiry (KMM68626951V49111L0KM)

Thank you for signing up for a free
prequalification with Wells Fargo
Home Mortgage.

A home mortgage consultant will be
contacting you shortly to give you
the free prequalification.  You can also take
advantage of our other
free online tools to get the home financing
information you need.

==============================
Compare your home financing options
==============================

Fi          at meets your nee      is
first become easier. Whether

Declaration of Jiselle McKee

I, Jiselle McKee, declare as follows:

1. I received mortgage related information from Wells Fargo even though I had no active mortgage application, no pending mortgage inquiry, and did not request or authorize the release of any mortgage related data.

2. This disclosure occurred during the same period that Wells Fargo failed to secure my 17,800 ATM deposit, failed to properly investigate my fraud claims, and removed my access to my closed accounts despite my timely written request.

3. The disclosure was unrelated to any of my accounts and caused confusion and concern about the accuracy and security of Wells Fargo internal records.

4. Wells Fargo did not provide an explanation for why this information was disclosed to me.

5. The unauthorized disclosure of mortgage related data violated my privacy and contributed to the harm I experienced during the fraud related crisis.

6. These statements are true and based on my personal knowledge.

Signature: _Jiselle Mckee_

Date: _5/6/2026_

EXHIBIT 16

TELLER LEVEL FAILURES AND BREACH OF FRAUD PREVENTION PROTOCOLS

Description:

This exhibit documents failures by Wells Fargo teller staff during the November 26, 2025 withdrawal of 18,000, which Plaintiff made under the direction of a scammer. Plaintiff remained on the phone with the scammer throughout the transaction with the phone hidden in her purse. The teller failed to follow fraud prevention procedures and reinforced a scripted explanation.

Relevance:

This exhibit supports claims of negligence and related failures by showing multiple red flags and failure to intervene during a large cash withdrawal, reinforcement of a scam coached narrative, and lack of documentation or escalation.

Summary of Evidence:

- Plaintiff was on the phone with the scammer during the transaction.

- Teller asked only one unrelated question and did not ask required fraud screening questions.

- Plaintiff provided a scripted explanation.

- Teller reinforced the script by stating contractors give discounts for cash.

- Plaintiff attempted to deposit the full 18,000 immediately afterward but the ATM rejected two older 100 bills and accepted 17,800.

- Plaintiff possesses the withdrawal receipt identified as Exhibit 16 A.

Wells Fargo Bank
Transaction Receipt

Branch #0009039 04                          Cash Chk

                                       Check Amount(s)

                                         $18,000.00

    Chek(s)Total            $18,000.00

       Fee Total                 $0.00

Loose Currency
   $100                    $18,000.00
    Sub total              $18,000.00

    Cash Paid to Customer
                           $18,000.00

Transaction # 090 0099
04:25PM 11/26/25

Thank you,SARAH

Declaration of Jiselle McKee

I, Jiselle McKee, declare as follows:

1. On November 26, 2025, I withdrew 18,000 in cash from Wells Fargo while I was actively on the phone with a scammer.

2. The scammer instructed me to keep the phone in my purse during the transaction.

3. The teller asked me only one question, what do you do for work.

4. I responded that I was basically a self-employed caretaker.

5. I voluntarily stated that I needed the cash to pay for solar panels at my boyfriend's house because the scammer instructed me to say this.

6. After I said this, the teller responded that she knows contractors and they give discounts for cash.

7. The teller did not ask the purpose of the withdrawal, did not ask whether I was on the phone, did not warn me of potential fraud, and did not follow Wells Fargo fraud prevention procedures.

8. After withdrawing the cash, I attempted to deposit the full 18,000 into the ATM. The ATM rejected two older 100 bills after multiple attempts and accepted 17,800.

9. The ATM displayed the accepted amount and required me to confirm it.

10. I have the original withdrawal receipt, which is included as Exhibit 16 A.

11. These failures contributed directly to my financial loss and the subsequent issues with my 17,800 ATM deposit.

12. These statements are true and based on my personal knowledge.

Signature: _Jiselle McKee_

Date: _5/6/2026_

EXHIBIT 17

LEDGER MANIPULATION AND TRANSACTION DESCRIPTION CHANGES

Description:

This exhibit documents alteration of transaction descriptions in Plaintiff account ledger, including change of the November 26, 2025 transaction from Cashier's Check to Cash Withdrawal without explanation.

Relevance:

This exhibit supports claims of inaccurate recordkeeping and internal control failures by showing unexplained changes to ledger descriptions during an active dispute.

Summary of Evidence:

- Transaction initially labeled Cashier's Check.

- Transaction later changed to Cash Withdrawal.

- No explanation provided for when, why, or by whom the change occurred.

- Change occurred during active fraud dispute.



**9:38**

< 🔍 Need help?     📱     🔔  Sign off

ciosuie.

| Overview | Manage | Routing & balance info |
|---|---|---|

## Transactions ⓘ        🔍 Search    ⇅ Filter

**11/26/2025**
TELLER CASHED CHECK # 7302          $18,000.00
                                     Pending

**11/26/2025**
ONLINE TRANSFER REF #IB0VTJKB33 TO   $246.35
WELLS FARGO                          Pending

**11/26/2025**
ACCOUNT TRANSFERRED TO               $21,074.17
000007265396510

**11/26/2025**
INTEREST PAYMENT                     +$0.14

**11/24/2025**
ONLINE TRANSFER FROM MCKEE J         +$500.00
EVERYDAY CHECKING XXXXXX8197 REF
#IB0VS6JQBZ ON 11/22/25

**11/17/2025**
ONLINE TRANSFER FROM MCKEE J         +$300.00
EVERYDAY CHECKING XXXXXX8197 REF
#IB0VPSY6XY ON 11/15/25

**10/31/2025**
INTEREST PAYMENT                     +$0.18

🏠 Accounts    ⬆ Deposit    ≡$ Pay & Transfer    Ⓐ Explore    ≡ Menu

7:06 ◀

●|| 📶 97

<   Q Need help?    ²    🔔²   Sign off

## AVA LUCILLE SAVINGS ...6510

# $8,006.89

Available balance ⓘ

Q Search by keyword      ⇄ Filter

| Posting Date | Ending Daily Balance |
|---|---|
| **12/08/2025** | **$3,027.82** |

✓ 12/08/2025      +$200.00
ONLINE TRANSFER FROM MCKEE J
EVERYDAY CHECKING XXXXXX6488 REF
#IB0VYJCLS2 ON 12/06/25

| Posting Date | Ending Daily Balance |
|---|---|
| **11/28/2025** | **$2,827.82** |

✓ 11/28/2025      ~~$18,000.00~~
~~WITHDRAWAL MADE IN A~~
~~BRANCH/STORE~~

✓ 11/28/2025      $246.35
ONLINE TRANSFER REF #IB0VTJKB33 TO
WELLS FARGO ACTIVE CASH VISA CARD
XXXXXXXXXXX4684 ON 11/26/25

| Posting Date | Ending Daily Balance |
|---|---|
| **11/26/2025** | **$21,074.17** |

✓ 11/26/2025      +$21,074.17
ACCOUNT TRANSFERRED FROM
000005117370543

Declaration of Jiselle McKee

I, Jiselle McKee, declare as follows:

1. The November 26, 2025 transaction initially appeared in my Wells Fargo ledger as a Cashier's Check, even though I withdrew 18,000 in cash from a teller.

