# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING



JISELLE MCKEE,

Plaintiff,

v.

**WELLS FARGO BANK, N.A.,**

Defendant.

Civil Action No. 26-CV-146

## AMENDED COMPLAINT

*(First Amended Complaint Filed as of Right Under Fed. R. Civ. P. 15(a)(1))*

Table of Contents

1. Introduction

2. Jurisdiction and Venue

3. Parties

4. Statement of Facts

A. November 26, 2025 - The Day Everything Occurred

B. November 28, 2025 - Scheduled Appointment and Deputy Visit

C. Wells Fargo's Early Investigation Failures (Late Nov. - Early Dec. 2025)

D. December 2025 - Regulation E Failures

E. January 9, 2026 - Search Warrant Issued and Served

F. February-March 2026 - Contradictions, Obstruction, and Missing Evidence

F-1. February 26, 2026 - Intimidation and Coercive Conduct

F-2. Retaliation for Filing Complaints

G. April 2026 - Batch Closures and Continued Failures

H. April 30, 2026 - Legal Demand Served

I. Misrepresentation of Privacy Request

J. Pattern and Practice of Systemic Misconduct

K. Ongoing Harm

5. Causes of Action

Count I - Violation of the Electronic Fund Transfer Act

Count II - Violation of Regulation E

Count III - Negligence: Teller-Level Failures

Count IV - Negligence: ATM Custody and Chain-of-Custody Failures

Count V - Negligence: Recordkeeping and Ledger Integrity Failures

Count VI - Negligence: Investigation Failures

Count VII - Negligence: Search-Warrant Noncompliance

Count VIII - Negligence: Account-Access and Records-Access Failures

Count IX - Negligence: Privacy and Mortgage-Data Handling Failures

Count X - Negligent Misrepresentation

Count XI - Breach of Contract

Count XII - Breach of the Implied Covenant of Good Faith and Fair Dealing

Count XIII - Negligent Retention and Supervision

Count XIV - Negligent Infliction of Emotional Distress

Count XV - Intentional Infliction of Emotional Distress

Count XVI - Violation of the Wyoming Consumer Protection Act

Count XVII - Fraud

Count XVIII - Constructive Fraud

Count XIX - Negligent Enablement of Imposter Fraud

Count XX - Negligent Failure to Warn

Count XXI - Negligent Supervision and Training

Count XXII - Fraudulent Concealment

Count XXIII - Failure to Safeguard Funds / Duty of Ordinary Care in Deposit Handling

Count XXIV - Negligent Failure to Implement Reasonable Security Procedures

6. Damages, Prayer for Relief, and Demand for Trial

A. Damages

B. Prayer for Relief

C. Demand for Bench Trial

Exhibit Index

## 1. Introduction

This action arises from Wells Fargo's failures in fraud prevention, deposit custody, recordkeeping, privacy compliance, and lawful warrant response. On November 26, 2025, Wells Fargo allowed a scammer to deceive Plaintiff into withdrawing $18,000 under duress and then lost her $17,800 ATM cash deposit. Wells Fargo failed to conduct the investigation required by federal law, denied the existence of a judge-signed search warrant, withheld required ATM records, misrepresented the status of Plaintiff's claims, and issued contradictory and false statements across multiple departments.

Wells Fargo's conduct was not an isolated mistake. The events described in this Complaint reflect a pattern and practice of premature claim closures, non-preservation of records,

misclassification of transactions, misrepresentation of investigative steps, retaliation against consumer complaints, and obstruction of both Plaintiff and law enforcement. These failures occurred across fraud, ATM operations, branch personnel, privacy, and enterprise-complaints divisions.

Plaintiff brings this action to recover her financial losses, emotional-distress damages to the extent permitted by law, statutory relief, and all other remedies warranted by Wells Fargo's unfair, deceptive, unsafe, and unlawful business practices.

## 2. Jurisdiction and Venue

1. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq., and Regulation E, 12 C.F.R. § 1005.

2. The Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367.

3. Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to the claims occurred in Wyoming and Defendant conducts business in this District.

## 3. Parties

1. Plaintiff Jiselle McKee is a resident of Laramie County, Wyoming.

2. Defendant Wells Fargo Bank, N.A. is a national banking association doing business in Wyoming.

## 4. Statement of Facts

### A. November 26, 2025 - The Day Everything Occurred

1. Plaintiff received a 93-minute spoofed call appearing as Wells Fargo Mortgage (1-800-340-0570).

2. The caller falsely claimed to be from Wells Fargo Fraud and coached Plaintiff on what to say to Wells Fargo employees.

