# EXHIBIT 27

## CONSOLIDATED CONTRADICTION MATRIX

United States District Court – District of Wyoming

*A structured summary of documented contradictions across Wells Fargo departments, regulatory responses, and law-enforcement communications.*

## I. Warrant and Law-Enforcement Contradictions

1. Wells Fargo representatives denied a warrant existed despite a judge-signed warrant being issued, served, and assigned internal reference 31797669.
2. WF claimed the warrant reference number was "not valid," contradicting detective confirmation.
3. WF told the CFPB "no warrant was submitted," despite confirmed service.
4. WF repeatedly referred to the warrant as a "subpoena."
5. WF claimed responses were "not related to law enforcement."
6. WF asked the detective whether the ATM was WF-owned despite its location at the Capitol Avenue branch.
7. WF asked whether Plaintiff received a receipt despite possessing ATM deposit slip.
8. WF asked whether the deposit occurred despite video of Plaintiff making it.
9. WF failed to comply with the warrant for months while claiming to be working on it.
10. WF requested more time to send ATM records but only sent letters claiming investigation, contradicting video evidence.

## II. ATM Deposit Contradictions

1. WF called the deposit "alleged" despite ATM video confirming it.
2. WF claimed the deposit was "not traceable," contradicting ATM video.
3. WF claimed they "cannot verify" Plaintiff made the deposit despite possession of ATM video.
4. WF claimed reconciliation shows it was not there, contradicting ATM acceptance.
5. WF claimed the deposit must have gone into someone else's account, contradicting required ATM logs.
6. WF claimed "no logs exist," contradicting mandatory recordkeeping.
7. WF misidentified the $17,800 cash deposit as a check deposit.
8. WF again misidentified it as a check deposit and requested copies of checks.
9. WF referenced deposit dates that do not exist.

### III. ATM Interface / Nickname Contradictions

1. WF claimed the ATM nickname account "does not exist," despite displaying "Jiselle Premier Checking."
2. WF claimed they "cannot identify the receiving account," contradicting nickname display.
3. WF employee Brandon Jones confirmed the nickname existed, contradicting WF's current position.

### IV. Teller / Branch-Level Contradictions

1. Teller processed $18,000 withdrawal without fraud-screening indicators.
2. Teller reinforced the scammer script instead of interrupting fraud indicators.
3. Teller failed to offer safer alternatives such as a cashier's check.
4. Teller failed to assess duress while WF later claimed "no error."
5. Fraud department instructed Plaintiff to visit a branch on Thanksgiving when branches were closed.

### V. Fraud Department Contradictions

1. A fraud representative blamed Plaintiff, contradicting Regulation E representation.
2. A fraud representative minimized the loss by stating, "at least you didn't put it in the ATM."
3. Fraud department claimed a completed investigation despite missing logs.
4. Fraud department claimed "no error," contradicting video and screenshots.
5. Fraud department used check-deposit procedures for a cash-deposit claim.
6. System shows 4/1 closure despite Plaintiff's 4/2 deposit claim.

### VI. Regulation E Claim Handling Contradictions

1. WF claimed no Regulation E claim existed despite opening and closing one within 24 hours.
2. WF claimed proper closure despite no investigation.
3. WF claimed Plaintiff cannot file another claim, contradicting Regulation E.
4. WF claimed Plaintiff cannot receive provisional credit, contradicting Regulation E.
5. WF denied the withdrawal claim because it was "in-branch," contradicting Regulation E authorization standard.
6. WF used check-deposit procedures for a cash-deposit claim.

### VII. Investigation Completeness Contradictions

1. WF claimed "all issues reviewed" despite missing logs and warrant records.

2. WF claimed "no bank error" despite missed deposit and altered ledger.
3. WF told the CFPB Plaintiff "never provided evidence," despite multiple attachments.
4. WF claimed they "could not locate" ATM records despite claiming the deposit was investigated.

## VIII. Ledger / Recordkeeping Contradictions

1. WF claimed ledger entries "cannot change," despite ledger changes for cashier's-check deposit withdrawal.
2. WF claimed "no logs exist," contradicting mandatory internal controls.

## IX. Privacy / Security Contradictions

1. Privacy Center claimed it cannot confirm a breach of information.
2. Privacy department claimed it "cannot access information," contradicting internal access logs.
3. IRS records show identity misuse, contradicting WF's claim of no identity-theft issue.

## X. Mortgage / Retaliation Contradictions

1. Mortgage department claimed it did not access Plaintiff's file despite promotional emails.

## XI. Income / Employment Misclassification Contradictions

1. WF classified Plaintiff as "unemployed and on benefits," contradicting weekly contractor deposits.
2. WF misclassified Plaintiff's income despite contractor status.

## XII. Internal Process / Escalation Contradictions

1. WF claimed escalation was only for withdrawal, not deposit-specific.
2. WF denied the deposit escalation existed despite Brandon creating it.
3. WF claimed escalation structure was correct despite contradicting separate escalations.
4. WF claimed separate escalation was unrelated to the deposit despite deposit being reported first.
5. WF opened OCC and ECMO cases while claiming "no new information existed."

## XIII. "We Already Addressed This" Contradictions

1. WF Vice President Steven refused to address staffing, procedure, litigation, or subpoena issues, then reversed after CFPB complaint.

2. Steven claimed more complaints "would slow the response," then said a team was working on it after CFPB retaliation complaint.
3. WF claimed the December 3 letter addressed all concerns despite addressing only a few.
4. WF claimed the April 10 letter addressed all concerns despite contradictory letters.
5. WF claimed "no new information" existed despite new evidence in multiple CFPB complaints.

## XIV. ATM Traceability Contradictions

1. WF claimed ATM deposits are "not traceable," contradicting standard traceability.
2. WF claimed "no trace of your digital card," contradicting ATM system record display.
3. WF claimed it could not locate logs despite claiming it reviewed the deposit.
4. WF claimed it needed the receiving account number to locate the deposit.
5. WF claimed it cannot identify the receiving account despite nickname display.

## XV. Deadline / Timeline Contradictions

1. WF claimed "no deadlines were missed" despite missed Warren and CFPB deadlines.
2. This issue remains open and pending completion.

## XVI. Mortgage-System Privacy and Data-Handling Contradictions

1. WF's May 8, 2026 mortgage-data letter reviewed records "through August 2023" and found "no mortgage" and "no breach exposure," ignoring Plaintiff's system presence 2018–2022.
2. Plaintiff received mortgage marketing emails and texts in 2022, proving data presence during the 2022 insider-breach period.
3. WF responded to a different question, avoiding system-presence and breach-exposure issues.
4. WF substituted marketing data for breach-exposure data, omitting internal access logs.
5. WF notified mortgage customers but not mortgage applicants or marketing-system individuals, despite identical data fields being exposed.
6. Plaintiff's data was present during the breach period, yet she received no notification.