# EXHIBIT 33

## DAMAGES SUMMARY

### United States District Court – District of Wyoming

**Plaintiff:** Jiselle McKee
**Defendant:** Wells Fargo Bank, N.A.
**Exhibit Title:** Damages Summary
**Purpose:** Summary of documented harms arising from Defendant's handling of Plaintiff's accounts, deposits, withdrawals, identity-misuse issues, and related communications.

## I. Economic Loss

1. **17,800 ATM Cash Deposit Not Posted.** Plaintiff deposited ,800 in cash at a Wells Fargo ATM. The ATM accepted the cash but froze and did not post the deposit. Funds were never credited to any account.
2. **18,000 Coerced Branch Withdrawal.** Plaintiff withdrew ,000 under coercive circumstances related to the same fraud event.
3. **Total Financial Exposure: 5,800.**
4. **Loss of Contractor Income Due to Account Issues.** Plaintiff is an independent contractor for the State of Wyoming and receives weekly payments. Due to Wells Fargo's misclassification and account-handling errors, the State was unable to deposit payments for approximately three weeks.
5. **Identity-Misuse Costs.** IRS issued a letter confirming misuse of Plaintiff's SSN. Plaintiff incurred administrative costs and time associated with identity-misuse remediation.
6. **Inability to Fund Holiday Expenses.** Due to the missing ,800 deposit, the coerced ,000 withdrawal, and delays in receiving contractor income, Plaintiff lacked sufficient funds during the Christmas period. Plaintiff was unable to purchase holiday necessities or participate in customary seasonal activities.

## II. Emotional Distress

1. **Sleep Loss Triggered by Wells Fargo Communications.** Plaintiff experienced significant sleep disruption after nearly every communication from Wells Fargo, including each "final determination," denial letter, contradictory response, or escalation refusal. Stress consistently increased after each determination or denial.

2. **Stress From Missing Funds and Coerced Withdrawal.** Panic and fear when the ATM froze with ⬚,800 inside. Ongoing distress when the deposit never posted. Emotional impact of being pressured into withdrawing ⬚,000.
3. **Intimidation During Phone Calls.** Plaintiff experienced intimidation during calls with Wells Fargo representatives, including one call witnessed by a third party.
4. **Identity-Misuse Anxiety.** Stress and fear resulting from IRS confirmation of SSN misuse.
5. **Confusion and Distress From Contradictory Statements.** Wells Fargo denied the existence of a judge-signed warrant. Wells Fargo denied its own internal reference number provided to law enforcement.
6. **Relationship Stress With Family Members.** Plaintiff experienced increased relationship strain with her significant other and her daughter due to ongoing financial instability, sleep loss, and emotional distress. Stress spikes following Wells Fargo communications contributed to tension within the household.
7. **Holiday-Related Emotional Harm.** Plaintiff experienced significant emotional distress, guilt, and sadness due to having no money available during the Christmas season. Plaintiff was unable to provide normal holiday activities or gifts for her family.
8. **Mental-Health Treatment at LIV Health.** Plaintiff sought mental-health support at LIV Health, a licensed mental-health provider in Wyoming. Plaintiff attended counseling sessions to address anxiety and stress directly related to the events described in this matter.
9. **Medication Intervention for Stress-Related Insomnia.** A mental-health professional at LIV Health advised Plaintiff to take Unisom, an over-the-counter sleep aid, to manage stress-related insomnia. Plaintiff was also advised to use a PRN prescription medication as needed to manage acute stress and sleep disruption.
10. **Stress Related to Possible Mortgage-Data Exposure.** Plaintiff experienced significant stress upon realizing the scammer possessed mortgage-specific personal information, including Plaintiff's SSN and details tied to her mortgage application. The possibility that this information originated from a mortgage-related data exposure contributed to Plaintiff's anxiety and sleep disruption.

## III. Time, Labor, and Administrative Burden

1. **Manual Reconstruction of Financial Records.** After Wells Fargo closed Plaintiff's account, Plaintiff lost online access to all transaction history. Plaintiff was unable to

export data and was forced to manually recreate categories and transactions from a paper copy mailed weeks later.

2. **Administrative Burden Caused by Misclassification.** Wells Fargo repeatedly classified Plaintiff as "receiving benefits once a month," despite Plaintiff receiving weekly contractor payments. This misclassification contributed to delays in updating banking information with the State of Wyoming.
3. **Documentation Burden.** Plaintiff spent extensive time creating a timeline, contradiction matrix, and organizing evidence due to Wells Fargo's inconsistent and incomplete responses.
4. **Sleep Loss Resulting in Additional Administrative Burden.** Plaintiff spent late nights documenting events and responding to Wells Fargo communications due to stress-induced sleep disruption.
5. **Altered DD Waiver Caregiving Activities Due to Lack of Funds.** Plaintiff provides DD Waiver caregiving services, which include community outings and activities for clients. Due to lack of access to funds, Plaintiff was forced to alter or cancel planned outings and activities, requiring additional planning and administrative adjustments.

# IV. Loss of Access to Records

1. **Loss of Online Banking Access After Account Closure.** Plaintiff could not access or export historical data needed for taxes, audits, and income verification.
2. **Missing ATM and Transaction Records.** Wells Fargo failed to provide ATM logs, Electronic Journal (EJ) data, sensor data, or cash-cassette totals for the ⍰,800 deposit.
3. **Incorrect or Irrelevant Privacy-Request Response.** Wells Fargo provided marketing data instead of breach-exposure or access-log information.
4. **Delayed and Misaddressed Fraud-Claim Denials.** Fraud denials were mailed to the wrong address. A denial dated April 17 was mailed more than 10 days after the online closure.

# V. Privacy and Data-Governance Damages

1. **Identity Misuse Confirmed by IRS.** Plaintiff's SSN was used without authorization.
2. **Failure to Provide Required Data.** Wells Fargo did not provide breach-exposure logs, access logs, or internal notes.
3. **Misclassification of Income.** Plaintiff was repeatedly labeled as "receiving benefits," despite being a weekly-paid contractor.

4. **Use of Mortgage-Related Personal Information in the Scam.** The individual who contacted Plaintiff during the fraud event possessed detailed personal information that exists primarily within mortgage-related documentation. Plaintiff had previously submitted a mortgage application to Wells Fargo, and the information used by the scammer aligns with data contained in mortgage files. While Plaintiff cannot independently determine the exact source of the data compromise, the scammer's knowledge is consistent with access to mortgage-related records.

# VI. Retaliation / Bad-Faith Conduct

1. "100+ Complaints Slows Response" Statement.
2. Delays After Escalation.
3. Wrong-Address Mailings.
4. Wrong Denial Reason.
5. Failure to Respond to Law Enforcement.
6. Stress Spikes After Each Determination.

# VII. Spoliation / Evidence-Handling Failures

1. Back-Dated Fraud Claims.
2. Ledger Changes.
3. Missing ATM Logs and EJ Data.
4. Contradictory Statements to Plaintiff and Law Enforcement.
5. Denial of Warrant and Internal Reference Number.
6. Inconsistent CFPB Responses.

# VIII. Regulatory-Risk Indicators

1. OCC reopened the matter.
2. Law-enforcement involvement and non-response.
3. Recordkeeping inconsistencies.
4. ATM-operations failures.
5. Identity-misuse mishandling.
6. Misclassification of income.
7. Mail-handling failures.
8. Contradictory statements across departments.