

JISELLE McKEE, Plaintiff, v. WELLS FARGO BANK, N.A., Defendant.

Case No. 1:26-cv-00146-SWS   PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND MOTION TO STAY PROCEEDINGS Hon. Scott W. Skavdahl United States District Judge Hon. Scott P. Klosterman United States Magistrate Judge

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND MOTION TO STAY PROCEEDINGS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES — iii

INTRODUCTION — 1

CRITICAL PRELIMINARY STATEMENT — 1

SECTION I. LEGAL STANDARD — 2

SECTION II. STATUTORY RIGHT TO EVIDENTIARY HEARING UNDER 9 U.S.C. § 4 — 2

A. Statutory Mandate for Evidentiary Hearing — 2

B. Formation Is Genuinely Disputed Here — 3

SECTION III. NO MUTUAL ASSENT — NO VALID ARBITRATION AGREEMENT — 3

A. Plaintiff Signed Only as Parent and Guardian — 3

B. No Personal Agreement Has Been Produced — 3

C. No Meeting of the Minds — "Jiselle Premier Checking" Was Opened by a Scammer — 4

D. Wells Fargo's Unilateral Account Closure and Reopening — No New Agreement Was Formed   4

**SECTION IV. CONTRACT VOID AB INITIO — FRAUD AND UNAUTHORIZED ACCOUNT OPENINGS** 5

A. The "Jiselle Premier Checking" Account — Opened by a Third-Party Scammer    5

B. Wells Fargo's Documented Institutional History of Fraud    5

C. Fraudulently Induced or Created Contracts Are Void Ab Initio    6

D. Unauthorized Accounts Cannot Bind Plaintiff    6

E. No Agreement Was Signed or Returned After November 26 Account Closure    6

**SECTION V. FAILURE TO IDENTIFY THE CONTROLLING CONTRACT**    7

**SECTION VI. UNCONSCIONABILITY**    7

A. Procedural Unconscionability    7

B. Substantive Unconscionability    8

**SECTION VII. ILLUSORY CONTRACT AND DELEGATION CLAUSE**    8

A. Illusory Contract    8

B. Delegation Clause Independently Void    8

**SECTION VIII. ESTOPPEL, WAIVER, AND RETROACTIVE APPLICATION**    9

A. Judicial Estoppel    9

B. Waiver by Litigation Conduct    9

C. No Retroactive Application    10

**SECTION IX. FAA § 2 SAVINGS CLAUSE, WYOMING LAW, AND PUBLIC POLICY**    10

**SECTION X. PREEMPTIVE REBUTTAL OF ANTICIPATED ARGUMENTS**    10

**SECTION XI. SPOLIATION AND UNAUTHORIZED DATA ACCESS**    11

A. ATM Video Spoliation    11

B. Unauthorized Mortgage Data Access 12

**SECTION XII. CLAIMS FALL OUTSIDE THE SCOPE OF ANY PURPORTED AGREEMENT**
12

A. Tort and Identity Fraud Claims 12

B. Statutory Claims (EFTA, FCRA, GLBA, Wyoming CPA) 12

C. Mortgage Data Access and Privacy Claims 12

D. Guardian-Capacity Signature Cannot Reach Personal Claims or Replacement Accounts
13

**SECTION XIII. DEFENDANT'S MOTION TO STAY PROCEEDINGS MUST**

**INDEPENDENTLY BE DENIED** 13

A. The Stay Is Entirely Derivative — Deny Arbitration, Deny the Stay 13

B. FAA § 3 Stay Is Discretionary, Not Mandatory 13

C. Plaintiff Suffers Ongoing, Irreparable Harm — Balance of Hardships Favors Denial 14

D. Non-Arbitrable Claims Must Proceed in Federal Court Regardless 15

E. A Stay Would Effectively Deny Plaintiff Any Forum 15

F. The Court Must Retain Jurisdiction for Threshold Discovery and Evidentiary Proceedings
16

**CONCLUSION** 17

**CERTIFICATE OF SERVICE** 21

**TABLE OF AUTHORITIES**

**CASES**

*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009) 2

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) 10, 15

*Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83 (2000)     7

*Bensadoun v. Jobe-Riat*, 316 F.3d 171 (2d Cir. 2003)     2

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006)     6, 11

*Clinton v. Jones*, 520 U.S. 681 (1997)     14

*Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681 (1996)     7, 10

*Dumais v. American Golf Corp.*, 299 F.3d 1216 (10th Cir. 2002)     8

*Epic Systems Corp. v. Lewis*, 584 U.S. 497 (2018)     10, 11

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)     2, 9, 15

*Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287 (2010)     2, 3, 9, 16

*Guidotti v. Legal Helpers Debt Resolution*, 716 F.3d 764 (3d Cir. 2013)     2, 12, 14, 16

