Chad S. Caby (Wyo. Bar No. 7-5457)
**WOMBLE BOND DICKINSON (US) LLP**
1601 19th Street, Suite 1000
Denver, CO   80202
Tel:  (303) 623-9000
Fax:  (303) 623-9222
Chad.Caby@wbd-us.com

*Attorneys for Wells Fargo Bank, N.A.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| JISELLE MCKEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 1:26-cv-00146-SWS |
| | ) | |
| WELLS FARGO BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## WELLS FARGO'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Plaintiff's shotgun opposition brief (DE 15, "Opposition Brief") includes 32 independent arguments, almost none of which cite to applicable law.[1]  Critically, however, she admits the key fact - she signed the arbitration agreement.  Plaintiff's opposition fails because:

1.      She is bound by the arbitration agreement she signed in 2014, regardless of whether she opened the account on behalf of a minor;

2.      The arbitration agreement is enforceable and covers all disputes between Plaintiff and Wells Fargo;

---

[1] *See* **Exhibit B**. Wyoming Federal District Court Local Rule 7.1(c) provides that briefs in opposition to non-dispositive motions are limited to a maximum of ten pages. D.C.Wy.L.R. 7.1(c). Plaintiff's Opposition is 27 pages long. As a result, Wells Fargo cannot respond to each of Plaintiff's arguments individually and instead focuses this Reply on her major themes.

1

3.      This case must be stayed pursuant to *Smith v. Spizzirri*, 601 U.S. 472 (2024); and

4.      The Opposition Brief is rife with misleading citations.

## **REPLY**

**1.      Plaintiff is bound by the arbitration agreement.**

Plaintiff admits she "signed the 2014 account agreement" (Opposition at 6) but argues "[t]he 2014 account agreement was executed by Plaintiff exclusively as parent and guardian for a minor child – not in any personal individual capacity." (Opposition at 7). She is wrong.

In support of her position, Plaintiff cites only one source - the Restatement (Second) of Contracts § 292. The section of the Restatement is titled "Effect of Judgment for or Against Co-promisors." It has never been adopted as Wyoming law, but more importantly, it has no bearing on Plaintiff's argument. Plaintiff's position is legally unsupported.

In addition to being legally unsupported, Plaintiff's position is factually unsupported. The 2014 Account Application, attached as Exhibit A-1 to the Motion to Compel Arbitration, was executed by Plaintiff as a "customer" of Wells Fargo:

Customer 2 Name
JISELLE Y CASH

Customer 2 Signature
☐ Submit manually
☐ Signature not required

Date:
07/30/2014

The account in question was opened on behalf of a minor, but Plaintiff agreed to the terms of the arbitration agreement individually, in her role as a customer. When she signed the Account Application, Plaintiff personally agreed to the following:

> **I have received a copy of the applicable account agreement and the privacy policy (each may be amended from time to time) and agree to be bound by their terms.** I also agree to the terms of the dispute resolution program described in the foregoing agreements. **Under the dispute resolution program, our disputes will be decided before one or more neutral persons in an arbitration**

**proceeding and not by a jury trial or a trial before a judge.**

Exhibit A-1, Account Application at 3 (emphasis in original).

And even if she had not personally agreed to the terms of the Account Agreement (and she did agree), the Account Agreement clarifies that any "authorized signer" on the account is bound by its terms. It states: "'You' and 'your' means each account owner, *authorized signer*, or any other person authorized to operate your account." Ex. A-3, Account Agreement at 2 (emphasis added). Plaintiff admits she was an authorized signer on the account.

Among the 24 causes of action in the Amended Complaint, Plaintiff includes a claim for Breach of Contract. It states: "Wells Fargo entered into a contractual relationship with Plaintiff governing deposit handling, recordkeeping, and fraud investigation." Am. Compl. at 18. The referenced contract is the Deposit Account Agreement, and the Deposit Account Agreement includes the arbitration provision which Wells Fargo now seeks to enforce. Plaintiff's claim that she is not bound by the Deposit Account Agreement is directly contradicted by her own pleading, and she is therefore estopped from claiming she is not bound by the agreement. *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 708 (10th Cir. 2011).

