**IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING**

JISELLE MCKEE,
Plaintiff,

v.

WELLS FARGO BANK, N.A.,
Defendant.

Civil Case No. 1:26-cv-00146-SWS

PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Plaintiff Jiselle McKee respectfully submits this Objection to Defendant Wells Fargo Bank, N.A.'s Motion for Protective Order (DE 21). The Motion should be denied because it conflicts with the Federal Arbitration Act, misstates the governing legal standards, and seeks to prevent discovery that is mandatory when contract formation is disputed. The Motion also relies on omissions and a pattern of incomplete or withheld records across multiple Wells Fargo departments.



I. FAA § 4 Requires Discovery and an Evidentiary Hearing When Formation Is Disputed

Under 9 U.S.C. § 4, when the existence of an arbitration agreement is genuinely disputed, the Court must permit discovery and conduct an evidentiary hearing before compelling arbitration. Formation is disputed on multiple independent grounds:

• Plaintiff signed only in a guardian capacity;
• the "Jiselle Premier Checking" account was opened by a scammer;
• Wells Fargo unilaterally closed and reopened accounts on November 26 without consent;
• Plaintiff never signed or returned any agreement for the replacement accounts;
• Plaintiff's identity and data were compromised across multiple Wells Fargo systems.

Rule 26(c) cannot override a federal statutory right to discovery under § 4.

II. Wells Fargo Has Not Shown Good Cause Under Rule 26(c)

A protective order requires specific facts showing "annoyance, embarrassment, oppression, or undue burden." Wells Fargo offers none. Instead, it relies on generalized statements about burden that do not satisfy Rule 26(c). Plaintiff has served no discovery, and Wells Fargo's Motion is unsupported by evidence.

## III. Local Rule 37.1(d) Does Not Automatically Stay All Discovery

Local Rule 37.1(d) stays only the specific discovery to which the motion is directed. Plaintiff has served no discovery, no Rule 26(f) conference has occurred, and no initial disclosures have been exchanged. There is nothing to stay. Wells Fargo seeks a blanket stay the rule does not authorize.

## IV. Essential Formation Evidence Is Held Across Multiple Separate Wells Fargo Departments

Wells Fargo's internal structure is not monolithic. The evidence relevant to formation, identity, fraud, and data access is spread across multiple independent departments, each operating separate systems with separate logs and separate custodians:

• Sage — a high-risk escalation and complaint-handling unit, not part of the fraud department.
• Fraud Department — handles fraud claims, scam reports, identity-theft indicators, and fraud-prevention protocols.
• Customer Service — maintains CRM notes, call logs, and account-interaction documentation.
• Executive Office / Executive Customer Relations — handles Plaintiff's consumer complaints, including CFPB and OCC complaints, and maintains internal communications and escalation notes.
• Privacy Center — maintains GLBA compliance records, data-access logs, and breach-notification determinations.
• Mortgage Department — maintains Plaintiff's 2018 prequalification, 2022 marketing-eligibility records, and system-level metadata.
• Mortgage Executive Offices — maintain internal escalation notes, access logs, and mortgage-system communications.
• ATM Operations — maintains machine-level logs, transactions.DAT files, EJ logs, and reconciliation reports.
• Teller Operations / Branch Management — maintain teller-level records, branch-level video, and procedural documentation.
• Digital Payments / Card Services — maintain Apple Wallet token records, DPANs, and device-specific transaction identifiers.
• Legal Summons / Subpoena Processing Unit — maintains law-enforcement-facing records, warrant logs, and subpoena-response documentation.

• Legal Risk / Compliance — maintains search-warrant correspondence and litigation-hold compliance.

These departments hold non-overlapping evidence. No single department can answer the formation questions under § 4. A protective order would improperly block access to essential evidence.

V. Wells Fargo's Misclassification of Plaintiff's Income Requires Additional Discovery

Wells Fargo incorrectly classified Plaintiff as a "monthly benefits recipient" based on her daughter's SSI Survivor benefits, which are not Plaintiff's income. Wells Fargo then misclassified Plaintiff's State of Wyoming contractor pay as "benefits," despite it being ordinary earned income.

These misclassifications required involvement from Customer Service, the Fraud Department, Sage, and the Executive Office, each of which maintains separate logs and internal communications. These errors go directly to identity, account ownership, and whether Plaintiff ever assented to any agreement.

VI. Wells Fargo Altered the Dates on Plaintiff's Fraud Claims

Wells Fargo's internal systems show different dates for the same fraud claims, including:

• claims opened on dates when Plaintiff did not contact Wells Fargo;
• claims closed before Plaintiff was ever contacted;
• claims backdated or forward-dated inconsistently with call logs;
• claims marked "customer doesn't remember" when Plaintiff stated coercion not that I didn't remember.

