FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2026 JUL 20 AM 9:27

**UNITED STATES DISTRICT COURT**
**DISTRICT OF WYOMING**

| | |
|---|---|
| JISELLE McKEE,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 26-CV-146-SWS |

## ORDER COMPELLING ARBITRATION AND STAYING CASE

Plaintiff Jiselle McKee sues Defendant Wells Fargo, alleging it "allowed a scammer to deceive Plaintiff into withdrawing $18,000 under duress and then lost her $17,800 ATM cash deposit." (Am. Compl. p. 3.) Wells Fargo has moved to compel their dispute to arbitration. (ECF 14.) Ms. McKee argues she never agreed to arbitrate the matter, or, at the least, there is a material dispute of fact as to whether the parties agreed to arbitration. (ECF 15.) Wells Fargo says Ms. McKee expressly agreed to arbitrate any disputes she had with Wells Fargo, and her opposition is not grounded in the facts or accurate law. (ECF 18.) Having considered the parties' submissions and the record herein, the Court finds there is no material dispute of fact concerning whether Ms. McKee agreed to arbitration, and she so agreed. Additionally, the claims and disputes raised in this lawsuit are subject to their arbitration agreement. Consequently, the Court will stay this case and compel the parties to arbitrate their disputes.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2014, Ms. McKee (then known as "Jiselle Cash") signed an application as the parent/guardian of her minor child to open a Wells Fargo savings account. (ECF 14 pp. 17-19.) Both her name and her minor child's name are on the account application and the account. (*Id.*)

**Amended Complaint's Allegations**

Ms. McKee's operative complaint makes the following relevant allegations:

On November 26, 2025, Ms. McKee received a call from what appeared to be a Wells Fargo employee but turned out to be a scammer. (Am. Compl. p. 4.) In conformity with the scammer's instructions, at about 4:25 p.m., she withdrew $18,000 in cash from the Wells Fargo savings account in Cheyenne, Wyoming. (*Id.* p. 5.) Within a few minutes of the withdrawal, though, she apparently came to realize it was a scam, and about 5:00 p.m. she attempted to deposit most of the cash back into a Wells Fargo account through an ATM at a different Wells Fargo branch location in Cheyenne. (*Id.*) The ATM accepted $17,800 of the cash, and ATM surveillance video later confirmed her presence at the ATM, but the ATM provided her no receipt as proof of the deposit. (*Id.*)

Shortly after 5:00 p.m., Ms. McKee then called Wells Fargo's fraud department "to report both the coerced withdrawal and the missing ATM deposit." (*Id.*) The Wells Fargo representative said they could not locate the deposit and instructed Ms. McKee to go to the branch in person once it reopened. (*Id.* pp. 5-6.) In brief, Ms. McKee's lawsuit asserts Wells Fargo failed to properly investigate and account for her missing deposit.

**Motion to Compel Arbitration**

Wells Fargo seeks to compel the parties' dispute to arbitration, contending that when Ms. McKee applied for and opened the savings account from which she withdrew the $18,000 at issue in this case, she agreed to arbitrate any disputes between the parties. (ECF 14.) Specifically, under the "Customer Signatures" section of the Consumer Account Application, it stated:

> **I have received a copy of the applicable account agreement and the privacy policy (each may be amended from time to time) and agree to be bound by their terms.** I also agree to the terms of the dispute resolution program described in the foregoing agreements. **Under the dispute resolution program, our disputes will be decided before one or more neutral persons in an arbitration**

**proceeding and not by a jury trial or a trial before a judge.**

(ECF 14 p. 19.) Ms. McKee signed the account application (as "Jiselle Cash") in this "Customer Signatures" section on July 30, 2014. (*Id.*) The "applicable account agreement" referenced on the account application is the "Consumer Account Agreement" (ECF 14 pp. 21-87), which includes the relevant arbitration clause at issue in this motion (ECF 14 pp. 26-27).[1]

Ms. McKee responds that she signed the account application "exclusively as parent and guardian for a minor child — not in any personal individual capacity.... No personal obligation arose from that signature, and no personal agreement to arbitrate was ever formed." (ECF 15 p. 7.) She says Wells Fargo has not and cannot produce "any arbitration agreement signed by Plaintiff in her individual personal capacity." (*Id.*) She further argues that because the formation of the arbitration agreement is at issue here (specifically, whether the parties agreed to arbitration), the Federal Arbitration Act requires the Court to conduct an evidentiary hearing on this issue and permit discovery before issuing any ruling on the question. (*Id.* pp. 6-7.) She also offers a plethora of additional arguments against arbitration and any stay of proceedings. (*Id.* pp. 8-26.)