2. At a later date, the same transaction appeared as a Cash Withdrawal.

3. Wells Fargo did not notify me of this change, did not explain why the description changed, and did not provide any documentation showing when or why the alteration occurred.

4. This description change occurred during the same period that Wells Fargo failed to secure my 17,800 ATM deposit, denied the existence of the search warrant, and denied the internal reference number provided by law enforcement.

5. The inconsistent ledger entries caused confusion and undermined my ability to understand and resolve the fraud dispute.

6. These statements are true and based on my personal knowledge.

Signature: _Jiselle McKee_

Date: _5/6/2026_

EXHIBIT 18

ATM VIDEO CONFIRMATION AND FAILURE TO PROVIDE ATM ACCOUNTING RECORDS

Description:

This exhibit documents that Wells Fargo produced ATM surveillance video to law enforcement but failed to produce ATM accounting records, electronic journal, or chain of custody documentation required to verify and trace Plaintiff 17,800 deposit. Detective Young confirmed in writing that Plaintiff is visible on the video depositing items into the ATM. The video has no audio. Wells Fargo refused to provide the video to Plaintiff and did not produce required accounting records despite a judge signed warrant.

Relevance:

This exhibit supports Plaintiff claims by showing independent law enforcement confirmation of the deposit and failure to provide required accounting and chain of custody records, which obstructed the investigation and contradicts Wells Fargo statements that it could not verify the deposit.

Summary of Evidence:

- Wells Fargo produced ATM video to law enforcement.

- Video shows Plaintiff pulling up, placing items into the ATM, and speaking during the deposit.

- Wells Fargo did not produce electronic journal, cassette totals, accounting records, or chain of custody documentation.

- Wells Fargo refused to provide the video to Plaintiff.

 Outlook

## Re: Clarification Needed for Report

**From** Michael Young <Michael.Young@laramiecountywy.gov>

**Date** Thu 3/26/2026 1:48 PM

**To**    Jiselle Cash <jiselle.cash@csuglobal.edu>

Hi Jiselle,

- The ATM video confirms I made the deposit.
The surveillance video shows you pulling up and putting items into the ATM. It also showed you were talking to someone, but there was no audio.

- Wells Fargo has not provided any chain of custody showing what happened to the funds after that.
I didn't get this information initially. I received a letter asking for an extension while they get me their account information, as per my request on the search warrant. I am waiting for that information before I write my report.

I can let you know once I get my report done and submitted. It will take a couple of weeks for the report to be merged into the system.  I will try to keep an eye on the progress and let you know when you can put in a records request.

**Michael Young, Detective**
Laramie County Sheriff's Office
Criminal Investigations Division
1910 Pioneer Ave.
Cheyenne, WY 82001
Office: 307-633-4737
Work Cell: 307-640-9012
Email: Michael.Young@laramiecountywy.gov

**From:** Jiselle Cash <jiselle.cash@csuglobal.edu>
**Sent:** Thursday, March 26, 2026 1:02 PM
**To:** Michael Young <Michael.Young@laramiecountywy.gov>
**Subject:** Clarification Needed for Report

Attention: This email message is from an external(non-County) email address. Please exercise caution and/or verify authenticity before opening the email/attachments/links from an email you aren't expecting.

Detective Young,

Thank you again for reviewing everything. I just need one clarification reflected in your report:

- The ATM video confirms I made the deposit.

- Wells Fargo has not provided any chain of custody showing what happened to the funds after that.

For context, regulatory law places responsibility on the bank once a deposit is verified and they cannot show chain of custody, and under those rules reimbursement is expected in that situation. I'm not asking you to state liability — only to document the facts you've already identified so the regulatory process can apply the law correctly.

Also, when the report is completed, please let me know when I can pick it up so I can use it in the reimbursement process per regulatory requirements.

Thank you,
Jiselle

Sent from my iPhone

 **Outlook**

---

## Re: Follow-up on Additional Evidence From Wells Fargo

---

**From** Michael Young <Michael.Young@laramiecountywy.gov>

**Date** Thu 3/26/2026 10:26 AM

**To** Jiselle Cash <jiselle.cash@csuglobal.edu>

Good morning Jiselle,
I have not received any new information since our last phone call. I will let you know when I get more information.

**Michael Young, Detective**
Laramie County Sheriff's Office
Criminal Investigations Division
1910 Pioneer Ave.
Cheyenne, WY 82001
Office: 307-633-4737
Work Cell: 307-640-9012
Email: Michael.Young@laramiecountywy.gov

---

**From:** Jiselle Cash <jiselle.cash@csuglobal.edu>
**Sent:** Thursday, March 26, 2026 10:25 AM
**To:** Michael Young <Michael.Young@laramiecountywy.gov>
**Subject:** Follow-up on Additional Evidence From Wells Fargo

Attention: This email message is from an external(non-County) email address. Please exercise caution and/or verify authenticity before opening the email/attachments/links from an email you aren't expecting.

Hi Detective Young,

I hope you're doing well. I wanted to follow up because today marks four months since the fraud occurred, and I'm trying to keep my timeline accurate.

When we spoke on March 17, you mentioned that Wells Fargo had sent additional evidence separately, but you hadn't been aware it was coming yet. Could you please let me know whether that packet has arrived and if you've had a chance to review it?

Thank you again for your time and assistance.

Jiselle

Sent from my iPhone

Declaration of Jiselle McKee

I, Jiselle McKee, declare as follows:

1. Detective Young informed me in writing that Wells Fargo produced the ATM surveillance video to him.

2. Detective Young stated that the video shows me pulling up to the ATM, placing items into the machine, and speaking during the deposit.

3. Detective Young stated that the video has no audio.

4. Detective Young also informed me that Wells Fargo did not provide the ATM accounting records, electronic journal, or chain of custody documentation he requested.

5. Wells Fargo failure to provide these records prevented law enforcement from determining what happened to my 17,800 deposit.