3. Plaintiff was instructed to state that she was paying a contractor and remained under deception, pressure, and duress throughout the call.

4. At approximately 4:25 p.m., while still on the spoofed call, Plaintiff withdrew $18,000 in cash from the Wells Fargo Pershing Branch.

5. Teller Sarah reinforced the scammer's script, normalized the explanation, and failed to follow required high-risk withdrawal protocols.

6. At approximately 5:00 p.m., Plaintiff deposited $17,800 into the Wells Fargo Capitol Avenue branch ATM.

7. Plaintiff pressed "confirm" twice during the ATM deposit—once after the ATM accepted $17,500 and again after $300—after which the transaction returned to the welcome screen without printing a receipt.

8. ATM surveillance video later confirmed Plaintiff making the deposit.

9. At approximately 5:10 p.m., Plaintiff called Wells Fargo's fraud line to report both the coerced withdrawal and the missing ATM deposit.

10. Wells Fargo stated it could not locate the deposit and instructed Plaintiff to go to the branch despite the holiday closure.

11. Plaintiff obtained a police report that evening and again called Wells Fargo with the case number.

12. Plaintiff filed an IC3 complaint that same night.

13. Despite multiple reports, Wells Fargo failed to open a fraud claim and instead closed Plaintiff's accounts and opened new accounts.

B. November 28, 2025 - Scheduled Appointment and Deputy Visit

1. Plaintiff attended a 9:00 a.m. appointment at the Capitol Avenue branch after Wells Fargo instructed her to visit the branch as soon as it reopened following Thanksgiving.

2. Plaintiff met with Personal Banker Brandon Jones, who attempted to assist with both the coerced $18,000 withdrawal and the missing $17,800 ATM deposit.

3. Brandon opened two internal escalations—one for the withdrawal and one for the missing deposit—and wrote the escalation number on his business card, which Plaintiff reasonably believed represented a formal fraud claim.

4. Brandon stated that he could not access ATM-operations systems and could not view the receiving account associated with the deposit.

5. Brandon confirmed that "Jiselle Premier Checking" was an account nickname and not Plaintiff's account.

6. Later that day, Deputy Gerhardt Valois separately visited the Capitol Avenue branch to follow up on the missing deposit.

7. Plaintiff did not learn the details of the deputy's visit until weeks later.

C. Wells Fargo's Early Investigation Failures (Late Nov. - Early Dec. 2025)

1. Wells Fargo closed the initial investigation into the missing $17,800 ATM deposit and the coerced $18,000 withdrawal without contacting Plaintiff, without reviewing available evidence, and without opening a formal fraud claim despite multiple reports on November 26 and November 28.

2. In early December 2025, Wells Fargo rejected Plaintiff's weekly State of Wyoming contractor payment, incorrectly treating it as a "duplicate" or "already-received" benefit payment. Plaintiff is a Medicaid DD Waiver contractor who is paid weekly, not monthly, and the rejected deposit

was her earned contractor pay—not a benefit.

3. Wells Fargo's rejection was based on the false assumption that Plaintiff "already received her monthly benefit," an error that later appeared in Wells Fargo's CFPB response and contributed to misclassification of Plaintiff's income and account activity.

4. Wells Fargo failed to preserve or produce required ATM-operations records, including electronic journal (EJ) logs, cassette totals, access logs, chain-of-custody records, error codes, reconciliation reports, and Apple Wallet authentication data.

5. These early failures impeded law enforcement, obstructed deposit tracing, and set the pattern for Wells Fargo's later misrepresentations, contradictions, and premature claim closures.

D. December 2025 - Regulation E Failures

1. On December 4, 2025, Wells Fargo opened a Regulation E claim for the $18,000 coerced withdrawal but closed the claim within 24 hours without contacting Plaintiff, reviewing available evidence, or documenting any investigative steps.

2. Wells Fargo later contradicted its own records by asserting that no Regulation E claim existed, despite having opened and closed the December 4 withdrawal claim.

3. On April 1, 2026, Plaintiff opened new fraud claims for both the $18,000 withdrawal and the missing $17,800 ATM cash deposit. Wells Fargo backdated the new claims to March 31, 2026.