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019)     9, 11

*Hooters of Am., Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999)     8

*Janiga v. Questar Capital Corp.*, 615 F.3d 735 (7th Cir. 2010)     15

*Klay v. All Defendants*, 389 F.3d 1191 (11th Cir. 2004)     13

*Landis v. North American Co.*, 299 U.S. 248 (1936)     13

*Laster v. AT&T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009)     8

*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022)     9

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983)     15

*New Hampshire v. Maine*, 532 U.S. 742 (2001)     9

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014)     4

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010)     6, 9, 11

*Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002)     3

*Tinder v. Pinkerton Security*, 305 F.3d 728 (7th Cir. 2002)     3, 7

*Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468 (1989)     10

*Zink v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 13 F.3d 330 (10th Cir. 1993) 9, 10

*Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004)     12

**STATUTES**

Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*     *passim*

9 U.S.C. § 2 (savings clause)     2, 10

9 U.S.C. § 3 (stay provision)     13

9 U.S.C. § 4 (evidentiary hearing)     2, 14, 16

Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.*     8, 12

Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*     8, 12

Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 *et seq.*     8, 12

Dodd-Frank Act, 12 U.S.C. § 5481 *et seq.*     10

Wyoming Uniform Arbitration Act, Wyo. Stat. §§ 1-36-101 through 119     13

Wyoming Consumer Protection Act, W.S. § 40-12-101 *et seq.*     8, 10, 12

Fed. R. Civ. P. 37(e)     12, 14

**OTHER AUTHORITIES**

Restatement (Second) of Contracts § 77     8

Restatement (Second) of Contracts § 208     7

Restatement (Second) of Contracts § 292     3

**INTRODUCTION**

Plaintiff Jiselle McKee respectfully opposes both (1) Defendant Wells Fargo Bank, N.A.'s Motion to Compel Arbitration and (2) Defendant's Motion to Stay Proceedings. Either motion independently lacks any legal or factual basis. Plaintiff opposes both on sixteen independent grounds, any single one of which is individually sufficient to deny both motions in their entirety.

## CRITICAL PRELIMINARY STATEMENT

**Plaintiff signed the 2014 account agreement solely as parent and guardian for a minor child — not in any personal capacity whatsoever. This single fact is independently dispositive of the Motion to Compel Arbitration. All arguments that follow are cumulative and additional.**

---

## SECTION I. LEGAL STANDARD

The Court must determine: (1) whether a valid agreement to arbitrate exists; and (2) whether the dispute falls within the scope of that agreement. *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 296 (2010). State contract law governs formation. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009). The burden is on Wells Fargo to prove a valid agreement exists. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). FAA § 2's savings clause preserves all state-law defenses including fraud, lack of assent, unconscionability, and illusoriness. 9 U.S.C. § 2.

## SECTION II. STATUTORY RIGHT TO EVIDENTIARY HEARING UNDER 9 U.S.C. § 4

### A. Statutory Mandate for Evidentiary Hearing

Where formation of an arbitration agreement is in genuine dispute, 9 U.S.C. § 4 mandates that the Court conduct an evidentiary hearing before compelling arbitration. *Guidotti v. Legal Helpers Debt Resolution*, 716 F.3d 764, 776 (3d Cir. 2013). Formation questions are for the Court, not an arbitrator. *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).

## B. Formation Is Genuinely Disputed Here

Formation is genuinely disputed on four independent bases: (1) Plaintiff signed only in a guardian capacity and no personal agreement has been produced; (2) the "Jiselle Premier Checking" account was opened by a third-party scammer, not by Plaintiff; (3) Wells Fargo unilaterally closed and reopened accounts on November 26 without Plaintiff's consent or signature on any new agreement; and (4) Plaintiff never signed, returned, or accepted any replacement account agreement. Discovery must be permitted before any ruling. *Granite Rock*, 561 U.S. at 299–300.

## SECTION III. NO MUTUAL ASSENT — NO VALID ARBITRATION AGREEMENT

### A. Plaintiff Signed Only as Parent and Guardian

The 2014 account agreement was executed by Plaintiff exclusively as parent and guardian for a minor child — not in any personal individual capacity. A representative signature does not personally bind the representative. Restatement (Second) of Contracts § 292. No personal obligation arose from that signature, and no personal agreement to arbitrate was ever formed.

### B. No Personal Agreement Has Been Produced

Wells Fargo has not produced — and cannot produce — any arbitration agreement signed by Plaintiff in her individual personal capacity. The moving party bears the burden of proving

a valid agreement exists. *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 35 (2d Cir. 2002). That burden cannot be met here.