Plaintiff cannot have it both ways. She signed the Account Application and is bound by the arbitration provision in the Deposit Account Agreement. *Cenex, Inc. v. Arrow Gas Serv.*, 896 F. Supp. 1574, 1580 (D. Wyo. 1995) ("Once a person signs a document, the terms of the contract control; he or she cannot avoid its effect by asserting that his or her understanding was contrary to the terms, or that he or she believed it was different in its terms.").

**2.      The arbitration agreement is enforceable and covers Plaintiff's disputes.**

Plaintiff argues abstractly that her many causes of action are not covered by the arbitration agreement. But Plaintiff agreed to arbitrate any "dispute" with Wells Fargo (other than small

claims). *See* Exhibit A-1, Account Application at 3 ("our disputes will be decided before one or more neutral persons in an arbitration proceeding"). And "dispute" is a defined term under the Account Agreement:

> A 'dispute' is any unresolved disagreement between you and the Bank. It includes any disagreement relating in any way to services, accounts or matters; to your use of any of the Bank's banking locations or facilities; or to any means you may use to access your account(s). It includes claims based on broken promises or contracts, torts, or other wrongful actions. It also includes statutory, common law, and equitable claims.

Ex. A-2, Account Agreement at 4. All her claims fall under this definition of "dispute."

Plaintiff also claims the arbitration agreement is unconscionable based on the alleged "disparity in bargaining power, the take-it-or-leave-it nature of the agreement, and the burial of the arbitration clause in dense boilerplate pages." But Wyoming law "do[es] not lightly interfere with the freedom of contract," *Kindred Healthcare Operating, Inc. v. Boyd*, 2017 WY 122, ¶ 30, 403 P.3d 1014, 1022 (Wyo. 2017), and here, Plaintiff presents no evidence that she is "underprivileged, uneducated, illiterate, or easily taken advantage of." *Id*. To the contrary, her pleadings in this litigation suggest the opposite.

District Courts around the country have consistently ruled that Wells Fargo's Deposit Account Agreement is enforceable and not unconscionable. *See, e.g. A-1 Am. Fence, Inc. v. Wells Fargo Bank, N.A.*, No. 1:20-CV-441, 2021 WL 7184975, at *10 (E.D. Tex. July 14, 2021) ("the court finds that the arbitration agreement is not unconscionable and is enforceable"); *Bam Navigation, LLC v. Wells Fargo & Co.*, No. 20-CV-1345 (NEB/ECW), 2021 WL 533692, at *5 (D. Minn. Feb. 12, 2021) (Plaintiff "assented to the agreement to arbitrate . . . and the agreement is not unconscionable."). Here, as a matter of law, the arbitration agreement is enforceable and covers all Plaintiff's disputes with Wells Fargo.

4

**3.      The District Court litigation must be stayed pending arbitration.**

Plaintiff asserts the issuance of a stay "is discretionary, not mandatory." Again, she is wrong. The U.S. Supreme Court addressed this issue directly in *Smith v. Spizzirri*, 601 U.S. 472, 144 S. Ct. 1173, 218 L. Ed. 2d 494 (2024), and held: "when a federal court finds that a dispute is subject to arbitration and a party has requested a stay of the court proceeding pending arbitration, the FAA compels the court to stay the proceeding."

**4.      The Opposition Brief consistently misstates the law.**

The Opposition Brief does not appear to include entirely hallucinated cases, but throughout the brief misstates holdings and provides incorrect pin cites in violation of Rule 11. *See e.g. Ferris v. Amazon.com Servs., LLC*, 778 F. Supp. 3d 879, 881 (N.D. Miss. 2025) ("Mr. Ferris violated Rule 11 by submitting false citations to the Court."). Counsel for Wells Fargo prepared a chart, attached as **Exhibit B**, documenting Plaintiff's misinterpretations of cited cases. All misstatements of the law should be disregarded.