These inconsistencies require discovery from Fraud, Sage, Customer Service, and the Executive Office. Altered fraud-claim dates go directly to identity, account ownership, and internal record accuracy.

VII. Fraud Department Sent Plaintiff to a Closed Branch and the Branch Could Not Locate the ATM Deposit

Wells Fargo's Fraud Department instructed Plaintiff to go to the Capital branch to resolve the ATM deposit issue, even though the branch was closed for Thanksgiving. When Plaintiff later contacted the branch, staff stated they could not locate any ATM deposit and did not know why Fraud had sent her there.

This contradiction demonstrates a breakdown in Wells Fargo's internal communication systems and requires discovery from Fraud, Sage, Customer Service, Branch Management, and the Executive Office.

The ATM deposit involved a card Plaintiff had added to her Apple Wallet, which generates device-specific token IDs and DPANs. These records, maintained by Digital Payments / Card Services, have not been produced and are essential to determining whether the ATM recognized the tokenized card and whether the transaction was routed to any account.

VIII. Missing Branch Video, Altered Ledger Entries, and Teller-Procedure Failures Require Additional Discovery

Wells Fargo failed to produce the interior lobby video and parking-lot surveillance video from the Pershing branch for the $18,000 teller withdrawal. This video is essential to confirm:

- the teller involved;
- whether proper high risk withdrawal procedures were followed;
- whether the ledger entry matches what occurred.

Plaintiff has evidence that Wells Fargo altered the ledger description of this withdrawal multiple times, including changes from "teller cashed check" to "cash withdrawal."

These issues require discovery from Teller Operations, Branch Management, Customer Service, Sage, and the Executive Office.

IX. Wells Fargo Seeks to Avoid Producing Evidence That Contradicts Its Declarations

The departments listed above hold evidence that directly contradicts Wells Fargo's assertions in its Motion to Compel Arbitration, including:

- whether Plaintiff ever assented to any agreement;
- whether the scammer-opened account was flagged internally;

- whether November 26 account openings were unilateral;
- whether teller procedures were followed;
- whether ledger entries were altered;
- whether Plaintiff's mortgage data was accessed without authorization.

A protective order would shield Wells Fargo from producing the very evidence the FAA requires the Court to review.

## X. Plaintiff Properly Disclosed That This Case Requires High-Volume Discovery

Wells Fargo argues that Plaintiff intends to pursue high-volume discovery. That is correct — and it is not improper. Plaintiff expressly informed Wells Fargo in advance that this case would require extensive discovery, including more than 600 Requests for Admission, multiple categories of documents, and additional interrogatories. Plaintiff included this information in her unilateral Rule 26(f) report, which she served even though Wells Fargo refused to participate in the Rule 26(f) conference.

Plaintiff disclosed the anticipated scope of discovery to prevent any claim of surprise or undue burden. High-volume discovery is necessary because the evidence relevant to formation, identity, fraud, data access, and internal inconsistencies is spread across numerous Wells Fargo departments and systems.

Wells Fargo's acknowledgment that discovery will be extensive does not support a protective order. It supports the opposite conclusion: Wells Fargo had full notice of the scope of discovery and cannot claim burden or prejudice.

## XI. The Motion Is Premature Because the Motion to Compel Arbitration Is Not Resolved

The Motion to Compel Arbitration is fully briefed and raises multiple formation disputes. Until formation is resolved, discovery cannot be stayed. Wells Fargo seeks to halt discovery precisely because the formation evidence is damaging. The FAA does not permit that.

## XII. Wells Fargo's Pattern of Withholding or Losing Records Across Multiple Systems Makes a Discovery Stay Impossible

Wells Fargo's request for a protective order must be viewed in light of its broader pattern of

incomplete, inconsistent, or withheld records across multiple internal systems, including:

• missing branch-level video;
• altered ledger entries;
• altered fraud-claim dates;
• contradictory branch instructions;
• missing Apple Wallet token records;
• refusal to acknowledge Plaintiff's 2018 mortgage prequalification;
• refusal to acknowledge Plaintiff's 2022 mortgage-marketing email;
• refusal to confirm whether Plaintiff's data was accessed during the insider breach.

These omissions form a consistent pattern of incomplete production and internal contradictions. Discovery is indispensable.

## XIII. VERIFIED SEARCH-WARRANT NONCOMPLIANCE BY WELLS FARGO REQUIRES DISCOVERY

Wells Fargo failed to comply with a judge-signed search warrant issued in the related criminal investigation. This is not an allegation — it is verified by the detective's report and by Wells Fargo's own incomplete production. The warrant required Wells Fargo to produce:

• branch-level surveillance video;
• ATM-operations data;
• account-identification information;
• machine-level logs;
• reconciliation reports;
• cassette totals;
• access logs;
• chain-of-custody documentation.