Wells Fargo replies that Ms. McKee signed as a "customer," and therefore she "agreed to the terms of the arbitration agreement individually, in her role as a customer." (ECF 18 p. 2.) It also contends U.S. Supreme Court caselaw holds that a stay of court proceedings pending arbitration is mandatory under the Federal Arbitration Act. (*Id.* p. 5.)

In a surreply considered by the Court, Ms. McKee responded to Wells Fargo's reply,

---

[1] Wells Fargo refers to the agreement as the "Deposit Account Agreement" in its reply. (ECF 18.) In 2025, Wells Fargo updated and amended the agreement from the 2014 version originally applicable to Ms. McKee's account, which included changing the document's name to "Deposit Account Agreement." (*Compare* ECF 14 pp. 21-87 (2014 "Consumer Account Agreement") *with* ECF 14 pp. 88-131 (2025 "Deposit Account Agreement").) The Court refers to it as the "Consumer Account Agreement" in this Order to be consistent with the version in effect at the time Ms. McKee opened the subject savings account in 2014.

including specifically Wells Fargo's assertions that Ms. McKee misrepresented several legal citations. (ECF 20-1.)

## STANDARD OF ADJUDICATION

"[A]rbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). "[T]he parties themselves must *agree* to have their disputes arbitrated." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014).

Under the Federal Arbitration Act (FAA), "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

> When it's apparent from a quick look at the case that no material disputes of fact exist it may be permissible and efficient for a district court to decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration.

*Ferrellgas Partners*, 748 F.3d at 977 (citing *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012)). "In these circumstances, the Act's summary trial can look a lot like summary judgment." *Id.* at 978. "[T]he party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith." *BOSC, Inc. v. Bd. of Cnty. Commissioners of Cnty. of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017). The Court gives "the benefit of all reasonable doubts and inferences that may arise" to the party opposing arbitration. *Id.* (quoting *Hancock*, 701 F.3d at 1261).

In contrast, though, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. Thus, where "a quick look at the case suggests material disputes of fact *do* exist on the question whether the parties agreed to arbitrate," the FAA "requires courts process the venue question quickly [in the form of a 'summary trial'] so the parties can get on with the merits of their dispute in the right forum." *Ferrellgas Partners*, 748 F.3d at 978. That is, the FAA "call[s] for an expeditious and summary hearing, with only restricted inquiry into factual issues." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

"Once the facts are clear, courts must then apply state contract formation principles and decide whether or not the parties agreed to arbitrate." *Ferrellgas Partners*, 748 F.3d at 977. Under Wyoming law, the elements necessary to form a contract are offer, acceptance, and consideration. *Birt v. Wells Fargo Home Mortg., Inc.*, 75 P.3d 640, 647 (Wyo. 2003).

## DISCUSSION

By signing Wells Fargo's account application, Ms. McKee agreed to be bound by the Consumer Account Agreement containing the subject arbitration clause, and her arguments to the contrary are unconvincing.

### 1. An evidentiary hearing or summary trial is not warranted here.

Ms. McKee identifies many disputes in her opposition to arbitration, including some disputes of fact. (*See* ECF 15.) However, the facts material to the question of whether the parties agreed to arbitration are limited and undisputed. For example, Ms. McKee agrees she signed the account application in 2014 to open the subject savings account from which she withdrew the $18,000; she disputes only in what capacity she signed it and the legal effect of signing in that capacity. Even accepting as true that she signed it in her capacity as the minor child's parent/guardian, the legal effect of that signature is a question of law (which does not warrant an

evidentiary hearing), as opposed to a question of fact. Her allegations that may present true factual disputes, such as whether a scammer later opened a bank account in her name or whether Wells Fargo properly opened a new account in her name (ECF 15 pp. 8-9), are simply immaterial to whether she agreed to the arbitration clause within the Consumer Account Agreement when she signed the account application in 2014. Thus, the Court finds the facts necessary to resolve the question of whether the parties agreed to arbitration are undisputed or the Court has accepted as true Ms. McKee's version of events, and therefore an evidentiary hearing or summary trial is not warranted.

**2. Ms. McKee agreed to arbitrate her disputes with Wells Fargo.**

Ms. McKee's argument that she is not bound by the arbitration clause in the Consumer Account Agreement because she signed the account application only in her representative capacity as a parent/guardian of a minor and not in her personal capacity is both legally inaccurate and inconsistent with her own alleged facts (which the Court takes as true for purposes of determining this motion).