6. Wells Fargo refused to provide the ATM video to me, even though it shows me making the deposit.

7. These statements are true and based on my personal knowledge.

Signature: _Jiselle McKee_

Date: _5/6/2026_

EXHIBIT 19

CONSOLIDATED SUMMARY OF WELLS FARGO INTERNAL CONTRADICTIONS

Description:

This exhibit consolidates major contradictions, inconsistent statements, and conflicting representations made by Wells Fargo throughout Plaintiff fraud dispute, missing deposit investigation, account access issues, and income classification errors.

Relevance:

This exhibit supports Plaintiff claims by showing conflicting explanations, denial of facts later confirmed by law enforcement, alteration of transaction descriptions, and inconsistent handling of account access and records.

Summary of Contradictions:

- Deposit referred to as an alleged deposit despite ATM acceptance and video confirmation.

- Income classified as monthly benefits after written correction.

- Refusal to provide ATM video to Plaintiff while providing it to law enforcement.

- Claim that all records were provided despite missing accounting records and chain of custody documentation.

- Ledger description changed from Cashier's Check to Cash Withdrawal without explanation.

- Account access removed despite timely written request.

- Statement that deposit could not be verified despite video evidence.

Declaration of Jiselle McKee

I, Jiselle McKee, declare as follows:

1. Wells Fargo referred to my deposit as an alleged deposit, even though the ATM accepted 17,800 and required me to confirm the amount.

2. Wells Fargo classified my income as monthly benefits, even after I corrected this in writing.

3. The teller asked me what do you do for work and later stated I know contractors and they give discounts for cash.

4. Wells Fargo refused to provide me with the ATM video, even though it provided the video to Detective Young.

5. Detective Young informed me that Wells Fargo did not provide the ATM accounting records or chain of custody documentation he requested.

6. I observed the description of my 18,000 withdrawal change from Cashier's Check to Cash Withdrawal without explanation.

7. Wells Fargo told me that access to my closed accounts expired after 90 days, even though I requested continued access before the deadline.

8. These contradictions caused confusion, delayed the investigation, and contributed to my financial harm.

9. These statements are true and based on my personal knowledge.

Signature: _Jiselle McKee_

Date: _5/6/2026_

EXHIBIT 20

FAILURE TO PROVIDE WRITTEN DETERMINATIONS AND REGULATION E VIOLATIONS

Description:

This exhibit documents Wells Fargo failure to provide written determinations, investigation results, and required notices under Regulation E after Plaintiff reported an unauthorized electronic fund transfer and a missing ATM deposit.

Relevance:

This exhibit supports Plaintiff claims by documenting failure to open a Regulation E claim, failure to provide written determinations, failure to provide written notice of any extension, and failure to provide documents relied upon.

Summary of Evidence:

- No written determination provided within required timelines.

- No written notice of extension or provisional credit.

- Missing deposit treated as an alleged deposit instead of an error claim.

- Failure to provide ATM accounting records, electronic journal, or chain of custody documentation.

- Failure to provide documents relied upon.

Declaration of Jiselle McKee

I, Jiselle McKee, declare as follows:

1. I reported my missing 17,800 ATM deposit to Wells Fargo.

2. Wells Fargo did not open a Regulation E claim and did not provide any written determination within 10 business days.

3. Wells Fargo did not provide written notice of any extension, did not provide provisional credit, and did not provide any written explanation of its findings.

4. Wells Fargo referred to my deposit as an alleged deposit instead of treating it as an error claim.

5. Wells Fargo did not provide the ATM accounting records, electronic journal, or chain of custody documentation required to investigate the missing deposit.

6. Detective Young informed me that Wells Fargo did not provide the accounting records he requested.

7. Wells Fargo did not provide any written communication required under Regulation E.

8. These failures prevented me from resolving the missing deposit and caused significant financial harm.

9. These statements are true and based on my personal knowledge.

Signature: _Jiselle McKee_

Date: _5/6/2026_

EXHIBIT 21

FRAUD CLAIM BACKDATING AND TIMELINE MANIPULATION

Description:

This exhibit documents inconsistencies in Wells Fargo fraud claim dates, including backdating claims to March 31 despite filing on April 1, and referencing April 2 in the same communication chain.

Relevance:

This exhibit supports Plaintiff claims by showing inaccurate recordkeeping and internal control failures regarding claim timestamps during an active dispute.

Summary of Evidence:

- Fraud claims filed on April 1.

- Claims displayed as filed on March 31.

- Same chain references April 2.

- Dates are internally inconsistent.

 Outlook

## Inconsistent Claim Dates and Improper Complaint Closures

**From** Jiselle Cash <jiselle.cash@csuglobal.edu>

**Date** Thu 4/2/2026 10:27 AM

**To** Steven J. Scrivner <Steven.J.Scrivner@wellsfargo.com>

Steven,

I want to add one critical point to my earlier message. All of the CFPB complaints Amanda batch closed yesterday were closed during an active law-enforcement investigation. The detective has not received the evidence he requested, and the investigation remains open. Detective Young confirmed yesterday that the missing accounting had not been received, and I forwarded him Amanda's final determination just as I did with Brie's final determination.

Despite that, every complaint was closed with the same boilerplate language, even after Amanda stated in her introductory email that each CFPB complaint required an individualized response. None of the specific issues raised were addressed.

I also filed two claims with the fraud department yesterday — one for a withdrawal and one for a deposit. The Wells Fargo terminal shows the date as March 31, even though both claims were filed after 8 PM on April 1. The acknowledgment email shows April 2. Wells Fargo now has three different dates for the same claims, which is extremely confusing and indicates that nothing is being properly timestamped.

A Regulation E compliant investigation has also still not been completed. None of the required steps have been documented, and no individualized findings have been provided.

Please clarify why these complaints were closed during an active law-enforcement investigation, why the dates on the claims are inconsistent, and why a Reg E investigation has not been completed or documented.

Jiselle

Sent from my iPhone

 Outlook

---

• **Subject: Discrepancy in Claim Status and Closure Date**

---

**From** Jiselle Cash <jiselle.cash@csuglobal.edu>

**Date** Sun 4/5/2026 4:57 PM

**To**    Steven J. Scrivner <steven.j.scrivner@wellsfargo.com>

📎 4 attachments (2 MB)
ATT00001.txt; ATT00002.txt; IMG_0012.PNG; IMG_5036.PNG;

Steven,

On April 2, I captured screenshots showing that both claims were still open and listed as "In progress." As of today, one of those claims now appears as closed, yet I did not receive any notification or explanation regarding the closure.

Additionally, the system reflects a closure date of 4/1, which is inconsistent with my 4/2 screenshot that clearly shows the claim still marked as "In progress." This discrepancy requires clarification.