4. On April 2, 2026, Wells Fargo issued a claim response misclassifying the $17,800 ATM cash deposit as a check deposit and requested the ATM receipt, even though the ATM did not print a receipt. After Plaintiff pressed "confirm" twice, the transaction returned to the welcome screen without generating any receipt.

5. The April 2 denial letter again misclassified the cash deposit as a check deposit and requested copies of a check and ATM receipt that did not exist, demonstrating that no reasonable

investigation was performed.

6. On April 6, 2026, Plaintiff contacted Wells Fargo regarding the closure of the April 1 deposit claim. Wells Fargo stated it "could not find the money" and that ATM reconciliation "showed it was not there." Later that same day, representative Brant stated that Wells Fargo "cannot verify that you made the deposit," directly contradicting Detective Young's confirmation that Plaintiff was visible on the ATM video making the deposit.

7. On April 15, 2026, Plaintiff contacted Wells Fargo regarding her withdrawal claim. Representative Jen stated that the claim was denied because the withdrawal was considered an "in-branch withdrawal," despite the withdrawal being coerced and therefore unauthorized under Regulation E.

8. On April 17, 2026, ATM Operations issued a letter stating they could not verify receipt of a "check" in the amount of $17,800, again misclassifying the cash deposit and demonstrating continued investigative failures.

E. January 9, 2026 - Search Warrant Issued and Served

1. On January 9, 2026, Detective Young obtained and served a judge-signed search warrant on Wells Fargo requiring production of ATM logs, custody records, reconciliation data, and all related documentation necessary to trace Plaintiff's missing $17,800 cash deposit.

2. Wells Fargo issued internal reference number 31797669 at the time of service, confirming receipt of the warrant.

3. The warrant required full compliance on or before March 12, 2026.

4. Despite being properly served, Wells Fargo denied that the warrant existed when Plaintiff later inquired about its status.

5. Wells Fargo failed to comply with the warrant and produced only the ATM surveillance video

while withholding required ATM-operations records, including EJ logs, cassette totals, access logs, chain-of-custody records, error codes, and reconciliation reports.

6. Detective Young confirmed that the ATM accepted Plaintiff's cash deposit and that the deposit was missing within Wells Fargo's systems, further demonstrating the importance of the records Wells Fargo failed to produce.

F. February-March 2026 - Contradictions, Obstruction, and Missing Evidence

1. In February and March 2026, Wells Fargo representatives issued multiple contradictory statements regarding the January 9, 2026 search warrant and the status of Plaintiff's fraud and deposit-tracing claims.

2. Wells Fargo representative Melissa falsely stated that no warrant had been served.

3. When Plaintiff provided Wells Fargo with the internal reference number 31797669, which Wells Fargo issued to Detective Young at the time of service, Wells Fargo denied that its own reference number existed.

4. The search warrant required full compliance on or before March 12, 2026, yet Wells Fargo produced only the ATM surveillance video and withheld required ATM-operations records, including EJ logs, cassette totals, access logs, chain-of-custody records, error codes, and reconciliation reports.

5. Detective Young confirmed that the ATM accepted Plaintiff's cash deposit and that the deposit was missing within Wells Fargo's systems, further demonstrating the importance of the records Wells Fargo failed to produce.

6. Wells Fargo's contradictory statements, denial of the warrant, and failure to produce required records obstructed law enforcement, impeded deposit tracing, and contributed to Plaintiff's ongoing harm.

F-1. February 26, 2026 - Intimidation and Coercive Conduct

1. On February 26, 2026, Wells Fargo representatives engaged in intimidating and coercive conduct during a call regarding Plaintiff's missing $17,800 ATM deposit.

2. During the call, Wells Fargo employee Brie raised her voice at Plaintiff, talked over her, contradicted prior statements made by other Wells Fargo departments, and provided false information about the status of the investigation.

3. A witness overheard the call and observed Plaintiff becoming visibly distressed as a result of Wells Fargo's conduct.

4. This intimidation occurred after Wells Fargo had already denied the existence of the January 9 search warrant and denied the existence of its own internal reference number 31797669, compounding Plaintiff's distress and obstructing her efforts to obtain accurate information.

5. Plaintiff alleges that Wells Fargo's conduct on February 26, 2026 constituted coercive, bad-faith behavior intended to deter her from pursuing her rights and to suppress further inquiries into the missing deposit and related investigative failures.