## C. No Meeting of the Minds — "Jiselle Premier Checking" Was Opened by a Scammer

The account labeled "Jiselle Premier Checking" — which Plaintiff discovered appearing at a Wells Fargo ATM — was NOT opened by Wells Fargo acting on Plaintiff's behalf, and was NOT opened by Plaintiff. It was opened by a THIRD-PARTY SCAMMER who used Plaintiff's name and personal identifying information without her knowledge or authorization. Plaintiff never applied for, requested, authorized, or approved this account in any capacity. There was no offer made to Plaintiff, no acceptance by Plaintiff, and no consideration flowing to Plaintiff. No meeting of the minds occurred. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176–77 (9th Cir. 2014). An account created through identity fraud by a scammer is a legal nullity from its inception, and any arbitration clause purportedly associated with it is equally void.

## D. Wells Fargo's Unilateral Account Closure and Reopening — No New Agreement Was Formed

On or around November 26, Wells Fargo unilaterally closed Plaintiff's existing account and opened new replacement accounts in Plaintiff's name — without Plaintiff's affirmative consent to any new account terms. Critically, Plaintiff NEVER signed, returned, or otherwise accepted any new account agreement in connection with those replacement accounts. Wells Fargo cannot bootstrap an arbitration obligation from accounts that: (a) Plaintiff did not request or authorize; (b) were opened unilaterally by Wells Fargo pursuant to its internal fraud-response procedures; and (c) were accompanied by account terms that Plaintiff never signed, returned, or ratified. A party who is involuntarily placed into an account by a bank's

unilateral action, and who never signs or returns the accompanying agreement, has not agreed to arbitrate. The 2014 guardian-capacity signature cannot serve as acceptance of the terms of entirely new accounts opened years later. This is a complete and independent bar to arbitration of any claims arising from or relating to those replacement accounts.

## SECTION IV. CONTRACT VOID AB INITIO — FRAUD AND UNAUTHORIZED ACCOUNT OPENINGS

### A. The "Jiselle Premier Checking" Account — Opened by a Third-Party Scammer

A third-party scammer — not Wells Fargo and not Plaintiff — opened the account labeled "Jiselle Premier Checking" by using Plaintiff's name and personal information without her knowledge or consent. Plaintiff discovered this account when it appeared at a Wells Fargo ATM. The account bore her full legal name and appeared integrated into Wells Fargo's systems, yet it was the product of identity fraud. Wells Fargo then closed Plaintiff's existing account on November 26 and unilaterally opened replacement accounts — again without obtaining Plaintiff's signature or acceptance of any new agreement. These facts establish identity fraud directed at Plaintiff and Wells Fargo's failure to protect Plaintiff's identity and accounts.

### B. Wells Fargo's Documented Institutional History of Fraud

Wells Fargo's pattern of unauthorized account openings is extensively documented:

- In 2016, the CFPB and OCC fined Wells Fargo $185 million for opening approximately 1.5 million unauthorized deposit accounts and 565,000 unauthorized credit cards without customer knowledge or consent.

- In 2020, Wells Fargo entered into a $3 billion deferred prosecution agreement with the U.S. Department of Justice, admitting to a years-long scheme of unauthorized account openings.
- In 2022, the CFPB issued a $3.7 billion consent order — the largest in CFPB history at that time — for continued unauthorized account openings and misuse of consumer financial data.

This documented institutional pattern corroborates Plaintiff's specific claims here.

## C. Fraudulently Induced or Created Contracts Are Void Ab Initio

A contract procured through fraud is void *ab initio*. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 n.1 (2006). Where the fraud goes to the making of the agreement itself — as it does here — validity is a gateway issue for the Court, not the arbitrator. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010). Wells Fargo cannot use an arbitration clause from a scammer-created, fraudulent account to evade judicial scrutiny of that very fraud.

## D. Unauthorized Accounts Cannot Bind Plaintiff

Where an account is opened without a customer's knowledge or consent — whether by a bank employee or a third-party scammer — no valid contract forms. The arbitration clause in any such account is a nullity. A void account created by fraud cannot be ratified by subsequent customer conduct where the customer had no knowledge of the account's existence.

## E. No Agreement Was Signed or Returned After November 26 Account Closure

After Wells Fargo closed Plaintiff's existing account and opened replacement accounts on or around November 26, Plaintiff NEVER signed, executed, returned, or otherwise communicated acceptance of any new account agreement. Under Wyoming contract law,

mutual assent is required to form a binding contract. The mere transmittal of an agreement by Wells Fargo — without Plaintiff's affirmative acceptance — does not form a binding arbitration obligation. Wells Fargo cannot rely on a "continued use" theory for accounts Plaintiff was involuntarily placed into by Wells Fargo's own unilateral action without Plaintiff's knowledge, consent, or signature.