**<u>CONCLUSION</u>**

For the foregoing reasons, the reasons stated in Wells Fargo's Motion to Compel Arbitration and Stay Proceedings, and any other reasons deemed applicable by the Court, Wells Fargo respectfully prays that this Court compel McKee to submit the claims asserted in this action to arbitration and stay further proceedings in this action pending the resolution of arbitration. Further, Wells Fargo reserves its right to seek fees and costs accrued in briefing the Motion to Compel Arbitration and Stay Proceedings, as permitted by the Deposit Account Agreement.

Submitted this 22nd day of June, 2026.

WOMBLE BOND DICKINSON US LLP

/s/ Chad S. Caby
Chad S. Caby
(Wyo. Bar No. 7-5457)
1601 19th St., Suite 1000
Denver, CO  80202
Telephone: 303-628-9583
Email:  chad.caby@wbd-us.com

*Attorneys for Wells Fargo Bank, N.A.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on June 22, 2026, the foregoing **WELLS FARGO'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** was electronically filed via CM/ECF and placed in the U.S. Mail, postage prepaid and address to the following:

Jiselle McKee
7052 Rilley Road
Cheyenne, WY 82009

*s/ Chad S. Caby*
Of Womble Bond Dickinson (US) LLP

# EXHIBIT B

| EXHIBIT B | | | |
|---|---|---|---|
| **Citation of Authority** | **Location in Plaintiff's Response** | **Plaintiff's Proposition** | **Concern** |
| *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) | 10, 15 | Page 22: "The FAA was never intended to leave consumers without any avenue of redress; it was designed to enforce legitimate, bilateral, freely-negotiated agreements to arbitrate." | Page 22: Plaintiff's proposition is not supported in the pincited page. The purpose of the FAA is to place arbitration agreements on equal footing with other contracts. *Concepcion*, 563 U.S. at 339. |
| *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83 (2000) | 7 | Page 12: "The extreme disparity in bargaining power, the take-it-or-leave-it nature of the agreement, and the burial of the arbitration clause in dense boilerplate pages render the agreement procedurally unconscionable" | Page 12: This is an out-of-jurisdiction case applying California law. Further, the pincited page in the decision does not support this statement. This page addresses contracts of adhesion, which may be unenforceable. However, it does not discuss the elements Plaintiff claims are indications of unconscionability. |
| *Bensadoun v. Jobe-Riat*, 316 F.3d 171 (2d Cir. 2003) | 2 | Page 7: "Formation questions are for the Court, not an arbitrator." | Page 7: First, this is an out-of-jurisdiction case. This proposition is supported with the |

| | | | caveat Plaintiff omits: "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Bensadoun*, 316 F.3d at 175 (internal quotations omitted). |
|---|---|---|---|
| *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) | 6, 11 | Page 10: "A contract procured through fraud is void *ab initio*." | Page 10: This decision applied Florida law regarding fraud and void contracts. The pincited footnote in the decision does not support this statement. The decision does support the proposition that contracts procured through fraud are void or voidable under Florida law. *See Buckeye*, 546 U.S. at 446. |
| *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681 (1996) | 7, 10 | Page 11–12: "The extreme disparity in bargaining power, the take-it-or-leave-it nature of the agreement, and the burial of the arbitration clause in dense boilerplate pages render the agreement procedurally unconscionable." | Page 11–12: The pincited page in the decision does not support this statement. The pincited page addresses unconscionability as a defense to arbitration |

| | | | provisions but does not outline or identify contractual elements deemed unconscionable. |
|---|---|---|---|
| | | Page 14: "FAA § 2's savings clause expressly preserves all state-law contract defenses – including fraud, lack of assent, unconscionability, illusoriness, and unauthorized account creation - as valid grounds to invalidate an arbitration agreement." | Page 14: Specifically, this decision says, "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Associates*, 517 U.S. at 687. |
| *Epic Systems Corp. v. Lewis*, 584 U.S. 497 (2018) | 10, 11 | Page 14: "The statutory schemes of EFTA, FCRA, GLBA, and the Dodd-Frank Act reflect Congress's express determination that consumers must be protected from precisely the unauthorized account and data access conduct alleged here." | Page 14: The pincited page does not address any of the Acts in Plaintiff's proposition, nor does it discuss Congress's intent to protect consumers from the alleged claims against Wells Fargo. |
| *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004) | 2, 9, 15 | This case is in Plaintiff's table of authorities but was not cited in the Response. | |
| *First Options of Chicago, Inc. v.* | 2, 3, 9, 16 | Page 6: The burden is on Wells Fargo to prove a valid | Page 6: The page cited in this decision |