Wells Fargo produced only a partial ATM video and withheld the remaining required records. The detective confirmed that Wells Fargo did not comply with the warrant.

This verified noncompliance is directly relevant to:

• record preservation;
• internal controls;

• credibility;
• identity;
• account ownership;
• formation under FAA § 4.

A party that has already failed to comply with a lawful search warrant cannot now seek a protective order to avoid producing the same categories of records in civil discovery. Verified search-warrant noncompliance alone is sufficient reason to deny the Motion for Protective Order.

## XIV. WELLS FARGO DENIED THE EXISTENCE OF THE SEARCH WARRANT AND THE INTERNAL REFERENCE NUMBER PROVIDED TO LAW ENFORCEMENT

Wells Fargo not only failed to comply with the judge-signed search warrant — it denied the warrant existed at all. When the Executive Office called Plaintiff to close her CFPB complaint, Melissa, an Executive Office representative, confirmed that a search warrant had not been served when Plaintiff asked.

This denial is contradicted by Detective Young, who personally served the warrant on Wells Fargo and provided Plaintiff with the internal reference number Wells Fargo assigned to the warrant. When Plaintiff called the Executive Office back and provided that exact reference number, Wells Fargo denied that the reference number existed.

This is not a civil-discovery dispute. This is law-enforcement-facing noncompliance and raises serious concerns about:

• Wells Fargo's Legal Summons / Subpoena Processing Unit;
• Wells Fargo's Executive Office;
• Wells Fargo's internal tracking of law-enforcement requests;
• Wells Fargo's record-retention practices;
• Wells Fargo's credibility in all representations to this Court.

A financial institution that denies the existence of a judge-signed search warrant — and denies the existence of its own internal reference number — cannot be permitted to avoid civil discovery into the same categories of records. This conduct independently justifies denying the Motion for Protective Order.

Additionally, on March 2, Wells Fargo's Executive Office asked Detective Young whether Plaintiff had received a receipt because they were attempting to determine whether the ATM

involved was a Wells Fargo-owned machine or a third-party ATM. This inquiry demonstrates that Wells Fargo's Executive Office did not possess the ATM-operations records necessary to identify the machine, trace the transaction, or confirm the routing of the attempted deposit. The fact that Wells Fargo required law-enforcement assistance to determine basic ATM ownership further contradicts its representations to this Court that its internal records are complete, consistent, and reliable.

XV. Plaintiff's IRS SSN Misuse Notice Aligns With the 2022–2023 Insider Mortgage Breach and the Scammer's Use of a Real Wells Fargo Mortgage Number

Plaintiff received an IRS SSN Misuse Notice in March 2023, informing her that her Social Security number had been used without authorization. This downstream misuse occurred during the same period as Wells Fargo's 2022–2023 insider mortgage-data breach.

Plaintiff also received a Wells Fargo Mortgage marketing email in May 2022, which could only have been sent if Plaintiff remained in the mortgage-applicant database and her information was accessible to Wells Fargo's mortgage systems during the breach period.

The scammer who targeted Plaintiff in November 2023 spoofed a real Wells Fargo Mortgage phone number and had Plaintiff's full SSN, address, and mortgage-related information — the same categories of data maintained in Wells Fargo's mortgage systems and implicated in the insider breach.

These facts create a direct, reasonable, and evidence-supported inference that Plaintiff's personal information may have been accessed or mishandled inside Wells Fargo's mortgage systems. Wells Fargo refuses to confirm whether Plaintiff's data was accessed, reviewed, or misused during the breach period.

This evidence is directly relevant to identity, data access, account ownership, and whether Plaintiff ever assented to any agreement.

CONCLUSION

FAA § 4 requires discovery when formation is disputed, and the record here contains extensive contradictions, missing records, and inconsistent statements across Wells Fargo's own departments. These issues cannot be resolved on declarations alone. Wells Fargo has not shown good cause under Rule 26(c), and its request to halt discovery is incompatible with the statute and the factual record. The Motion to Stay Discovery must therefore be denied.

Respectfully submitted,

*Jiselle McKee*

Jiselle McKee
Pro Se Plaintiff
7052 Rilley Rd
Cheyenne, WY 82009
Jiselle.cash@csuglobal.edu

June 25, 2026

CERTIFICATE OF SERVICE

I certify that on June 25, 2026, I delivered the foregoing Objection to Defendant's Motion for Protective Order to the Clerk of Court for filing. The Clerk will upload the document into the Court's CM/ECF electronic filing system, which will automatically send notice of filing to all counsel of record, including:

Chad S. Caby
Womble Bond Dickinson (US) LLP
1601 19th Street, Suite 1000
Denver, CO 80202
Chad.Caby@wbd-us.com

Jiselle McKee
Pro Se Plaintiff