First, the only legal authority cited by Ms. McKee in support of her argument is Restatement (Second) of Contracts § 292. (ECF 15 p. 7.) However, Wells Fargo is correct that § 292 has nothing to do with Ms. McKee's assertion that "[a] representative signature does not personally bind the representative" (*id.*). Instead, § 292 concerns the effects a judgment can have on co-promisors (co-signers), and it does not support Ms. McKee's contention. Further, the Tenth Circuit has previously noted that a representative can also be subject to a valid arbitration agreement where the representative's principal is subject to it. *See Hicks v. Cadle Co.*, 355 F. App'x 186, 793 ("Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, **and representatives** are also covered under the terms of such agreements.") (emphasis added) (quoting *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110,

1121 (3d Cir. 1993)).

Second, and more significantly here, Ms. McKee exercised dominion and control over the subject bank account as a user and beneficiary of the account. Her amended complaint alleges she, not her minor child nor anyone else, personally withdrew the $18,000 from the savings account. (Am. Compl. p. 5.) She was not a simple "representative" sitting on the sidelines when it came to this bank account. It is disingenuous for Ms. McKee to hold and exercise the benefits of this bank account, including withdrawing money from it, while also claiming she is not bound by the terms and conditions associated with the account. *See, e.g., Fisher v. PNC Bank, N.A.*, No. 21-13266, 2022 WL 2037699, at *2 -3 (11th Cir. June 7, 2022) (plaintiff was bound by the arbitration provision where plaintiff, though opening the account for her elderly mother, signed the account application); *Daugherty v. Encana Oil & Gas (USA), Inc.*, No. 10-CV-02272-WJM-KLM, 2011 WL 2791338, at *6-7 (D. Colo. July 15, 2011) (holding that individuals who signed a contract as intended beneficiaries of the contract, seeking the burden along with the benefits of the contract, were personally bound by the arbitration provision in the contract).

Third, it is also noteworthy that Ms. McKee is the only signatory on the account application in this case, as her minor child's signature was not required. (ECF 14 p. 19.) Accordingly, under the "Customer Signatures" section of the account application, only Ms. McKee signed where the application expressly stated: "I also agree to the terms of the dispute resolution program … [under which] **our dispute will be decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge.**" (*Id.*)

The applicable law and material, undisputed facts establish Ms. McKee assented to the Consumer Account Agreement containing the arbitration clause. Wells Fargo offered to provide the savings account, Ms. McKee accepted the savings account as demonstrated by her signature on the account application and her personal use of the account, and the parties exchanged valuable

consideration—Ms. McKee by, among other things, depositing money into the account for the bank's use, and the bank by, among other things, maintaining the account, paying interest on the money held in the account, and ensuring the money was available for Ms. McKee's withdrawal when she sought it. The Court has little difficulty concluding Ms. McKee contracted with Wells Fargo for this bank account, and the Consumer Account Agreement included a provision requiring disputes between the contracting parties to be submitted to arbitration.

### 3. Ms. McKee's several challenges to the Consumer Account Agreement (and to the later Deposit Account Agreement) as a whole are not justiciable as part of this motion to compel arbitration.

In her opposition to arbitration, Ms. McKee argues the Consumer Account Agreement as a whole is invalid due to unconscionability and illusoriness. (ECF 15 pp. 11-12.) According to binding U.S. Supreme Court caselaw, though, these arguments are not legally relevant to the Court's determination of whether the arbitration clause at issue is enforceable.

> There are two types of validity challenges under [9 U.S.C. § 2]: "One type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye,* 546 U.S., at 444, 126 S.Ct. 1204. In a line of cases neither party has asked us to overrule, **we held that only the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable.** See *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Buckeye, supra,* at 444–446, 126 S.Ct. 1204; *Preston v. Ferrer,* 552 U.S. 346, 353–354, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008). **That is because § 2 states that a "written provision" "to settle by arbitration a controversy" is "valid, irrevocable, and enforceable" *without mention* of the validity of the contract in which it is contained. Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate.** "[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye,* 546 U.S., at 445, 126 S.Ct. 1204; see also *id.,* at 447, 126 S.Ct. 1204 (the severability rule is based on § 2).

*Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71–72 (2010) (bold added). Thus, the Court does not consider Ms. McKee's challenges to the Consumer Account Agreement as a whole in determining here whether the parties agreed to the arbitration clause.