Screenshots are attached for reference.

Regards,
Jiselle

4:51 ⬈                                    .ıll LTE  90

# Thursday
### 8:13 AM

8:13 ⬈


◄ Mail                          .ıll 🛜 6⬤

✕

# My claims ⓘ

| Open (2) | Closed (0) |
|---|---|

| 03/31/2026 | Claim #...0175 |
|---|---|
| Deposit | $17,800.00 |
| | In progress |

View claim

| 03/31/2026 | Claim #...0181 |
|---|---|
| Withdrawal | $18,000.00 |
| | In progress |

View claim

5:24

1 Message                                    Summarize

**From:** Wells Fargo Claims Assistance
**To:** ★ Jiselle McKee >
**Reply To:** do_not_reply@alerts.wellsfax
April 1, 2026 at 6:51PM

# We received your claim inquiry



April 02, 2026

**Wells Fargo Claims Assistance Center**

You can check the status of your claim anytime

Claim Reference Number: **2604010046118**

We received your question about your account

ending in 8197.
We're reviewing your claim now and we'll let you
know if we need more information.

It's easy to stay updated - **check the status** of
your claims anytime.

Thank you for banking with Wells Fargo.

**Need Help?**
For questions about claims, just search in the
Wells Fargo Mobile® app* or visit **Understanding
the Claims Process**. You can also call us
anytime at **1-844-915-4956**.

We're serious about **security**



and information secure
...isticated tools to help
safeguard your money — **24/7** fraud monitoring,
data encryption, secure technology, and

5:24

1 Message                                    ⇛ Summarize

**From:** Wells Fargo Claims Assistance
**To:** ★ Jiselle McKee >
**Reply To:** do_not_reply@alerts.wellsfax
April 1, 2026 at 8:57 PM

# We received your claim inquiry



April 02, 2026

## Wells Fargo Claims Assistance Center

You can check the status of your claim anytime

Claim Reference Number: **2604010049978**

We received your question about your account

ending in 6510.

We're reviewing your claim now and we'll let you know if we need more information.

It's easy to stay updated - **check the status** of your claims anytime.

Thank you for banking with Wells Fargo.

**Need Help?**

For questions about claims, just search in the Wells Fargo Mobile® app* or visit **Understanding the Claims Process**. You can also call us anytime at **1-844-915-4956**.

**We're serious about security**



and information secure
...isticated tools to help

safeguard your money — **24/7** fraud monitoring, data encryption, secure technology, and

 **Outlook**

---

## Misclassification of Withdrawal Claim, Failure to Document Coercion, and Inaccurate Claim Closure Records

---

**From** Jiselle Cash <jiselle.cash@csuglobal.edu>

**Date** Sun 4/5/2026 5:53 PM

**To**   Steven J. Scrivner <steven.j.scrivner@wellsfargo.com>

I am following up because several issues with my claims require your direct response.

1. Misclassification of the Withdrawal Claim

When I reported the unauthorized withdrawal, I clearly stated that:

- I was coerced,
- I was under duress,
- I was actively on the phone with the scammer,
- And the scammer was directing my actions.

Despite this, Wells Fargo recorded the claim reason as "doesn't remember."
This is factually false and materially alters the nature of the claim. It misrepresents my report and undermines the investigation.

2. Related Deposit Claim Closed Improperly

The associated ATM deposit claim for $17,800 was closed without:

- Any notification to me,
- Any explanation,
- Providing the detective with the required ATM evidence,
- Or confirming the status of funds that are likely in a suspense account.

The bank marked this claim as closed on 4/1, yet my screenshot from 4/2 shows it still listed as "In progress."
This is a chronological impossibility and indicates either:

- A system error,
- A backdated closure,
- Or improper manual alteration of claim records.

3. No Required Notification

I received no closure notice, no determination letter, and no explanation for the status change.
This violates standard claim-handling requirements and consumer communication obligations.


Please respond to these discrepancies and provide clarification on the closure, the missing notification, and the inaccurate documentation.
Sent from my iPhone

Declaration of Jiselle McKee

I, Jiselle McKee, declare as follows:

1. I filed my fraud claims on April 1 and received the claim number email on April 1.

2. Wells Fargo backdated the fraud claims to March 31, even though they were filed on April 1.

3. In the same communication chain, Wells Fargo referenced April 2 as the date associated with the claim.

4. These dates are inconsistent and cannot all be correct.

5. Wells Fargo backdating and conflicting dates caused confusion and undermined my ability to understand the status of my fraud claims.

6. These statements are true and based on my personal knowledge.

Signature: _Jiselle McKee_

Date: _5/6/2026_

EXHIBIT 22

DAMAGES SUMMARY FINANCIAL PROCEDURAL AND EMOTIONAL HARM

Description:

This exhibit summarizes financial losses, procedural harm, emotional distress, intimidation, and ongoing impacts Plaintiff suffered as a result of teller level failures, ATM handling failures, missing deposit mishandling, backdating of fraud claims, refusal to provide required records, contradictory communications, and attempts to discourage complaints.

Relevance:

This exhibit supports Plaintiff claims for damages by documenting financial loss, loss of access to records, procedural harm from mishandled claims, emotional distress, intimidation, and ongoing unresolved harm.

Summary of Damages:

- Financial loss of 17,800 missing deposit.

- Loss of access to closed accounts and inability to retrieve records.

- Procedural harm including backdating and lack of written determinations.

- Emotional distress due to loss and contradictory statements.

- Intimidation and pressure discouraging complaints.

- Ongoing harm due to unresolved deposit and missing records.

Declaration of Jiselle McKee

I, Jiselle McKee, declare as follows:

1. I suffered a financial loss of 17,800 due to Wells Fargo failure to properly handle my ATM deposit.

2. Wells Fargo removed my access to my closed accounts despite my timely written request for continued access.

3. Wells Fargo backdated my fraud claims to March 31 even though I filed them on April 1, and referenced April 2 in the same communication chain.

4. Wells Fargo did not open a Regulation E claim, did not provide written determinations, and did not provide the ATM accounting records or chain of custody documentation.

5. I experienced emotional distress due to the missing deposit, contradictory statements, and Wells Fargo calling my deposit an alleged deposit.

6. I experienced intimidation and pressure from Wells Fargo employees. Brie spoke over me, used an abrasive tone, and frightened both me and my passenger. She also told me I could not file more complaints. Amanda stated that the sheer volume of complaints would slow down response time. Steven told me that my complaint volume would delay response.

7. These failures and statements caused significant emotional distress, confusion, and disruption to my work and daily life.