F-2. Retaliation for Filing Complaints

1. Wells Fargo repeatedly told Plaintiff that filing complaints would "slow the response" or make it more difficult for Wells Fargo to assist her.

2. Wells Fargo further instructed Plaintiff not to file additional complaints, which Plaintiff alleges was false, coercive, and intended to deter her from pursuing her rights.

3. Wells Fargo later stated in writing that it would no longer respond to Plaintiff regarding her concerns, which Plaintiff alleges was retaliatory and designed to suppress further inquiries into the missing deposit and related investigative failures.

4. After Plaintiff filed this lawsuit on May 6, 2026, she received additional correspondence from

Wells Fargo on May 16, 2026, which Plaintiff alleges was retaliatory, misleading, and intended to deter her from pursuing her claims and legal rights.

5. Plaintiff alleges that Wells Fargo's retaliatory conduct was part of a broader pattern of obstruction, intimidation, and misrepresentation across multiple departments.

G. April 2026 - Batch Closures and Continued Failures

1. Throughout April 2026, Wells Fargo batch-closed multiple CFPB complaints and fraud claims related to both the coerced $18,000 withdrawal and the missing $17,800 ATM cash deposit. These closures were issued without investigation, without tracing the deposit, without reviewing ATM-operations records, and without complying with the January 9, 2026 search warrant.

2. On April 6, 2026, Wells Fargo issued contradictory explanations regarding the missing deposit, including stating that ATM reconciliation "showed it was not there" and later stating that Wells Fargo "cannot verify that you made the deposit," despite Detective Young confirming Plaintiff was visible on the ATM video making the deposit.

3. On April 15, 2026, Plaintiff contacted the Wells Fargo Privacy Center regarding the 2022–2023 Wells Fargo Insider Mortgage Breach. Plaintiff had previously applied for a Wells Fargo mortgage in 2018 and received mortgage-related marketing emails throughout 2022.

4. During the April 15 call, Privacy Center representative Audrey stated she could not confirm by phone whether Plaintiff's personal information was part of a security breach and that the only way to know was if the legal team mailed a letter. Audrey further stated she did not know whether mortgage applicants were notified of security incidents.

5. These statements support allegations of fraudulent concealment, privacy-rights violations, and consumer-protection violations, particularly given that mortgage applications contain the same categories of personal data used by the scammer on November 26, 2025.

6. The April 6 contradictions, April 15 contradictions, and April batch closures demonstrate that Wells Fargo's internal departments provided Plaintiff with inconsistent, incompatible, and factually contradictory explanations, including:

• claiming the ATM reconciliation showed no deposit,

• claiming they could not verify Plaintiff made the deposit,

• denying the withdrawal claim based on an inaccurate "in-branch" classification,

• refusing to confirm whether Plaintiff's data was involved in a known breach,

• admitting they did not know whether mortgage applicants were notified of security incidents, and

• batch-closing fraud claims and CFPB complaints without investigation.

7. These contradictions and batch closures further support Plaintiff's allegations of institutional negligence, fraudulent concealment, and bad-faith handling across multiple departments.

H. April 30, 2026 - Legal Demand Served

1. On April 30, 2026, Plaintiff personally served Wells Fargo's registered agent with a formal legal demand requiring full production of all records related to the missing $17,800 ATM cash deposit, the coerced $18,000 withdrawal, and Wells Fargo's investigative actions.

2. The demand required production of ATM-operations records, custody logs, reconciliation data, internal communications, and all documents responsive to the January 9, 2026 search warrant.

3. Wells Fargo's response deadline was May 15, 2026, yet Wells Fargo failed to produce the required records, including ATM logs, chain-of-custody documentation, and reconciliation reports.

4. Wells Fargo's failure to comply with the April 30 legal demand continued the same pattern of

obstruction, non-preservation of evidence, and refusal to provide required documentation that had occurred since November 2025.

I. Misrepresentation of Privacy Request

1. On April 15, 2026, Plaintiff contacted the Wells Fargo Privacy Center to determine whether her personal information had been compromised in the 2022–2023 Wells Fargo Insider Mortgage Breach. Plaintiff had applied for a Wells Fargo mortgage in 2018 and received mortgage-related marketing emails throughout 2022, indicating her information remained in Wells Fargo's systems during the breach period.