## SECTION V. FAILURE TO IDENTIFY THE CONTROLLING CONTRACT

Wells Fargo has failed to identify which specific contract governs Plaintiff's personal claims in this action. Wells Fargo has not established whether it relies on: (1) the 2014 agreement signed in a guardian capacity only; (2) the agreement for the scammer-opened "Jiselle Premier Checking" account, which is a legal nullity; or (3) the agreement for the replacement accounts opened on November 26, which Plaintiff never signed or returned. This failure to identify the controlling contract is independently fatal to the motion. The moving party must prove by a preponderance of the evidence that a valid, enforceable agreement to arbitrate exists. *Tinder*, 305 F.3d at 735. Wells Fargo has not and cannot meet this burden.

## SECTION VI. UNCONSCIONABILITY

### A. Procedural Unconscionability

The purported agreement is a standardized adhesion contract drafted exclusively by Wells Fargo — one of the largest financial institutions in the world — with no opportunity for Plaintiff to negotiate any terms. The extreme disparity in bargaining power, the take-it-or-leave-it nature of the agreement, and the burial of the arbitration clause in dense boilerplate pages render the agreement procedurally unconscionable. *Doctor's Associates, Inc. v.*

*Casarotto*, 517 U.S. 681, 687 (1996); *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 113 (2000); Restatement (Second) of Contracts § 208.

## B. Substantive Unconscionability

The arbitration terms are one-sided in Wells Fargo's favor: severely curtailed discovery rights, the repeat-player advantage enjoyed by Wells Fargo as a frequent arbitration participant, confidentiality provisions that suppress adverse precedent from public view, shortened limitations periods, and restricted remedies unavailable to Plaintiff in arbitration but available in federal court. *Laster v. AT&T Mobility LLC*, 584 F.3d 849, 855 (9th Cir. 2009); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 940 (4th Cir. 1999). These terms violate the Wyoming Consumer Protection Act, W.S. § 40-12-101 *et seq.*

## SECTION VII. ILLUSORY CONTRACT AND DELEGATION CLAUSE

## A. Illusory Contract

Wells Fargo reserved in its account agreement the unilateral right to amend or modify the agreement at any time, without Plaintiff's consent. A contract that one party may modify at will, without consideration, destroys mutuality and renders the agreement illusory and unenforceable for want of consideration. *Dumais v. American Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002) (binding Tenth Circuit precedent directly controlling this Court); Restatement (Second) of Contracts § 77. This ground alone, under binding Tenth Circuit authority, requires denial of the motion.

## B. Delegation Clause Independently Void

Any purported delegation clause — purporting to send threshold arbitrability questions to an arbitrator — is independently void on five separate grounds: (1) no personal assent to

any delegation clause was ever given by Plaintiff; (2) the underlying agreement is void for fraud; (3) the delegation clause is itself illusory for the same reasons as the underlying agreement; (4) the delegation clause is independently unconscionable; and (5) the delegation clause lacks independent consideration. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. at 944; *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. at 70–72; *Granite Rock*, 561 U.S. at 299–300; *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).

## SECTION VIII. ESTOPPEL, WAIVER, AND RETROACTIVE APPLICATION

### A. Judicial Estoppel

In its 2016 CFPB/OCC consent orders, its 2020 DOJ deferred prosecution agreement, and its 2022 CFPB consent order, Wells Fargo admitted to a pattern of unauthorized account openings and paid nearly $7 billion in penalties and consumer remediation, expressly characterizing affected customers as victims of unauthorized account openings with no valid contractual relationship as to those accounts. Wells Fargo cannot now, in this litigation, invoke arbitration clauses from those same categories of unauthorized accounts as valid and binding against Plaintiff. *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (judicial estoppel applies where a party takes clearly inconsistent positions).

### B. Waiver by Litigation Conduct

Wells Fargo has engaged in litigation conduct in federal court inconsistent with its asserted right to arbitration. Under current Supreme Court precedent, no showing of prejudice is required to establish waiver of the right to arbitrate. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417–18 (2022); *Zink v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 13 F.3d 330, 334 (10th Cir. 1993).

## C. No Retroactive Application

Any ambiguity in the scope of an arbitration clause must be resolved against retroactive application. *Zink*, 13 F.3d at 334. Claims arising from the scammer-opened account, the unilaterally opened replacement accounts for which no agreement was ever signed or returned, and the unauthorized mortgage data access from 2018 forward all predate or arise entirely outside any agreement Plaintiff personally signed in any capacity.