| | | | |
|---|---|---|---|
| *Kaplan*, 514 U.S. 938 (1995) | | agreement exists. | does not support the Plaintiff's proposition. |
| | | Page 13: "Any purported delegation clause - purporting to send threshold arbitrability questions to an arbitrator - is independently void on five separate grounds: (1) no personal assent to any delegation clause was ever given by Plaintiff; (2) the underlying agreement is void for fraud; (3) the delegation clause is itself illusory for the same reasons as the underlying agreement; ( 4) the delegation clause is independently unconscionable; and (5) the delegation clause lacks independent consideration." | Page 13: The pincited page does not support the Plaintiff's proposition. Rather, this decision does allow agreements to arbitrate arbitrability to be enforced when the parties intended such. |
| | | Page 22: "Staying this action to compel a proceeding that has no legal basis to exist serves no legitimate statutory purpose. It would operate solely to perpetuate ongoing harm to Plaintiff while insulating Wells Fargo from judicial accountability." | Page 22: The pincited page does not support Plaintiff's proposition, as the page discusses agreements to arbitrate arbitrability. |
| *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287 (2010) | 2, 12, 14, 16 | Page 7: "Discovery must be permitted before any ruling." | Page 7: The pincited pages in the decision do not support this statement. |

| | | Page 13: "Any purported delegation clause - purporting to send threshold arbitrability questions to an arbitrator - is independently void on five separate grounds: (1) no personal assent to any delegation clause was ever given by Plaintiff; (2) the underlying agreement is void for fraud; (3) the delegation clause is itself illusory for the same reasons as the underlying agreement; ( 4) the delegation clause is independently unconscionable; and (5) the delegation clause lacks independent consideration." | Page 13: This case did not concern agreements to arbitrate arbitrability. *See Granite Rock*, 561 U.S. at 297 n.5. |
|---|---|---|---|
| *Guidotti v. Legal Helpers Debt Resolution*, 716 F.3d 764 (3d Cir. 2013) | 9, 11 | Page 17: "Without full disclosure - through court-supervised discovery - of who accessed Plaintiffs mortgage data, on what legal basis, and whether proper statutory disclosures were made, Plaintiff cannot assess the full scope of threshold formation and arbitrability questions. Discovery on this subject is required before any arbitration order may issue." | Page 17: First, this is an out-of-jurisdiction case. Furthermore, the pincited page allows discovery on the arbitration clause only if the complaint and its supporting documents are unclear regarding the agreement to arbitrate. |
| | | Page 19: "Where the formation of the underlying arbitration agreement is genuinely in dispute - as it is here on at least four independent | Page 19: This is a mischaracterization of this decision. The court stated that "limited" discovery |

| | | | |
|---|---|---|---|
| | | grounds - a stay pending arbitration would be premature and improper before the Court first conducts the evidentiary hearing mandated by 9 U.S.C. § 4." | may be allowed, if "plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue." Then, if summary judgment is not warranted, because of a "genuine dispute as to the enforceability of the arbitration clause," the "court *may* then proceed" to trial of the arbitrability of the claims under Section 4 of the FAA. *Guidotti,* 716 F.3d at 776 (emphasis added). |
| | | Page 22: "Before any stay may properly be considered, the Court must first discharge its mandatory obligation under 9 U.S.C. § 4 to conduct an evidentiary hearing on whether any valid arbitration agreement was formed between Plaintiff personally and Wells Fargo." | Page 22: This is a mischaracterization of this decision. The court stated that "limited" discovery may be allowed, if "plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue." Then, if summary judgment is not warranted, because |