**4. <u>The arbitration agreement applies to Ms. McKee's current disputes with Wells Fargo.</u>**

The arbitration clause in the Consumer Account Agreement defines "dispute" broadly (excepting only small claims court proceedings), and it applies to the claims asserted by Ms. McKee in this lawsuit. The arbitration agreement says in part:

> If you have a dispute with the Bank, and you are not able to resolve the dispute informally, you and the Bank agree that upon demand by either you or the Bank, the dispute will be resolved through the arbitration process as set forth in this section. A "dispute" is any unresolved disagreement between you and the Bank. It includes any disagreement relating in any way to services, accounts or matters; to your use of any of the Bank's banking locations or facilities; or to any means you may use to access your account(s). It includes claims based on broken promises or contracts, torts, or other wrongful actions. It also includes statutory, common law, and equitable claims.

(ECF 14 p. 26.)

Ms. McKee's claims fall within the broad definition of "dispute" included within the arbitration clause. Her amended complaint asserts multiple statutory claims (pp. 16-17, 19), several tort claims (pp. 17-18, 19-21), and two contract-based claims (pp. 18-19). Thus, all her claims fall within the arbitration clause and are subject to arbitration.

Additionally, as demonstrated by Wells Fargo's instant motion to compel arbitration, it has demanded the parties' disputes be resolved through arbitration, thus triggering the arbitration clause.

**5. <u>Ms. McKee's remaining arguments are legally erroneous or inapplicable to the question of compelling arbitration.</u>**

Wells Fargo documented the many misstatements of law found in Ms. McKee's opposition to arbitration (ECF 18 pp. 9-24), and the Court need not re-plow that same ground. Suffice it to

say the Court observed the same inaccuracies. Whether Ms. McKee inadvisably relied on a generative AI (artificial intelligence) tool, such as Chat GPT, to draft her opposition or whether she has simply misunderstood these many legal authorities to stand for principles they do not stand for, the Court advises Ms. McKee that she needs to be far more careful to accurately represent the law going forward.

Additionally, several of Ms. McKee's remaining arguments against arbitration are irrelevant to the issue presented by Wells Fargo's motion. For example, she argues that later-opened bank accounts, including one labeled "Jiselle Premier Checking" which she says was opened by a "third-party scammer" (ECF 15 pp. 8-9, 10), cannot support Wells Fargo's request for arbitration. The arbitration agreement identified by Wells Fargo and at issue here comes from Ms. McKee's 2014 application to open the subject savings account from which she withdrew the $18,000, not any other account. The validity of other bank accounts and any contractual terms or conditions from other accounts are not pertinent to Wells Fargo's instant motion to compel arbitration.

**6. The Court must stay this lawsuit while the parties arbitrate their disputes.**

Having determined the parties agreed to arbitrate the disputes and claims raised in this lawsuit, the Court now turns to Ms. McKee's argument against a stay of proceedings (ECF 15 pp. 18-23.) The FAA specifies that where a matter is subject to arbitration, the court "shall on application of one of the parties stay the trial of action until such arbitration has been had …." 9 U.S.C. § 3. "Just as 'shall' means 'shall,' 'stay' means 'stay.'" *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024). Therefore, "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Id.* at 478.

Having concluded Ms. McKee's claims are subject to the parties' arbitration agreement,

and with Wells Fargo's request to arbitrate, the Court must stay this lawsuit while the parties arbitrate.

## CONCLUSION AND ORDER

Even viewing the material facts in the light most favorable to Ms. McKee, she agreed in her 2014 account application that her disputes with Wells Fargo (aside from small claims actions) were subject to arbitration. And the claims and disputes she raises in this lawsuit fall within the parties' arbitration clause. Therefore, the Court will stay this matter and compel the parties to arbitration.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel Arbitration and Stay Proceedings (ECF 14) is **GRANTED**. The parties are ordered to arbitrate the claims and disputes raised in this lawsuit, and this case is hereby **STAYED** pending the parties' arbitration.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Sur-Reply (ECF 20) is **GRANTED**, and the Court has considered Plaintiff's sur-reply (ECF 20-1) in deciding the motion to compel arbitration.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Seal Exhibit E (ECF 16) is **GRANTED**. The Clerk of Court will please change ECF 7 at pages 33-43 to a non-public document based on the unredacted and sensitive information contained therein.

**IT IS FINALLY ORDERED** that all other pending motions (ECF 17, 21, 26) are hereby **DENIED WITHOUT PREJUDICE** to refiling if appropriate following the lifting of the stay in this matter.

**ORDERED**: July 20th, 2026.

Scott W. Skavdahl
United States District Judge