8. The harm is ongoing because the missing deposit has not been resolved and required records have not been produced.

9. These statements are true and based on my personal knowledge.

Signature: Jiselle McKee

Date: 5/6/2026

EXHIBIT 23

RETALIATION INTIMIDATION AND COMPLAINT SUPPRESSION

Description:

This exhibit documents intimidation, retaliation, and complaint suppression attempts by Wells Fargo employees, including statements and conduct intended to discourage Plaintiff from filing complaints, reporting issues, or seeking assistance.

Relevance:

This exhibit supports Plaintiff claims by documenting conduct that discouraged reporting and contributed to emotional distress and procedural harm during an active dispute.

Summary of Evidence:

- Brie spoke over Plaintiff, used an abrasive tone, frightened Plaintiff and passenger, and stated Plaintiff could not file more complaints.

- Amanda stated in writing that the sheer volume of complaints would slow response time.

- Steven stated that complaint volume would delay response.

 **Outlook**

---

**Request for Written-Only Communication CFPB Complaint 260226-29353429**

---

**From** Jiselle Cash <jiselle.cash@csuglobal.edu>

**Date** Fri 2/27/2026 7:31 PM

**To** Online Wells Fargo <alerts@notify.wellsfargo.com>; WellsFargoLineofBusinessExecutiveOffice <LineofBusinessExecutiveOffice@wellsfargo.com>; brandon.e.jones@wellsfargo.com <brandon.e.jones@wellsfargo.com>; WFExecutiveOffice <wfexecutiveoffice@wellsfargo.com>

Dear Wells Fargo,

I am writing to formally request that Wells Fargo cease all telephone communication with me regarding my ongoing dispute and any related matters. I require that all future communication be provided in writing only.

This request is necessary because multiple representatives have provided incorrect or contradictory information to me over the phone. On February 3, I was told by a Wells Fargo representative that no warrant existed, even though Wells Fargo had received the warrant on January 9 and had already issued an internal reference number to Detective Young. Additionally, during subsequent calls, I was told that I could not file additional CFPB complaints, and I was given verbal explanations that conflicted with written information and did not accurately reflect the status of my case.

Due to these inconsistencies and the importance of maintaining a clear, verifiable record, I am requesting that all communication from Wells Fargo be conducted exclusively in writing going forward.

Thank you for your attention to this request.

Sincerely,
Jiselle McKee

Sent from my iPhone

Witness Statement of Greg Postin

Date: April 23, 2026

Location: Cheyenne, Wyoming

I, Greg Postin, am providing this statement voluntarily. I receive Developmental Disability (DD) Waiver services from Jiselle McKee, who supports me as part of my daily living and community services. I give permission for Jiselle to disclose this statement and to disclose that I receive DD Waiver services for cerebral palsy, only for the purpose of explaining why I was present during the phone calls described below.

## 1. February 26, 2026 – Call from Wells Fargo employee "Brie"

On February 26, 2026, I was in the car with Jiselle when she received a phone call from a Wells Fargo employee who identified herself as "Brie." The call played through the car speakers, so I could hear the employee's tone and words. During this call, the employee spoke to Jiselle in a raised and intimidating tone, talked over her, and sounded angry and dismissive. I did not speak during this call, but I heard the entire conversation. It made me feel scared and anxious because of how the employee was talking to Jiselle.

## 2. March 2, 2026 – Call from the same employee using the name "Brittany"

On March 2, 2026, I was again in the car with Jiselle when she received another phone call from Wells Fargo. The caller identified herself as "Brittany," but her voice sounded like the same person from the February 26 call. Before the conversation continued, Jiselle said she had already requested no phone calls and written communication only. She also stated that I was present as a witness. At that point, Jiselle asked me to say hello so the employee would know I was there, and I said hello. The employee continued speaking to her even after Jiselle reminded her of the written-only request.

## 3. How these calls affected me

Both calls made me feel scared, anxious, confused, and worried for Jiselle. I rely on Jiselle for support, and hearing someone speak to her that way made me feel unsafe.

1

**4. Permission to disclose**

I give permission for this statement to be shared with attorneys, investigators, regulators, law enforcement, or any agency reviewing the Wells Fargo matter. I also give permission for Jiselle to disclose that I am a DD Waiver participant with cerebral palsy and that she provides my services, only for the purpose of explaining why I was present and how the calls affected me.

Signature: _Greg Postin_

Printed Name: Greg Postin    Greg Postin

Date: 4-23-26

Sent from my iPhone

2



29732365, 260310-29783156, 260310-29808829, 260310-
298029:4710-29798947, 260310-29782518, ... 3 67
29783735, 260310-29784772, 260310-29781676, 260310-
29785677, 260310-29796398, 260310-29811132, 260315-
30017712, 260315-30017833, 260315-30017598, 260315-
30017938, 260315-30017800, 260315-30018118, 260315-
30018237, 260315-30018679, 260315-30018639, 260315-
30018560, 260315-30018392, 260315-30018882, 260316-
30038903, 260316-30038533, 260316-30035858, 260315-
30017674, 260315-30017643, 260316-30063742, 260316-
30064262, 260317-30090773

Dear Jiselle Y McKee:

I am an Escalations Associate with the Stakeholder, Agency,
Government, Executive team, and I will be your sole contact and
case worker assigned to the subject cases. This communication is
to introduce myself and set expectations as to what comes next.

As of the date and time of this communication, we have received 52
complaint cases from the Consumer Financial Protection Bureau
(CFPB) submitted by you. We understand that the issues raised are
important to you, and we appreciate you allowing us the opportunity
to investigate the matter thoroughly. Please note, we are required by
our regulators (such as the CFPB) to address every individual case,
and every individual complaint. This means that a significant number
of cases submitted within a short timeframe can delay our response
to you. We acknowledge your concerns and frustrations with this
process, and we can assure you that each issue you have raised
will be addressed appropriately and accurately, once we are able to
complete our research.

**What's next**

I have begun my research, and I will keep you updated as these
cases progress. If you have questions, you may reach us at 515-
461-4561, Monday through Friday from 7:00 a.m. to 3:00 p.m.
Central Time. We accept telecommunications relay service calls
from individuals with hearing or speech disabilities. This includes
calls facilitated by a trusted third party, such as a family member, so
long as the customer is present and actively participating in the
entire communication.

If there is an attachment to this email and you cannot read it, please
contact us.

Sincerely,

Amanda R.
Escalations Representative
Enterprise Complaints Management Office
PO Box 5133, Sioux Falls, SD 57117

For s    reas                              rson
acc   <   n  ⬚   **securemail.wf.com**  ↻   • • •



This message may contain confidential and/or privileged information. If you are not
the addressee or authorized to receive this for the addressee, you must not use,

 Outlook

---

**Regarding your recent concerns**

---

From Scrivner, Steven J. <Steven.J.Scrivner@wellsfargo.com>

Date Mon 3/30/2026 12:00 PM

To jiselle.cash@csuglobal.edu <jiselle.cash@csuglobal.edu>

Good afternoon,

I wanted to take a moment and reach out to you and discuss your recent submissions of concerns to Wells Fargo.