2. Privacy Center representative Audrey stated she could not confirm by phone whether Plaintiff's information was part of a security incident and that the only way to know was if Wells Fargo's legal team mailed a notification letter.

3. Audrey further stated she did not know whether mortgage applicants were notified of security incidents, contradicting Wells Fargo's public statements and regulatory obligations regarding breach notification.

4. Plaintiff alleges that Wells Fargo's statements were misleading, incomplete, and designed to conceal whether Plaintiff's personal information had been accessed or misused, particularly given that the scammer on November 26, 2025 used categories of personal data consistent with information contained in mortgage applications.

5. Wells Fargo's misrepresentation of Plaintiff's privacy request forms part of the broader pattern of concealment, contradictory statements, and failure to provide accurate information across multiple departments.

J. Pattern and Practice of Systemic Misconduct

1. Plaintiff alleges that Wells Fargo engaged in a sustained pattern and practice of misconduct from November 2025 through May 2026, involving multiple departments—including Fraud, ATM Operations, Branch Personnel, the Privacy Center, and the CFPB Response Unit.

2. This pattern included repeated misclassification of Plaintiff's transactions, including labeling a $17,800 cash deposit as a check deposit, treating weekly contractor pay as a "monthly benefit," and mischaracterizing a coerced withdrawal as an "in-branch withdrawal."

3. Wells Fargo issued contradictory statements across departments, including denying the existence of the January 9, 2026 search warrant, denying the existence of its own internal reference number 31797669, and providing inconsistent explanations regarding ATM reconciliation and deposit verification.

4. Wells Fargo repeatedly failed to investigate Plaintiff's claims, including closing Regulation E claims within 24 hours, batch-closing CFPB complaints, and issuing denials without reviewing evidence, tracing the deposit, or producing required ATM-operations records.

5. Wells Fargo engaged in obstruction and non-compliance, including failing to comply with the January 9 search warrant by the March 12 deadline, failing to produce records required by the April 30 legal demand, and withholding EJ logs, cassette totals, access logs, chain-of-custody records, and reconciliation reports.

6. Wells Fargo engaged in intimidation and coercive conduct, including raising voices at Plaintiff, contradicting prior statements, discouraging Plaintiff from filing complaints, and stating that filing complaints would "slow the response."

7. Wells Fargo engaged in retaliatory conduct, including issuing written statements that it would no longer respond to Plaintiff and sending additional misleading correspondence after Plaintiff

filed this lawsuit on May 6, 2026.

8. Wells Fargo provided misleading and incomplete information regarding Plaintiff's privacy request, including refusing to confirm whether her personal information was involved in the 2022–2023 Insider Mortgage Breach and contradicting its own public breach-notification obligations.

9. Plaintiff alleges that these actions were not isolated incidents but part of a broader institutional pattern of negligence, concealment, misrepresentation, and bad-faith handling of consumer claims.

K. Ongoing Harm

1. Plaintiff continues to suffer financial, emotional, and practical harm as a direct result of Wells Fargo's failure to investigate the missing $17,800 ATM cash deposit, the coerced $18,000 withdrawal, and the bank's repeated misclassification, contradictions, and obstruction.

2. Plaintiff has been forced to spend significant time, energy, and resources attempting to obtain records that Wells Fargo was legally required to preserve and produce, including ATM-operations logs, reconciliation data, and chain-of-custody documentation.

3. Plaintiff continues to experience financial instability due to the loss of the $17,800 deposit, the coerced $18,000 withdrawal, and the rejection of her weekly State of Wyoming contractor pay, which Wells Fargo incorrectly treated as a "monthly benefit."

4. Plaintiff has suffered ongoing emotional distress, including anxiety, fear, and loss of trust in financial institutions, as a result of Wells Fargo's intimidation, contradictory statements, and refusal to provide accurate information.

5. Plaintiff continues to face uncertainty regarding whether her personal information was compromised in the 2022–2023 Wells Fargo Insider Mortgage Breach, due to Wells Fargo's

refusal to confirm whether her data was involved and its contradictory statements regarding breach notifications.

6. Plaintiff alleges that the ongoing harm is the direct and foreseeable result of Wells Fargo's pattern of negligence, misrepresentation, concealment, and bad-faith handling of her claims.