## SECTION IX. FAA § 2 SAVINGS CLAUSE, WYOMING LAW, AND PUBLIC POLICY

FAA § 2's savings clause expressly preserves all state-law contract defenses — including fraud, lack of assent, unconscionability, illusoriness, and unauthorized account creation — as valid grounds to invalidate an arbitration agreement. 9 U.S.C. § 2; *Doctor's Associates v. Casarotto*, 517 U.S. at 687; *Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 478 (1989). The Wyoming Consumer Protection Act, W.S. § 40-12-105, independently prohibits the deceptive trade practices at issue — including unauthorized account openings and unauthorized mortgage data access — and entitles Plaintiff to a jury trial on those claims. The statutory schemes of EFTA, FCRA, GLBA, and the Dodd-Frank Act reflect Congress's express determination that consumers must be protected from precisely the unauthorized account and data access conduct alleged here. *Epic Systems Corp. v. Lewis*, 584 U.S. 497, 520 (2018).

## SECTION X. PREEMPTIVE REBUTTAL OF ANTICIPATED ARGUMENTS

Wells Fargo will predictably cite the following authorities. Each is inapplicable:

***AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011):** *Concepcion* assumed a valid, bilaterally agreed-upon arbitration agreement. It has no application where, as here, the threshold formation question has not been met — no valid personal agreement was formed.

***Epic Systems Corp. v. Lewis*, 584 U.S. 497 (2018):** *Epic Systems* addressed a narrow employment law question under the NLRA. It has no application to Plaintiff's consumer banking claims under EFTA, FCRA, GLBA, and the Wyoming Consumer Protection Act.

***Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019):** *Henry Schein* presupposes a valid delegation clause and a valid underlying agreement. *Granite Rock*, 561 U.S. at 299–300, expressly reserves all threshold formation questions for the Court. Where formation is disputed, the *Henry Schein* rule does not apply.

***Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010):** *Rent-A-Center* cuts against Wells Fargo. It requires independent assent, consideration, and conscionability for any delegation clause — none of which exists here.

***Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006):** *Buckeye* expressly distinguished void contracts (not severable, validity for the Court) from merely voidable contracts (severable). The agreements at issue here are void from inception, bringing this case squarely within *Buckeye*'s carve-out, not its general rule.

## SECTION XI. ATM RECORDS SPOLIATION AND UNAUTHORIZED DATA ACCESS

### A. ATM Records Spoliation

The evidence produced to Detective Young under a judge signed search warrant demonstrates significant spoliation of ATM records, including incomplete transaction logs, a truncated or altered transactions.DAT file, missing reconciliation reports, absent

accounting data, and the lack of any verifiable chain-of-custody documentation. These omissions prevent authentication of the ATM system data and undermine the integrity of the evidence.

Despite repeated requests, the detective repeatedly asserted that he had "only obtained the video," yet ATM video alone is not sufficient evidence. Proper authentication requires the accompanying machine-level records that validate timestamps, confirm transaction sequences, and establish the source and integrity of the footage. The failure to produce these required records constitutes ATM records spoliation.

.

The incomplete transactions.DAT file further raises concerns of unauthorized access, improper extraction, or selective omission. ATM systems generate multiple redundant logs — including switch logs, host processor logs, and settlement records — none of which were produced. The absence of these mandatory records indicates either:

- Unauthorized access to the ATM system,
- Improper handling of digital evidence, or
- Intentional or negligent destruction of required ATM data.

Without the accounting records, reconciliation logs, metadata, and chain-of-custody documentation, the ATM video cannot be authenticated, and the ATM records cannot be verified. This constitutes material spoliation of evidence and violates standard digital-evidence handling protocols.

## B. Unauthorized Mortgage Data Access

From 2018 to the present, persons or entities unknown to Plaintiff have accessed Plaintiff's mortgage data without her knowledge, authorization, or consent. Without full disclosure — through court-supervised discovery — of who accessed Plaintiff's mortgage data, on what legal basis, and whether proper statutory disclosures were made, Plaintiff cannot assess the full scope of threshold formation and arbitrability questions. Discovery on this subject is required before any arbitration order may issue. *Guidotti*, 716 F.3d at 776.

## SECTION XII. CLAIMS FALL OUTSIDE THE SCOPE OF ANY PURPORTED AGREEMENT

### A. Tort and Identity Fraud Claims

Claims arising from the scammer-opened "Jiselle Premier Checking" account — including fraud, conversion, identity misappropriation, and negligence — sound in tort, not contract. They do not arise from any deposit-account agreement and fall entirely outside the scope of any deposit-account arbitration clause.

### B. Statutory Claims (EFTA, FCRA, GLBA, Wyoming CPA)

Plaintiff's EFTA, FCRA, GLBA, and Wyoming Consumer Protection Act claims arise from independent federal and state legislative duties that are not derived from any deposit-account contract. These claims exist by operation of statute, not by virtue of any contractual

relationship, and may not be compelled to arbitration under a contract Plaintiff never personally signed.