| | | | of a "genuine dispute as to the enforceability of the arbitration clause," the "court **may** then proceed" to trial of the arbitrability of the claims under Section 4 of the FAA. *Guidotti,* 716 F.3d at 776 (emphasis added). |
| --- | --- | --- | --- |
| | | Page 26: "(e) the Court must retain jurisdiction for the mandatory 9 U.S.C. § 4 evidentiary hearing and threshold formation discovery before any stay may be considered under *Guidotti v. Legal Helpers Debt Resolution*, 716 F.3d 764 (3d Cir. 2013)." | Page 26: This decision does not support Plaintiff's proposition. |
| *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019) | 8 | Page 13: "Any purported delegation clause - purporting to send threshold arbitrability questions to an arbitrator - is independently void on five separate grounds: (1) no personal assent to any delegation clause was ever given by Plaintiff; (2) the underlying agreement is void for fraud; (3) the delegation clause is itself illusory for the same reasons as the underlying agreement; ( 4) the delegation clause is independently unconscionable; and (5) the | Page 13: To the contrary, this page within the decision says, "Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein*, 586 U.S. at |

| | | delegation clause lacks independent consideration." | 69. |
|---|---|---|---|
| *Janiga v. Questar Capital Corp.*, 615 F.3d 735 (7th Cir. 2010) | 15 | Page 21: "The Supreme Court has held that where a case contains both arbitrable and non-arbitrable claims, the district court retains jurisdiction over the nonarbitrable claims and cannot stay them indefinitely." | Page 21: First, this is an out-of-jurisdiction decision. Further, Plaintiff's proposition is not supported by the pincited pages in the decision. The pincited pages discuss the threshold question of whether a contract existed. |
| *Laster v. AT&T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009) | 8 | Page 12: "The arbitration terms are one-sided in Wells Fargo's favor: severely curtailed discovery rights, the repeat-player advantage enjoyed by Wells Fargo as a frequent arbitration participant, confidentiality provisions that suppress adverse precedent from public view, shortened limitations periods, and restricted remedies unavailable to Plaintiff in arbitration but available in federal court." | Page 12: First, this is an out-of-jurisdiction case. Further, the pincited page in the decision does not support this statement. This page does not contemplate any advantage given to one party once in arbitration. |
| *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022) | 9 | Page 25: "Wells Fargo waived its right to arbitration through inconsistent litigation conduct." | Page 25: This case discusses waiver, but the situation is factually distinct, and this case is inapplicable. |
| *Hooters of Am., Inc. v. Phillips*, 173 F.3d | 15 | Page 12: "The arbitration terms are one-sided in Wells | Page 12: First, this is an out-of- |

| | | | |
|---|---|---|---|
| 933 (4th Cir. 1999) | | Fargo's favor: severely curtailed discovery rights, the repeat-player advantage enjoyed by Wells Fargo as a frequent arbitration participant, confidentiality provisions that suppress adverse precedent from public view, shortened limitations periods, and restricted remedies unavailable to Plaintiff in arbitration but available in federal court." | jurisdiction case. Further, the pincited page in the decision does not support this statement. The cited page addresses a specific situation and arbitration agreement which is not present here. Plaintiff's claim that unfairness is inherently present in arbitration is not substantiated by this decision. |
| *New Hampshire v. Maine*, 532 U.S. 742 (2001) | 4 | Page 13: "Wells Fargo cannot now, in this litigation, invoke arbitration clauses from those same categories of unauthorized accounts as valid and binding against Plaintiff."<br><br>The case cite includes an explanatory parenthetical, reading "judicial estoppel applies where a party takes clearly inconsistent positions." | Page 13: Plaintiff's explanatory parenthetical is too simplified. More accurately, the Court explained that "several factors typically inform the decision whether to apply the doctrine in a particular case," one of which is taking inconsistent positions. *New Hampshire*, 532 U.S. at 750. |
| *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) | 6, 9, 11 | Page 8: "There was no offer made to Plaintiff, no acceptance by Plaintiff, and no consideration flowing to Plaintiff. No meeting of the minds occurred." | Page 8: This is an out-of-jurisdiction case. Further, factually, this case deals with the enforceability of "clickwrap agreements," which is a distinct issue |