Your concerns have been received by us in excess of 100 times in the last few weeks. We are working diligently to get a response out to you however when you submit this volume of concerns through the CFPB Portal and the online portal with Wells Fargo it does substantially slow down our response to you. We are aware that you have requested no phone calls and out of respect for that request my employees have not been calling you with each submission as is our normal practice, but I do believe you are getting letters from us acknowledging each complaint submission, as is required.

We are happy to discuss your concerns if you want to speak with us, if you do not want to speak with us we will respond in writing as you have requested but the response will continue to be delayed if the incoming volume of complaints carries on at its current pace.

My information is below, if you want to speak to me about your concerns, please feel free to call or email me.

Thank you

Steven Scrivner

Escalations Manager, Vice President
SAGE High Profile/Media Escalations

Wells Fargo Home Mortgage | 1 Home Campus | Des Moines, IA 50328
MAC F2302-021
Tel 515-631-4245 |

Steven.J.Scrivner@wellsfargo.com

This transmission may contain information which is confidential, proprietary and privileged. If you are not the individual or entity to which it is addressed, note that any review, disclosure, copying, retransmission or other use is strictly prohibited. If you received this transmission in error, please notify the sender immediately and delete the material from your system.

Declaration of Jiselle McKee

I, Jiselle McKee, declare as follows:

1. During a phone call, Brie spoke over me, used an abrasive tone, and frightened both me and my passenger. She also told me I could not file more complaints.

2. Amanda stated in writing that the sheer volume of complaints would slow down response time.

3. Steven told me that my complaint volume would delay response.

4. These statements and behaviors made me feel intimidated, discouraged me from filing additional complaints, and caused emotional distress.

5. These actions occurred during an active fraud dispute and contributed to delays and confusion in resolving my missing deposit.

6. These statements are true and based on my personal knowledge.

Signature: _Jiselle McKee_

Date: _5/6/2026_

EXHIBIT 24

SEARCH WARRANT DENIAL NONCOMPLIANCE AND CONTRADICTIONS

Description:

This exhibit documents Wells Fargo denial of a valid judge signed search warrant, failure to comply with the warrant, and contradictory actions in later acknowledging and partially responding.

Relevance:

This exhibit supports Plaintiff claims by documenting denial of the warrant, partial compliance, failure to provide critical ATM accounting records, and obstruction of the law enforcement investigation.

Summary of Evidence:

- Judge signed search warrant issued January 9, 2026 seeking ATM accounting records, electronic journal, chain of custody documentation, video, and related internal records.

- Wells Fargo stated no warrant existed or had no record of one.

**Declaration of Jiselle McKee**

I, Jiselle McKee, declare as follows:

1.  On January 9, 2026, a judge signed search warrant was issued requesting Wells Fargo ATM accounting records, electronic journal entries, chain of custody documentation, surveillance video, and related internal records concerning my missing 17,800 ATM deposit.

2.  Detective Michael Young of the Laramie County Sheriff's Office served the search warrant on Wells Fargo.

3.  After the warrant was issued and served, Wells Fargo representatives told me that no search warrant existed or that Wells Fargo had no record of a warrant.

4.  Despite these statements, Wells Fargo later acted as though the warrant existed, including communicating with the detective and requesting additional time to respond.

5.  Detective Young informed me that Wells Fargo did not provide the ATM accounting records, electronic journal entries, or chain of custody documentation requested in the warrant.

6.  Wells Fargo's denial of the warrant, followed by partial acknowledgment and incomplete production, caused delays and confusion in the law enforcement investigation.

7.  Wells Fargo's failure to comply with the warrant prevented law enforcement from determining what happened to my 17,800 cash deposit after it entered Wells Fargo's custody.

8.  These statements are true and based on my personal knowledge.

Signature: _Jiselle McKee_

Date: _5/6/2026_

**EXHIBIT 25**

**FULL CHRONOLOGICAL TIMELINE UNEDITED**

**Declaration of Jiselle McKee**

I, Jiselle McKee, declare as follows:

1.  The document included with this exhibit is my full, complete, and unedited chronological timeline of events related to the missing 17,800 ATM deposit and Wells Fargo's handling of the matter.

2.  The timeline documents events, communications, procedural failures, contradictory statements, intimidation incidents, and ongoing harms exactly as they occurred.

3.  The timeline was created contemporaneously and reflects my firsthand knowledge and documentation.

4.  No portion of the timeline has been altered, condensed, paraphrased, or rewritten.

5.  The timeline accurately reflects the sequence of events and the actions and omissions of Wells Fargo personnel and agents.

6.  These statements are true and based on my personal knowledge.

Signature: _Jiselle McKee_

Date: _5/6/2026_

FULL CHRONOLOGICAL TIMELINE

---

1. Spoofed Incoming Call Appearing as Wells Fargo Mortgage

Date: November 26, 2025
Incoming Number: 1-800-340-0570
Call Start: 3:34 PM
Call End: 5:07 PM
Duration: 93 minutes

• Caller ID displayed the Wells Fargo Mortgage Department number.
• Caller verbally claimed to be from the Wells Fargo Fraud Department.
• I was coached on what to say to Wells Fargo.
• I was instructed to claim the withdrawal was for "paying a contractor."
• I was under pressure, direction, and deception throughout the call.
• Reported to Wells Fargo and the Sheriff's Office.

---

2. $18,000 Cash Withdrawal While Under Duress

Date: November 26, 2025
Time: 4:25 PM
Amount: $18,000
Location: Wells Fargo Pershing Branch — 4240 Pershing Blvd, Cheyenne, WY
Teller: Sarah

• Withdrawal occurred while still on the spoofed call.
• Teller Sarah processed the withdrawal without question.
• I gave the scripted "contractor" explanation.
• Sarah reinforced the scammer's script by saying she "knows contractors" and they "give discounts for cash payments."
• Teller did not offer safer alternatives.
• Sheriff's report: teller "just handed her the cash."
• Under Reg E, a transaction made under deception and duress is not authorized.

---

3. Ledger Description Changed From "Cashier's Check" to "In-Branch Cash Withdrawal"

• Initially displayed as a "cashier's check."
• Later changed to "cash withdrawal (in-branch)" without notice or audit trail.
• Wells Fargo representatives previously stated posted ledger entries cannot change — this contradicts that.
• Screenshots of both versions preserved.