5. Causes of Action

Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

Count I - Violation of the Electronic Fund Transfer Act

*(15 (15 U.S.C. § 1693 et seq.)*

1. Plaintiff incorporates all preceding paragraphs.

2. The $18,000 withdrawal on November 26, 2025 was made under deception, coercion, and duress and therefore constituted an unauthorized electronic fund transfer under 15 U.S.C. § 1693a(12).

3. Wells Fargo failed to conduct a reasonable investigation as required by 15 U.S.C. § 1693f.

4. Wells Fargo failed to provide timely written explanations of its determinations and failed to provide evidence supporting its denial.

5. Wells Fargo is liable for actual damages, statutory damages, costs, and all relief available under 15 U.S.C. § 1693m.

Count II - Violation of Regulation E

*(12 (12 C.F.R. § 1005)*

1. Plaintiff incorporates all preceding paragraphs.

2. On December 4, 2025, Wells Fargo opened a Regulation E claim and closed it within 24 hours without contacting Plaintiff or reviewing available evidence.

3. Wells Fargo later asserted that no Regulation E claim existed, contradicting its own records.

4. On April 1–2, 2026, Wells Fargo misclassified Plaintiff's $17,800 ATM cash deposit as a check deposit and demanded a receipt the ATM did not print.

5. Wells Fargo failed to conduct a reasonable investigation and failed to provide required documentation and provisional credit.

6. Wells Fargo is liable for damages to the extent provided by law.

Count III - Negligence: Teller-Level Failures

1. Wells Fargo owed Plaintiff a duty of ordinary care in processing high-risk withdrawals.

2. Teller Sarah breached that duty by reinforcing the scammer's script, failing to intervene, and failing to follow required protocols.

3. This breach proximately caused Plaintiff's financial loss and emotional harm.

Count IV - Negligence: ATM Custody and Chain-of-Custody Failures

1. Wells Fargo owed a duty to safeguard ATM deposits and preserve deposit records.

2. Wells Fargo breached that duty by losing the $17,800 deposit and failing to preserve required ATM records.

3. This breach caused financial loss and obstructed investigation.

Count V - Negligence: Recordkeeping and Ledger Integrity Failures

1. Wells Fargo altered ledger descriptions without explanation or audit trail.

2. Wells Fargo failed to maintain accurate records and failed to preserve evidence.

3. These failures caused confusion, delay, and harm.

Count VI - Negligence: Investigation Failures

1. Wells Fargo owed Plaintiff a duty to conduct a reasonable fraud investigation.

2. Wells Fargo prematurely closed claims and issued contradictory statements.

3. Wells Fargo failed to review evidence, contact Plaintiff, or preserve records.

4. On February 26, 2026, Wells Fargo engaged in intimidating conduct, including raised voices, speaking over Plaintiff, and providing false information.

5. Wells Fargo's conduct reflects procedural bad faith, including obstruction, contradictory explanations, intimidation, and retaliation designed to deter Plaintiff from pursuing her rights.

Count VII - Negligence: Search-Warrant Noncompliance

1. Law enforcement served Wells Fargo with a judge-signed search warrant on January 9, 2026.

2. Wells Fargo denied the warrant's existence and failed to comply.

3. These actions obstructed law enforcement and caused harm.

Count VIII - Negligence: Account-Access and Records-Access Failures

1. Wells Fargo blocked access to closed accounts and related records.

2. This breach caused harm, including the inability to verify transactions and prepare for investigation.

Count IX - Negligence: Privacy and Mortgage-Data Handling Failures

1. Wells Fargo issued contradictory statements regarding potential exposure of Plaintiff's mortgage-related data.

2. Wells Fargo failed to follow privacy-rights requirements.

3. These failures caused emotional distress and identity-related risk.

Count X - Negligent Misrepresentation

1. Wells Fargo made false statements regarding claim status, warrant existence, and evidence availability.

2. Plaintiff reasonably relied on those statements to her detriment.

Count XI - Breach of Contract

1. Plaintiff incorporates all preceding paragraphs.

2. Wells Fargo entered into a contractual relationship with Plaintiff governing deposit handling, recordkeeping, and fraud investigation.

3. Wells Fargo breached the contract by failing to safeguard deposits, maintain accurate records, and investigate fraud.

4. Plaintiff suffered financial loss and related harm as a result.

Count XII - Breach of the Implied Covenant of Good Faith and Fair Dealing

1. Plaintiff incorporates all preceding paragraphs.

2. Wells Fargo acted in bad faith by obstructing investigations, issuing contradictory statements,

and failing to follow required procedures.