## C. Mortgage Data Access and Privacy Claims

Claims arising from unauthorized access to Plaintiff's mortgage data arise under separate federal privacy and mortgage-servicing statutes entirely distinct from any deposit-account arbitration clause. No deposit-account arbitration agreement can reach claims arising under mortgage-servicing law and federal data privacy obligations.

## D. Guardian-Capacity Signature Cannot Reach Personal Claims or Replacement Accounts

The 2014 guardian-capacity signature cannot, as a matter of law, reach Plaintiff's personal claims, personal finances, personal credit records, personal statutory rights, or claims from the replacement accounts opened on November 26 for which Plaintiff never signed or returned any agreement. The scope of any guardian-capacity agreement is strictly limited to the minor child's account matters at issue at that time in 2014.

## SECTION XIII. DEFENDANT'S MOTION TO STAY PROCEEDINGS MUST INDEPENDENTLY BE DENIED

### A. The Stay Is Entirely Derivative — Deny Arbitration, Deny the Stay

Wells Fargo's Motion to Stay under FAA § 3, 9 U.S.C. § 3, and Wyo. Stat. § 1-36-103 is wholly derivative of and entirely dependent upon the existence of a valid, enforceable written arbitration agreement. FAA § 3 authorizes a stay only where the suit is "referable to arbitration under an agreement in writing." 9 U.S.C. § 3. Where — as here — no valid written arbitration agreement was formed, no stay is legally authorized. *Klay v. All Defendants*, 389

F.3d 1191, 1203–04 (11th Cir. 2004). For each of the fifteen independent reasons set forth in Sections I through XII above, no valid personal arbitration agreement exists between Plaintiff and Wells Fargo. The Motion to Stay therefore fails on each of those same fifteen grounds and must be denied in the same order and for the same reasons as the Motion to Compel Arbitration.

**B. FAA § 3's Stay Provision Is Discretionary, Not Mandatory**

Even if this Court were to find any residual ambiguity on the formation question — which Plaintiff disputes — a stay of all proceedings is not an automatic, ministerial command. District courts retain inherent authority over the management of their own dockets. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). *Clinton v. Jones*, 520 U.S. 681, 706 (1997). Where the formation of the underlying arbitration agreement is genuinely in dispute — as it is here on at least four independent grounds — a stay pending arbitration would be premature and improper before the Court first conducts the evidentiary hearing mandated by 9 U.S.C. § 4. *Guidotti v. Legal Helpers Debt Resolution*, 716 F.3d 764, 776 (3d Cir. 2013). To stay all proceedings before resolving the threshold formation question would invert the proper judicial sequence and effectively prejudge the very gateway issue the Court is required to decide.

**C. Plaintiff Suffers Ongoing, Irreparable Harm — The Balance of Hardships Decisively Favors Denial**

A stay would inflict concrete, ongoing, and irreparable harm on Plaintiff across five dimensions, while Wells Fargo suffers no comparable hardship from litigating in federal court.

**(1) Compounding Credit Damage.** Unauthorized accounts and disputed transactions associated with the scammer-opened "Jiselle Premier Checking" account and the unilaterally opened replacement accounts continue to damage Plaintiff's credit standing with each passing reporting cycle. A stay delays any judicial remedy for this ongoing, quantifiable harm. Credit damage compounds — every additional month of a stay is a month of further injury that cannot be fully remediated retroactively.

**(2) Continued Exposure from Unauthorized Replacement Accounts.** The replacement accounts opened by Wells Fargo on or around November 26 without Plaintiff's affirmative consent remain open and active. Plaintiff never signed or returned any agreement for those accounts. A stay leaves Plaintiff with no judicial oversight, no mechanism to compel proper account disposition, and no recourse if further unauthorized activity occurs during the pendency of any stay.

**(3) Escalating Spoliation Risk.** Wells Fargo has already failed to preserve the critical ATM video footage. The longer this case is stayed, the greater the risk that additional evidence — internal transaction logs, account-opening records and authorization documentation for the scammer-opened account, and records of the November 26 account closure and reopening — will be lost, destroyed, or overwritten pursuant to Wells Fargo's routine document retention and destruction policies. This Court must retain jurisdiction to enforce litigation hold obligations, supervise preservation, and impose sanctions under Fed. R. Civ. P. 37(e). A private arbitrator lacks the Court's inherent sanctioning authority. A stay directly impairs the Court's ability to protect Plaintiff's evidentiary rights.