| | | | from the Consumer Account Application, which Plaintiff signed. Finally, the pincited pages in the decision do not support this statement. |
|---|---|---|---|
| *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) | 3 | Page 13: "Any purported delegation clause - purporting to send threshold arbitrability questions to an arbitrator - is independently void on five separate grounds: (1) no personal assent to any delegation clause was ever given by Plaintiff; (2) the underlying agreement is void for fraud; (3) the delegation clause is itself illusory for the same reasons as the underlying agreement; ( 4) the delegation clause is independently unconscionable; and (5) the delegation clause lacks independent consideration." | Page 13: This is an incorrect summary of this decision. Rather, the Court said, "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center*, 561 U.S. at 70-72. |
| *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002) | 3, 7 | Page 8: "The moving party bears the burden of proving a valid agreement exists." | Page 8: This is an out-of-jurisdiction case. Further, the pincited page in the decision does not support this statement. |
| *Tinder v. Pinkerton Security*, 305 F.3d 728 (7th Cir. 2002) | 10 | Page 8: "The moving party bears the burden of proving a valid agreement exists." | Page 8 and 11: This is an out-of-jurisdiction case. Further, the pincited pages in the |

| | | Page 11: "The moving party must prove by a preponderance of the evidence that a valid, enforceable agreement to arbitrate exists." | decision do not support this statement. Rather, the decision states that "[t]he party opposing arbitration must identify a triable issue of fact concerning the existence of the agreement in order to obtain a trial on the merits of the contract." *Tinder,* 305 F.3d at 735. |
|---|---|---|---|
| *Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468 (1989) | 9, 10 | Page 14: "FAA § 2's savings clause expressly preserves all state-law contract defenses – including fraud, lack of assent, unconscionability, illusoriness, and unauthorized account creation - as valid grounds to invalidate an arbitration agreement." | Page 14: The pincited page does not address 9 U.S.C. § 2 or the preservation of state law defenses. |
| *Zink v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 13 F.3d 330 (10th Cir. 1993) | 12 | Page 13: "Under current Supreme Court precedent, no showing of prejudice is required to establish waiver of the right to arbitrate."<br><br>Page 14: "Any ambiguity in the scope of an arbitration clause must be resolved against | Page 13: The pincited page does not address waiver or prejudice but discusses applying general state-law principles of contract interpretation to arbitration agreements.<br><br>Page 14: The pincited page does not address "retroactive |

| | | retroactive application." | application" of ambiguities within the scope of arbitration provisions. |
|---|---|---|---|
| | | Page 26: "Retroactive application of any arbitration clause to claims from the scammer opened account, the replacement accounts, and mortgage data access is improper under *Zink v. Merrill Lynch*, 13 F.3d 330 (10th Cir. 1993)." | Page 26: This case does not support Plaintiff's proposition. |
| Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. | passim | This case is in Plaintiff's table of authorities but was not cited in the Response. | |
| 9 U.S.C. § 2 (savings clause) | 2, 10 | Page 6: "FAA § 2's savings clause preserves all state-law defenses including fraud, lack of assent, unconscionability, and illusoriness." | Page 6: This statute provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4." |
| | | Page 14: "FAA § 2's savings clause expressly preserves all state-law contract defenses – including fraud, lack of assent, unconscionability, illusoriness, and unauthorized account | Page 14: This statute provides that arbitration agreements "shall be valid, |