---

4. Prior Pershing Branch Deposit Error (Context)

• A prior large Progressive Insurance deposit was mishandled; several hundred dollars were missing until corrected.
• This contributed to my belief that a law-enforcement investigation involving the branch was plausible.

---

5. $17,800 ATM Deposit

Date: November 26, 2025
Time: ~5:00 PM
Location: Wells Fargo Capitol Ave Branch ATM — 1701 Capitol Ave, Cheyenne, WY

• $17,800 deposited.
• Two old bills rejected.
• This was a Wells Fargo branch-located ATM, not an off-site machine.
• ATM video later confirmed I am visible making the deposit.

---

6. Immediate Fraud Reporting to Wells Fargo

Date: November 26, 2025
Time: 5:10 PM

• Called fraud line 3 minutes after spoofed call ended.
• Rep minimized the fraud.
• Additional calls made that evening.

Fraud department said "Sounds like you were spoofed." "At least you put your cash in an ATM instead of handing it to a scammer". After reporting the missing ATM deposit to Wells Fargo's fraud department, the representative stated they "needed a police report" for the fraud claim. I contacted law enforcement immediately and obtained a case number that same night. I provided the case number to Wells Fargo within minutes of receiving it. Wells Fargo's request for a police report confirms they classified the incident as fraud on the night it occurred.

---

7. Sheriff's Report Filed

Date: November 26, 2025
Time: 6:28 PM
Case: 25-39665

---

8. IC3.gov Complaint Filed

Date: November 26, 2025
Time: 11:17 PM EST
Submission ID: 4da826aeaa848bcab45a018d1282115

---

9. In-Branch Visit With Personal Banker

Date: November 28, 2025
Time: 9:00 AM
Staff: Brandon Jones
Deputy: Gerhardt-Valois

• Brandon opened an escalation for the withdrawal and a fast-track "find deposit" escalation.
• He wrote the escalation number on his business card.
• I believed this was a formal fraud claim number — it was not.

---

10. Wells Fargo Fails to Provide Required ATM Evidence

Date Range: Dec 2025 – Feb 2026

Missing:

• EJ logs
• Cassette totals
• Access logs
• Chain-of-custody records
• Error codes
• Reconciliation reports
• Apple Wallet device-authentication data

Apple Wallet data would have independently confirmed:

• device ID
• tokenized card number
• physical presence
• timestamp
• authentication method
• ATM session linkage

Wells Fargo did not request or review this data, and did not provide it to law enforcement or in any claim response.

---

11. Initial Investigation Failure

Date: Late Nov – Early Dec 2025

• Closed without contacting me or requesting evidence.

---

12. First CFPB Complaint Filed

Date: December 4, 2025

---

13. Reg E Fraud Claim Opened and Closed Within 24 Hours

Opened: December 4, 2025
Closed: December 5, 2025

• Reg E claim opened for the $18,000 duress withdrawal.
• Closed within 24 hours without contacting me or reviewing evidence.
• Not compliant with Reg E.
• No documentation provided.
• Contradicts later statements that no Reg E claim existed.

---

14. No Evidence Provided for Withdrawal Claim Closure

Date: December 5, 2025

• Wells Fargo closed the withdrawal claim without providing any evidence.
• No teller notes, surveillance review, or internal logs.
• No written explanation.
• Violates Reg E's requirement for a reasonable investigation.
• Conflicts with later statements denying a claim existed.

---

## 15. First CFPB Complaint Closed

Date: December 24, 2025

---

## 16. Search Warrant Issued & Served

Date: January 9, 2026
Detective: Young
WF Ref: 31797669

---

## 17. Warrant Evidence Delivered

Date: March 12, 2026

Delivered: ATM video only
Not delivered: required ATM records

• Detective cannot determine where deposit went.

---

## 18. Second CFPB Complaint Filed

Date: January 17, 2026

---

19. Second CFPB Complaint Closed

Date: February 3, 2026

• Melissa falsely stated no warrant had been served.

---

20. Denial of Search Warrant Existence During CFPB Complaint 2 Closure

Date: February 3, 2026
WF Representatives: Leshawn, Melissa

• Melissa stated no search warrant existed, despite the warrant being issued and served on January 9, 2026.
• Less than an hour later, after I provided the internal Wells Fargo reference number from Detective Young, Wells Fargo denied that the reference number existed.
• This contradicts:
– Detective Young's confirmation
– The warrant service date
– Wells Fargo's own internal reference number (31797669)
• Demonstrates:
– Knowledge of the warrant
– Active denial
– Suppression of internal records
– Procedural obstruction during an active law-enforcement investigation
• This false denial directly impacted the handling and improper closure of Complaint #2.

---

21. Third CFPB Complaint Filed (Active)

Date: February 3, 2026

• Filed due to premature closures, contradictions, and Reg E failures.
• ECMO and Executive Office contacted me, indicating elevated review.
• Complaint remained active during overlapping closures.
• Filed the same day Melissa improperly closed Complaint #2.

---

22. Fourth CFPB Complaint Filed (Timeline + Spectrum Evidence)

Date: February 8, 2026

• Included detailed timeline.
• Included Spectrum Mobile logs showing:
– 93-minute spoofed call
– 5:10 PM outgoing call to Wells Fargo fraud line
• Submitted to correct the record and provide contemporaneous evidence.
• Demonstrated that Wells Fargo had access to verifiable timestamps contradicting their closure rationale.

---

23. Detective Young's Evidence Status

As of: February 26, 2026

• Only one item received at that time.
• ATM video still missing (delivered later on March 12).
• Detective stated delays are common with Wells Fargo.
• Case remains active.
• Demonstrates Wells Fargo's pattern of delayed or incomplete law-enforcement responses.

---

24. Fifth CFPB Complaint Filed (April 2 Extension Unreasonable)

Date: February 25, 2026

• Challenged April 2 extension.
• 5 total complaints; 3 still open.
• Two emails sent to Wells Fargo demanding evidence and written communication only.
• Filed due to repeated procedural failures and lack of evidence production.

---

25. Provisional Credit Request + Improper Final Determination

Date: February 26, 2026

Improper Claim Closures:

• Claims 3 and 4 closed despite:
– Active extensions (March 12 and April 2)
– Active law-enforcement investigation
– Outstanding warrant
– Zero evidence provided at the time

Brie's 3:08 PM Call:

• Brie stated I could not file another claim.
• Brie stated I could not receive provisional credit because she was closing my claims.
• Both statements contradict Regulation E and the active extensions.
• A witness was present during this call.
• Brie used intimidation, spoke over me repeatedly, and used a harsh, pressured tone.
• She would not allow me to explain the situation and delivered inaccurate information in a confrontational manner.
• Her conduct caused emotional distress and was witnessed by a third party.