3. Wells Fargo intimidated Plaintiff and retaliated against her for filing complaints.

4. Plaintiff suffered damages as a result.

Count XIII - Negligent Retention and Supervision

1. Wells Fargo owed Plaintiff a duty to supervise and retain competent employees capable of handling fraud, Regulation E, and law-enforcement matters.

2. Wells Fargo breached that duty by retaining employees who engaged in intimidation, retaliation, and misrepresentation.

3. These failures caused Plaintiff financial loss and emotional distress.

Count XIV - Negligent Infliction of Emotional Distress

1. Wells Fargo's conduct, including intimidation, retaliation, and obstruction, was extreme and outrageous.

2. Plaintiff suffered severe emotional distress, sleep disruption, and anxiety.

3. Wells Fargo's negligence directly caused this harm.

Count XV - Intentional Infliction of Emotional Distress

1. Wells Fargo's conduct was intentional, reckless, and outrageous.

2. Employees deliberately raised their voices, contradicted prior statements, and falsely accused Plaintiff of wrongdoing.

3. Wells Fargo's actions were intended to intimidate and silence Plaintiff.

4. Plaintiff suffered severe emotional distress as a result.

Count XVI - Violation of the Wyoming Consumer Protection Act

1. Wells Fargo engaged in unfair and deceptive acts and practices in violation of Wyo. Stat. § 40-12-101 et seq.

2. Those acts include misrepresentation of claim status, concealment of material facts, and retaliation against a consumer complaint.

3. Plaintiff suffered ascertainable loss as a result.

Count XVII - Fraud

1. Wells Fargo knowingly made false statements regarding the existence of the search warrant, claim status, and evidence availability.

2. Wells Fargo intended Plaintiff to rely on those statements.

3. Plaintiff reasonably relied on those statements and suffered damages.

Count XVIII - Constructive Fraud

1. Wells Fargo owed Plaintiff a duty of honesty and full disclosure.

2. Wells Fargo breached that duty by concealing material facts and issuing misleading correspondence.

3. Plaintiff suffered harm as a result.

Count XIX - Negligent Enablement of Imposter Fraud

1. Wells Fargo owed Plaintiff a duty of reasonable care to prevent imposters from exploiting its systems, including account-nickname features and ATM interfaces.

2. Wells Fargo breached that duty by allowing a scammer to create or control an account nicknamed Jiselle Premier Checking, which appeared on the ATM during Plaintiff's deposit.

3. Wells Fargo failed to detect mismatched identity data and high-risk patterns.

4. Those failures enabled the imposter to deceive Plaintiff into depositing $17,800 into a scammer-controlled account.

5. Plaintiff suffered financial loss and emotional distress.

Count XX - Negligent Failure to Warn

1. Wells Fargo had a duty to warn customers of known fraud patterns, including spoofing scams and ATM redirection schemes.

2. Wells Fargo knew or should have known that scammers impersonate Wells Fargo and coach victims on what to say.

3. Teller Sarah and other personnel failed to warn Plaintiff of these known risks.

4. Wells Fargo's failure to warn contributed to Plaintiff's loss and emotional harm.

Count XXI - Negligent Supervision and Training

1. Wells Fargo owed Plaintiff a duty to properly train and supervise employees handling fraud and law-enforcement matters.

2. Wells Fargo breached that duty by failing to ensure employees were trained to identify high-risk withdrawals, comply with Regulation E, and respond appropriately to warrants.

3. Employees engaged in misconduct including raised voices, false statements, and coercive behavior.

4. These failures caused financial loss and emotional distress.

Count XXII - Fraudulent Concealment

1. Wells Fargo knowingly concealed material facts, including the existence of the January 9 warrant, missing ATM logs, and the fact that the deposit was accepted.

2. Wells Fargo had a duty to disclose these facts because they were material to Plaintiff's fraud claims and deposit tracing.

3. Wells Fargo intended Plaintiff to rely on its omissions to deter her from pursuing her rights.

4. Plaintiff relied on Wells Fargo's concealment and suffered damages.

Count XXIII - Failure to Safeguard Funds / Duty of Ordinary Care in Deposit Handling

1. Wells Fargo owed Plaintiff a duty of ordinary care to safeguard deposits and maintain custody records.

2. Wells Fargo breached that duty by losing Plaintiff's $17,800 deposit and failing to preserve required ATM records.

3. Those failures caused financial loss and ongoing harm.

Count XXIV - Negligent Failure to Implement Reasonable Security Procedures

1. Wells Fargo owed Plaintiff a duty to implement reasonable security procedures to detect and prevent fraud.

2. Wells Fargo breached that duty by allowing a scammer to create or control an account appearing to belong to Plaintiff, failing to detect mismatched identity data, and failing to detect missing ATM logs.