**(4) Deprivation of Express Statutory Remedies.** Plaintiff's EFTA, FCRA, GLBA, and Wyoming Consumer Protection Act claims carry express remedies — actual damages, statutory damages, attorneys' fees, and punitive relief — designed to be promptly vindicated. Congress enacted these statutes with remedial urgency precisely because financial-institution misconduct causes ongoing harm that compounds with each passing day it goes unremediated. An indefinite stay frustrates the remedial purpose of all four statutory regimes and effectively nullifies Plaintiff's express legislative rights.

**(5) Wells Fargo Suffers No Comparable Hardship.** Wells Fargo Bank, N.A. is among the largest financial institutions in the United States. It has extensive litigation infrastructure and thousands of attorneys. Any inconvenience from litigating in federal court is the direct and foreseeable consequence of its own alleged unauthorized conduct. Self-inflicted litigation inconvenience is not a cognizable basis for equitable relief. The balance of hardships weighs decisively in Plaintiff's favor.

### D. Non-Arbitrable Claims Must Proceed in Federal Court Regardless

Even if this Court were to find — contrary to Plaintiff's position — that some subset of claims is potentially arbitrable, a blanket stay of all proceedings would still be improper as to the non-arbitrable claims. The Supreme Court has held that where a case contains both arbitrable and non-arbitrable claims, the district court retains jurisdiction over the non-arbitrable claims and cannot stay them indefinitely. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 20–21 (1983); *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010). The following claims fall entirely outside any purported arbitration agreement and must proceed in federal court regardless: (1) tort claims arising from the scammer-opened account; (2) EFTA and FCRA statutory claims arising from

independent federal legislative duties; (3) mortgage data access and privacy claims under separate federal statutory frameworks; and (4) the spoliation sanctions claim, which is an inherent judicial function that cannot be delegated to a private arbitral forum.

## E. A Stay Would Effectively Deny Plaintiff Any Forum

Given the multiple independent grounds on which any purported arbitration clause is void or unenforceable, simultaneously compelling arbitration and staying this federal court action would strip Plaintiff of any forum in which to vindicate her rights. The FAA was never intended to leave consumers without any avenue of redress; it was designed to enforce legitimate, bilateral, freely-negotiated agreements to arbitrate. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Where no bilateral agreement was ever formed — because a scammer opened the account, because replacement accounts were unilaterally opened without Plaintiff ever signing or returning any agreement, and because the only prior signature was in a guardian capacity only — there is no arbitration that can lawfully occur. Staying this action to compel a proceeding that has no legal basis to exist serves no legitimate statutory purpose. It would operate solely to perpetuate ongoing harm to Plaintiff while insulating Wells Fargo from judicial accountability. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

## F. The Court Must Retain Jurisdiction for Threshold Discovery and Evidentiary Proceedings

Before any stay may properly be considered, the Court must first discharge its mandatory obligation under 9 U.S.C. § 4 to conduct an evidentiary hearing on whether any valid arbitration agreement was formed between Plaintiff personally and Wells Fargo. *Guidotti*, 716 F.3d at 776. This is a gateway issue reserved for the Court. *Granite Rock Co. v. Int'l*

*Brotherhood of Teamsters*, 561 U.S. 287, 299–300 (2010). The Court must also supervise limited discovery on:

1. The full origin and account-opening documentation for the "Jiselle Premier Checking" account, including identification of the third-party scammer and all Wells Fargo internal records reflecting how the account came to exist in Plaintiff's name;

2. The complete circumstances of the November 26 account closure and reopening and whether any new account agreement was properly transmitted to and accepted by Plaintiff — Plaintiff's position being that no such agreement was ever signed or returned;

3. The identity of every person or entity that accessed Plaintiff's mortgage data from 2018 to present and the legal basis for each such access; and

4. The chain of custody and full disposition of the ATM video footage Wells Fargo identified as the critical evidence to resolve Plaintiff's disputed deposit.

A stay is structurally incompatible with the Court's obligation to resolve these mandatory threshold issues. Granting a stay at this juncture would allow Wells Fargo to bypass the very evidentiary process that Congress mandated and the Supreme Court has confirmed as a prerequisite to any lawful arbitration referral.

**CONCLUSION**

For the foregoing reasons, Plaintiff Jiselle McKee respectfully requests that this Court:

(1) **DENY** Defendant Wells Fargo Bank, N.A.'s Motion to Compel Arbitration in its entirety; and

(2) **DENY** Defendant Wells Fargo Bank, N.A.'s Motion to Stay Proceedings in its entirety.

In the alternative, Plaintiff requests that this Court order limited discovery on threshold arbitration issues — including full disclosure of all facts surrounding the scammer-opened

"Jiselle Premier Checking" account, the November 26 account closure and reopening, all access to Plaintiff's mortgage data from 2018 to present, and the ATM video footage — before issuing any ruling.