| | | creation - as valid grounds to invalidate an arbitration agreement." | irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4." |
|---|---|---|---|
| 9 U.S.C. § 4 (evidentiary hearing) | 2, 14, 16 | Page 7: "Where formation of an arbitration agreement is in genuine dispute, 9 U.S.C. § 4 mandates that the Court conduct an evidentiary hearing before compelling arbitration." | Page 7: § 4 does not require an evidentiary hearing but instead only requires the court to resolve the genuine dispute as to the formation of the arbitration agreement before compelling arbitration. |
| | | Page 19: "Where the formation of the underlying arbitration agreement is genuinely in dispute - as it is here on at least four independent grounds - a stay pending arbitration would be premature and improper before the Court first conducts the evidentiary hearing mandated by 9 U.S.C. § 4." | Page 19: § 4 does not require an evidentiary hearing but instead only requires the court to resolve the genuine dispute as to the formation of the arbitration agreement before compelling arbitration. |
| | | Page 22: "Before any stay may properly be considered, the Court must first discharge its mandatory obligation under 9 | Page 22: § 4 does not require an evidentiary hearing but instead only requires the court to |

| | | U.S.C. § 4 to conduct an evidentiary hearing on whether any valid arbitration agreement was formed between Plaintiff personally and Wells Fargo" | resolve the genuine dispute as to the formation of the arbitration agreement before compelling arbitration. |
|---|---|---|---|
| Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq. | 8, 12 | This case is in Plaintiff's table of authorities but was not cited in the Response. | |
| Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. | 8, 12 | This case is in Plaintiff's table of authorities but was not cited in the Response. | |
| Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 et seq. | 8, 12 | This case is in Plaintiff's table of authorities but was not cited in the Response. | |
| Dodd-Frank Act, 12 U.S.C. § 5481 et seq. | 10 | This case is in Plaintiff's table of authorities but was not cited in the Response. | |
| Wyoming Uniform Arbitration Act, Wyo. Stat §§ 1-36-101 through 119 | 13 | This case is in Plaintiff's table of authorities but was not cited in the Response. | |
| Wyoming Consumer Protection Act, W.S. § 40-12-101 et seq. | 8, 10, 12 | Page 14: "The Wyoming Consumer Protection Act, W.S. § 40-12-105, independently prohibits the deceptive trade practices at issue - including unauthorized account openings and unauthorized mortgage data access - and entitles Plaintiff to a jury trial on those claims." | Page 14: This section does not address jury trials or alleged unauthorized account openings and unauthorized mortgage data access. |
| Fed. R. Civ. P. 37(e) | 12, 14 | Page 20: "This Court must retain jurisdiction to enforce | Page 20: This Rule does not require the |

| | | | |
|---|---|---|---|
| | | litigation hold obligations, supervise preservation, and impose sanctions under Fed. R. Civ. P. 37(e)." | Court to retain jurisdiction. Rather, this Rule allows for a court to order sanctions if a party fails to cooperate in discovery. |
| Restatement (Second) of Contracts § 77 | | Page 12: "A contract that one party may modify at will, without consideration, destroys mutuality and renders the agreement illusory and unenforceable for want of consideration." | Page 12: This source does not support Plaintiff's proposition. This section of the Restatement says, "A promise or apparent promise is not consideration if by its terms the promisor or purported promisor reserves a choice of alternative performances unless<br><br>(a) each of the alternative performances would have been consideration if it alone had been bargained for; or<br><br>(b) one of the alternative performances would have been consideration and there is or appears to the parties to be a substantial possibility that before the promisor exercises his choice |

| | | | |
|---|---|---|---|
| | | | events may eliminate the alternatives which would not have been consideration." Restatement (Second) of Contracts § 77. |
| Restatement (Second) of Contracts § 208 | | Page 12: "The extreme disparity in bargaining power, the take-it-or-leave-it nature of the agreement, and the burial of the arbitration clause in dense boilerplate pages render the agreement procedurally unconscionable" | Page 12: This source does not support Plaintiff's proposition. This section of the Restatement states that a court may refuse to enforce an unconscionable contractual provision but does not address elements of unconscionable contractual provisions. |
| Restatement (Second) of Contracts § 292 | | Page 7: "A representative signature does not personally bind the representative." | Page 7: This source does not support Plaintiff's proposition. This section of the Restatement discusses the effect of judgment for or against co-promisors. |