Claim 6 Filed:

• Filed due to premature closures and obstruction.

---

## 26. Complaints 7 and 8 Filed

Date: March 1–2, 2026

• Complaint 7 filed regarding Wells Fargo blocking access to closed accounts.
• Access was blocked; the complaint itself was not closed.
• Demonstrates continued obstruction and denial of access to records.

---

## 27. Detective Young Calls Wells Fargo

Date: March 2, 2026

• Wells Fargo asked whether I deposited into a Wells Fargo ATM.
• Wells Fargo asked whether I received a receipt.
• These questions contradict:
– ATM video clearly shows me making the deposit.
– ATM accepted the cash.
– Deposit occurred at a Wells Fargo branch-located ATM.
• Demonstrates Wells Fargo had not reviewed their own ATM records or video.
• Shows incomplete or misleading information provided to law enforcement.

---

## 28. Multiple CFPB Complaints Document Systemic Failures

Date Range: Dec 2025 – March 2026

- Multiple CFPB complaints documented repeated procedural failures.
- Wells Fargo failed to adequately staff for known pre-holiday fraud surges.
- Contributed to missed evidence windows and premature closures.
- Instant Cash Availability policy is unsafe when paired with inadequate fraud staffing.
- Wells Fargo treated all scam-induced transactions as "customer authorized," even when law enforcement classified them as fraud.
- Contradicts Reg E and law-enforcement findings.
- Pattern shows premature closures, missing evidence, contradictions, and refusal to classify scams as fraud.

---

29. Income Misclassification

Date Range: Dec 2025 – Feb 2026

- Wells Fargo misclassified my income as "monthly benefits" instead of weekly contractor pay.
- They assumed I was receiving benefits because my daughter receives SSI survivor benefits.
- Caused rejection of weekly contractor pay and false labeling as "unemployed/on benefits."
- Contributed to December pay disruption, second-week deposit rejection, and the 4.5-month financial crisis.
- Contradicted my actual income, credit score, withdrawal history, and State of Wyoming employment.

---

30. Detective Confirms ATM Acceptance + Deposit Missing

Date: March 17, 2026

- ATM accepted the cash; deposit missing inside Wells Fargo systems.

---

### 31. April 1 — 43 CFPB Complaints Closed With Identical Boilerplate

Date: April 1, 2026

• Closed by Amanda with identical language.

---

### 32. April 1 — New Fraud Claims Filed

Date: April 1, 2026 (Evening)

Filed new fraud claims for:

• $18,000 withdrawal
• $17,800 ATM deposit
• Both fraud claims were backdated to 3/31 by Wells Fargo.
• Filed because prior claims were improperly closed and evidence was not reviewed.

---

### 33. April 1, 2026 — New Withdrawal Claim

Claim Number: A-6040110181
Opened: April 1, 2026
Closed: April 5, 2026

• Evidence: None
• Written denial: None
• Investigation: None
• Pattern: Matches batch-closure behavior.

---

34. April 6, 2026 — 5:02 AM Call to Wells Fargo (Missing ATM Deposit)

• You called Wells Fargo at 5:02 AM to report the issue.
• Representative stated they "couldn't find the money" and ATM reconciliation showed it "was not there."
• You explained this is impossible because the ATM accepted the cash.
• Representative suggested it "must have gone into someone else's account."
• You documented that law enforcement already classified this as fraud.
• Wells Fargo closed your claim without providing required evidence.
• No documentation showing when funds allegedly left the ATM suspense account.
• You emphasized the timeline: deposit would have had to leave after 5:10 PM, when you first reported the fraud.
• Wells Fargo has provided no evidence supporting their decision.

---

35. April 6, 2026 — 5:47 PM Call With Brant (Fraud Claims)

• Brant stated deposit claim A-6040110175 was denied because Wells Fargo "cannot verify I made the deposit."
• This contradicts Detective Young's statement that you are clearly visible on ATM video.
• A Reg E–compliant investigation would have reviewed Apple Wallet authentication data.
• You continue to dispute the withdrawal due to coercion and teller-level failures.
• You requested clarification on how the deposit claim could be denied under these circumstances.

---

36. April 9 — 38 CFPB Complaints Batch-Closed

Date: April 9, 2026

• 38 CFPB complaints closed in a batch.
• Pattern matches April 1 batch closures.
• Indicates systemic premature closures and boilerplate responses.

---

## 37. April 15 — 4:01 PM Call About Claim 2604010049978

Date: April 15, 2026
Time: 4:01 PM

• Jen stated the $18,000 withdrawal claim was denied because it was "an in-branch withdrawal."
• This does not align with Regulation E or CFPB guidance.
• Reg E does not allow denial solely because customer was physically present.
• Authorization, not location, is the determining factor.
• Transactions made under coercion or duress are unauthorized even if PIN is entered or customer is present.
• Denial reason does not address coercion or voluntariness.
• Does not satisfy Reg E investigation requirements.

---

## 38. April 15, 2026 — 11:39 AM (39-minute call)

• Called Wells Fargo Privacy Center regarding potential security incident.
• Transferred to Melinda (Mortgage), then Veronica (Refinance/Purchase), then disconnected during transfer to Fraud.

---

## 39. April 15, 2026 — 12:19 PM (5-minute call)

• Called Privacy Center again; spoke with Audrey.
• She stated they cannot confirm by phone whether my information was part of a security breach.
• Only way to know is if legal team mailed a letter.
• She did not know whether mortgage applicants were notified of security incidents.

• This contradicts federal privacy-rights requirements.

---

40. April 30, 2026

Wyoming Attorney General – Consumer Protection Complaint

Subject: Request for Investigation – Wells Fargo Bank (Missing ATM Deposit, Withheld Records, Law Enforcement Noncompliance, Unfair Business Practices)

---

41. April 30, 2026 — 8:04 AM (Cheyenne, WY)

Event: Personal service of legal demand on Wells Fargo Bank, N.A.
Location: Corporation Service Company (CSC), 1821 Logan Ave., Cheyenne, WY

• Personally delivered the "Legal Demand for Full Production of Personal Data, Internal Records, and Operational Files."
• CSC accepted service without objection.
• My copy was date-stamped as proof of service.
• This constitutes formal legal notice and triggers preservation obligations.
• Response deadline: May 15, 2026.

---

42. Ongoing Harm (Final Entry)

Date Range: Nov 26, 2025 – Present

• $17,800 unreimbursed.
• Pay disruptions.
• Loss of tax records.
• Sleep loss.
• Chronic stress and hypervigilance.
• Family strain and caregiving disruption.

- Hundreds of hours spent documenting.
- Disability-related caregiving impacts.