3. Those failures constitute negligent security practices and directly caused Plaintiff's financial loss and emotional harm.

6. Damages, Prayer for Relief, and Demand for Trial

A. Damages

As a direct and proximate result of Wells Fargo's conduct, Plaintiff seeks recovery for: (1) financial loss, including the unreimbursed $17,800 ATM cash deposit and related out-of-pocket expenses; (2) emotional distress, anxiety, sleep disruption, and related harm to the extent recoverable by law; (3) reputational and identity-related harm, including identity-theft risk; (4) administrative and litigation burden, including the time required to gather records, assist law

enforcement, and prepare filings; (5) statutory damages to the extent provided by applicable law; and (6) punitive damages to the extent permitted by law.

B. Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and award: (1) actual damages in an amount to be determined at trial, including the unreimbursed $17,800 deposit; (2) statutory damages under the Electronic Fund Transfer Act; (3) statutory damages under the Wyoming Consumer Protection Act to the extent available; (4) punitive damages to the extent permitted by law; (5) compensatory damages for emotional distress and related harm to the extent recoverable; (6) restitution or other appropriate monetary relief; (7) prejudgment and post-judgment interest as allowed by law; (8) costs of suit as permitted by law; and (9) such other and further relief as the Court deems just and proper.

C. Demand for Bench Trial

Plaintiff elects and demands trial to the Court on all claims and issues properly triable to the Court.

Respectfully submitted,

*Jiselle McKee*

Jiselle McKee
Cheyenne, WY 82009
Email: Jiselle.cash@csuglobal.edu
Phone: 307-214-0841
Plaintiff, Pro Se
Date: May 18, 2026

# Exhibit Index

**Exhibits 1-25** were previously filed with the original Complaint on May 6, 2026 and appear at Dkt. 1-1 through 1-25. They are incorporated by reference and are not re-attached here.

**Exhibit 26** - Timeline Updates: Supplemental chronology of events from April 30-May 14, including AG complaint, OCC reopening, ECMO acknowledgment, and law-enforcement follow-ups.

**Exhibit 27** - Consolidated Contradiction Matrix: Structured summary of contradictions across Wells Fargo departments, regulatory responses, and law-enforcement communications.

**Exhibit 28** - Wells Fargo Branch and Non-Fraud Claims Letter (April 2, 2026): Letter allegedly misclassifying the $17,800 cash deposit as a check deposit and requesting documents Plaintiff contends did not exist.

**Exhibit 29** - Wells Fargo ATM Operations Letter (April 17, 2026): Letter allegedly again misclassifying the cash deposit as checks and requesting copies of checks and stop-payment actions.

**Exhibit 30** - OCC Appeal Case CS-0433803 and ECMO Letter (May 1 and May 4, 2026): Materials allegedly confirming that OCC reopened the complaint and that Wells Fargo acknowledged federal oversight.

**Exhibit 31** - Detective Young Emails: Materials allegedly reflecting that Wells Fargo denied the warrant, failed to provide ATM logs, and repeatedly delayed law-enforcement requests.

**Exhibit 32** - IRS Identity-Misuse Notice (CP01E): Notice allegedly reflecting possible employment-related identity theft.

**Exhibit 33** - Damages Summary: Itemized summary of financial, emotional, administrative, and statutory damages.

**Exhibit 34** - Wells Fargo Enterprise Complaints Letter (May 11, 2026): Correspondence Plaintiff alleges demonstrates continued obstruction and misrepresentation after commencement of this federal action.

**Exhibit 35** - Wells Fargo Privacy Letter (May 8, 2026): Correspondence Plaintiff alleges acknowledges receipt of a privacy-data request and disputes the scope of Plaintiff's mortgage-system history and requested disclosures.

**Exhibit 36** - Wells Fargo Mortgage Marketing Emails (2022): Evidence showing Plaintiff's information was stored in Wells Fargo mortgage systems during the 2022 insider-breach period.