Denial is required on the following sixteen independent grounds, any single one of which is individually sufficient:

5. Plaintiff signed the 2014 account agreement solely as parent and guardian for a minor child — not in any personal capacity. No personal arbitration obligation arose. This ground alone is dispositive.

6. No valid personal agreement to arbitrate was ever formed. Wells Fargo has not produced and cannot produce any such agreement.

7. The "Jiselle Premier Checking" account was opened by a third-party scammer using Plaintiff's identity without her knowledge or consent. The account and any arbitration clause associated with it are void *ab initio.*

8. Wells Fargo unilaterally closed Plaintiff's existing account and opened replacement accounts on or around November 26. Plaintiff never signed, returned, or accepted any agreement for those replacement accounts. No arbitration obligation arising from those accounts was ever formed.

9. Wells Fargo has failed to identify the controlling contract and cannot meet its burden of proving which specific agreement governs Plaintiff's personal claims.

10. The purported agreement is procedurally unconscionable — adhesion contract, extreme bargaining disparity, arbitration clause buried in boilerplate.

11. The purported agreement is substantively unconscionable — one-sided terms, repeat-player advantages, confidentiality suppressing adverse precedent, restricted remedies.

12. The purported agreement is illusory — Wells Fargo reserved the unilateral right to modify it at any time. *Dumais v. American Golf Corp.*, 299 F.3d 1216 (10th Cir. 2002) is binding Tenth Circuit precedent.

13. Any delegation clause is independently void on five grounds: no personal assent; void for fraud; illusory; independently unconscionable; no independent consideration.

14. Judicial estoppel bars Wells Fargo from invoking as valid the same categories of unauthorized accounts it characterized as illegitimate before the CFPB, OCC, and DOJ, paying nearly $7 billion in penalties and remediation.

15. Wells Fargo waived its right to arbitration through inconsistent litigation conduct. *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022).

16. Retroactive application of any arbitration clause to claims from the scammer-opened account, the replacement accounts, and mortgage data access is improper under *Zink v. Merrill Lynch*, 13 F.3d 330 (10th Cir. 1993).

17. Plaintiff's claims fall outside the scope of any purported arbitration agreement on four independent grounds: tort/identity fraud claims; EFTA/FCRA/GLBA/Wyoming CPA statutory claims; mortgage data claims; and the 2014 guardian-capacity signature's inability to reach personal claims or claims from the replacement accounts.

18. FAA § 2's savings clause and the Wyoming Consumer Protection Act independently preserve Plaintiff's right to judicial process and jury trial.

19. Spoliation of the ATM video evidence requires this Court to retain jurisdiction for sanctions proceedings. A private arbitrator lacks this Court's inherent sanctioning authority.

20. The Motion to Stay Proceedings must be separately and independently denied: (a) it is entirely derivative of the Motion to Compel and fails on the same fifteen grounds; (b) Plaintiff suffers ongoing irreparable harm from a stay, including compounding credit damage, continued unauthorized account exposure, escalating spoliation risk,

and deprivation of express statutory remedies; (c) non-arbitrable claims — including the scammer-account tort claims, statutory claims, mortgage data claims, and the spoliation sanctions claim — must proceed in federal court regardless under *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983); (d) a stay would effectively deny Plaintiff any forum in the absence of any lawfully formed arbitration agreement; and (e) the Court must retain jurisdiction for the mandatory 9 U.S.C. § 4 evidentiary hearing and threshold formation discovery before any stay may be considered under *Guidotti v. Legal Helpers Debt Resolution*, 716 F.3d 764 (3d Cir. 2013).

**WHEREFORE, Plaintiff Jiselle McKee respectfully requests that this Court DENY Defendant Wells Fargo Bank, N.A.'s Motion to Compel Arbitration in its entirety.**

**WHEREFORE, Plaintiff Jiselle McKee further and separately requests that this Court DENY Defendant Wells Fargo Bank, N.A.'s Motion to Stay Proceedings in its entirety, on all grounds stated in Section XIII above and on each of the fifteen grounds stated in Sections I through XII above.**

Respectfully submitted,

*Jiselle McKee*

**Jiselle McKee**

Plaintiff *Pro Se*

7052 Rilley Road

Cheyenne, WY 82009

Jiselle.cash@csuglobal.edu

Dated: June 12, 2026

**CERTIFICATE OF SERVICE**

I, Jiselle McKee, hereby certify that on June 12, 2026, a true and correct copy of Plaintiff's Opposition to Defendant's Motion to Compel Arbitration and Motion to Stay Proceedings was served upon all counsel of record via the Court's Electronic Case Filing (ECF) system by the Clerk.

*Jiselle McKee*

**Jiselle McKee**

Plaintiff *Pro Se*

Dated: June 12, 2026